UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

ELVIS RUIZ, FRANCISCO JAVIER CASTRO, )
and EDUARDO MARTINEZ )
)
      Plaintiff, )
)
  v. )
)
MAX FERNANDEZ and ANN FERNANDEZ, a )
marital community; and WESTERN RANGE )
ASSOCIATION, a foreign nonprofit organization, )
)
      Defendants. )
_____)

**No:** CV-11-3088-RMP

DEFENDANT FERNANDEZ'S
MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS:
SUBJECT MATTER
JURISDICTION

**I  NATURE OF THE MOTION**

  The Defendants, Max and Ann Fernandez (hereinafter "Fernandez"), bring this motion pursuant to FRCP 12(b). The Defendants assert that the Court lacks subject matter jurisdiction over the Plaintiffs' action for breach of contract (Third Cause of Action). The other causes of action, including the actions under the Fair Labor Standards Act (First Cause of Action), and the state law claims under the Washington Wage and Hour Law (Second Cause of Action) and Quantum Meruit (Fourth Cause of Action) flow from, and are based upon, the breach of contract claim. As a result, the court also lacks subject matter jurisdiction of those claims.

## II  SUMMARY OF ARGUMENT

The Plaintiffs are sheepherders admitted into the United States under an H-2A non-immigrant visa that allows a foreign national to work in temporary or seasonal agricultural work.  The terms and conditions of such temporary work are governed by regulations adopted by the United States Department of Labor.  Congress entrusted the investigation and enforcement of complaints and contracts under the H-2A program to the Secretary of the Department of Labor.  As a result there is a comprehensive statutory and regulatory procedure in which complaints can be investigated and addressed.  The procedure allows enforcement by the Department of Labor and provides remedies, including recovery of wages, specific performance, reinstatement, civil penalties, debarment, and increased bonds.  The statute specifically limits the jurisdiction of the U.S. District Court to cases brought by the United States.  As a result, the appropriate method of resolving a claim of breach of contract is before the Department of Labor and its administrative procedures, not the courts.  Since the other causes of action are predicated on the breach of the underlying contract, the court also lacks subject matter jurisdiction over those claims.

## III  SUBJECT MATTER JURISDICTION

The Federal District Court is a court of limited jurisdiction possessing only the power authorized by the Constitution and Congress.  *U.S. Constitution, Art. III, Sect 2;* <u>Exon Mobile Corp. V. Allpaita Services, Inc.</u>, 545 U.S. 546, 552 (2008); <u>Bender v. Williamsport Area School District</u>. 475 U.S. 534, 541 (1986)  Federal Courts have no power to consider claims for which they lack subject matter jurisdiction. <u>Wang v. Fine Corp</u>., 975 F.3d 1412, 1415 (9th Cir., 1992)  The courts must "presume that a cause of action lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Kokkonen v. Guardian Life Insurance Co. of Am.</u>, 511 U.S. 375, 377 (1994).; <u>Tosco Corp. v. Communities for a Better Environment</u>, 236 F.3d 495, 499 (9th Cir., 2001)

In the Complaint, the Plaintiffs assert that jurisdiction arises under 28 U.S.C. § 1331. Federal courts have jurisdiction over those actions "arising under the Constitution, laws or treaties of the United States." In determining whether the Federal District Court has "arising under" jurisdiction over a claim, it must be understood "the basic principle marking the boundaries of federal question jurisdiction of the Federal District Court is the well-pleaded complaint rule." *Metro Life Ins. v. Taylor*, 481 U.S. 58, 63 (1987); *Calstar v. State Compensation Ins.*, 636 F.3d 538, 541 (9th Cir. 2011)

Because the basis of the Plaintiffs' claim is breach of contract, and enforcement of such contracts is relegated to the U.S. Department of Labor, the Court lacks subject matter jurisdiction. *Metropolitan Life Insurance v. Taylor*, 481 U.S. 58, 63 (1987); *Watsonville Lowes HIW Colstor v. State Compensation Ins.*, 636 F.3d 538, 541 (9th Cir., 2011)  Under the well pleaded complaint rule the Court must determine whether the right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the Plaintiffs' cause of action.

In this case the Plaintiffs' claims are based upon and flow from the allegations a contract was breached (Complaint ¶ 66-75). The Plaintiffs were non-immigrant foreign workers admitted by an H-2A visa under 8 U.S.C. § 1188 and the regulations adopted by the Secretary of the Department of Labor. 20 CFR 655. 655.100   The Plaintiffs claim Fernandez breached the contract with them by requiring them to engage in work that was outside the job description. However, it is the Department of Labor, as authorized by statute and regulation, that sets the job description, wages and conditions of employment receives, investigates and prosecutes violations.

Congress delegated enforcement of regulations to the Secretary of the Department of Labor.  8 U.S.C. § 1188(g)(2).  The District Court's jurisdiction was limited by Congress to "causes of action…brought by the United States."  8 U.S.C. § 1329.

**IV      THE IMMIGRATION AND NATIONALITY ACT**

   A.      **Background**

The Immigration and Nationality Act of 1952 (Pub. L. 82-414, 66 Stat 163, enacted June 27, 1952) restricted immigration into the United States.  The Act primarily governs immigration to and citizenship in the United States.  The Act, and its modifications, are codified under Title 8 of the United States Code.  The Act authorizes the establishment of regulations.  8 U.S.C. § 1103(a)(1) and (3).  The regulations adopted by the Secretary of the Department of Labor appear at 20 CFR 655 et seq.

   B.      **Temporary Agricultural Workers - H-2A Visas**

An H-2A non-immigrant visa allows a foreign national entry into the United States for temporary or seasonal agricultural work.  8 U.S.C. § 1188.  To qualify for H-2A non-immigration classification, an employer must show to the Secretary of the Department of Labor that (1) the job offered is of a temporary or seasonal nature, (2) the employer must demonstrate that there are not sufficient U.S. workers who are able, willing, qualify and available to do the temporary work, (3) the employer must show that the employment of H-2A workers will not adversely affect wages and working conditions of similarly employed U.S. workers.  8 U.S.C § 1188.

   C.      **The Certification Process**

Prior to submitting an application for "temporary employment certification" the employer must submit a job order to the state workforce agency [i.e., Employment Security].  20 CFR 655.121(1).  The employer must submit an "application for temporary employment certification".  8 U.S.C. § 1188(a)(1); 20 CFR 655.130.  A "master application" may be filed by associations on behalf of its member-employers.  8 U.S.C. § 1188(d); 20 CFR 655.131.

The application is reviewed. 20 CFR 655.140. A notice of acceptance is issued. 20 CFR 655.143. If approved, a certification and final determination letter is issued. 8 U.S.C. § 1188(c)(2)(B); 20 CFR 655.162.

**D.     Special Procedures: Sheepherders**

The regulations allow the establishment of special procedures for sheepherders in the Western States and for occupations "characterized by other than a reasonably regular workday or workweek." 20 CFR 655.102.

In the special procedures for sheepherders, the Department has established:

1. A standard job description for sheepherders.

2. Anticipated hours: As "on call for up to 24 hours per day, 7 days per week" this will exempt employers from the requirements in 20 CFR 655.102(b)(7) and (8) which requires the recording and reporting of hours offered and worked.

3. Procedures for setting wages.

4. Employers must offer free food, either three prepared meals a day when in camp, or free and convenient cooking facilities and food for the workers to prepare.

(Exhibit 1, part 1)

The special procedures also address transportation and housing. (Exhibit 1, part 3) There are also specific procedures applicable to the Western Range Association. (Exhibit 1, part 2)

The Department adopted a special variance to the offered wage requirements contained in 20 CFR 655.120(a) because occupations involving sheepherding and goatherding involve irregular work days and work weeks. The employer must agree to offer,

advertise, and pay the wage established by the Office of Foreign Labor Certifications (OFLC) Administrator. The rate established was $750.00 per month.[1]  (Exhibit 2)

## V    THE PLAINTIFF'S CLAIMS

The plaintiffs set forth five causes of action:

1. Failure to pay minimum wage under the Fair Labor Standards Act;
2. Failure to pay wages due under the employment contracts under State Wage and Hour Laws;
3. Breach of Employment Contact, the plaintiff should have been paid at a different rate than the specified in the contract;
4. Quantum Meruit, the same claim as Breach of Contract;
5. Trafficking Victims Protection Reauthorization Act.

This motion addresses the first four (4) causes of action. Those claims all begin with and are derived from a contract. The contract includes, by reference, the sheepherder job description and the wage rate authorized by the special procedure. (Exhibit 2)  The plaintiffs do not claim that the wages specified by the special procedures and contract were not paid. Instead, it is claimed the wage rate should have been different than that specified and paid because they performed work outside the job description. (Complaint ¶ 41-44)  The other claims follow from that proposition.

---

[1] The Washington Supreme Court has held that sheepherders are excluded for the definition of employee contained in the State Wage and Hour Law because they sleep at the place of employment and spend a substantial portion of work time subject to call. As such sheepherders were not subject to the minium wage and overtime requirements of the state law. *Berrocal v Max Fernandez,* 155 Wn.2d 585, 598 (2005). Sheepherders are exempt from the FLSA by 20 CFR 655.120 (..."the employer must offer, advertise in its recruitment, and pay a wage rate that is the highest of the ACWR, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage or federal or state minium wage, **except where a special procedure is approved for an occupation or specific class of agricultural employment.**") [*Emphasis Added*]

## VI   ENFORCEMENT PROCEDURES

   A.   **A Comprehensive Administrative Procedure was Implemented by Congress.**

The Act provides that:

> The Secretary of Labor is authorized to take such actions including imposing appropriate penalties and seek injunctive relief and **specific performance of contractual obligations** as may be necessary to assure employer compliance with the terms and conditions of employment under this section.
>
> 8 U.S.C. § 1188(g)(2)
> [*Emphasis Added*]

Regulations have been adopted for enforcement of contractual obligations for temporary alien agricultural workers.  20 CFR part 501.  Those regulations apply to the enforcement of **all** contractual obligations applicable to H-2A workers.  29 CFR 501.0.  The Secretary of the Department of Labor, through the Wage and Hour Division, investigates.  29 CFR 501.6.  The Wage and Hour Department Administrator may institute administrative proceedings to recover unpaid wages, enforce the provisions of a work contract, assess a civil money penalty, and seek reinstatement.  29 CFR 501.16.  The WHD Administrator may also debar the employer.  29 CFR 501.20.  The WHD Administrator may also require an increased bond by the employer.  20 CFR 501.9(c).

   B.   **Congress Has Limited The District Court's Jurisdiction.**

The jurisdiction of the United States District Courts is limited to

> ...all causes, civil and criminal, brought by the United States that arise under the provisions of the subchapter.
> 8 U.S.C. § 1329

<u>Reno v American-Arab Anti-Defamation League,</u> 575 U.S. 471, 477 (n.4)(1999).  ("This provision was subsequently amended by the ITRRA to make it clear that it applies only to actions brought by the United States.").

**VII    NO PRIVATE RIGHT OF ACTION EXISTS**

    **A.**    *Cort v Ash*: **The Method of Analysis**

The fact that a federal statute may have been violated and some person harmed does not automatically give rise to a private right of action "in favor of the person." *Cannon v. University of Chicago,* 441 U.S. 677, 688 (1979)  Congress did not provide a private right of action in the Act.  As noted above, Congress conferred authority upon the Secretary of Department of Labor and limited the Federal District Court's jurisdiction.

The Supreme Court has created a four factor test for determining the existence of an implied right of action "in a statute not expressly providing one." *Cort v Ash,* 422 U.S. 66 (1975).  A court determining whether a private right of action is implied in a statute must consider:

> 1. Whether the plaintiff is "one of the class for whose especial benefit the statute was enacted";
>
> 2. Whether "there [is] any indication of legislative intent, explicit or implicit, either to create such remedy or deny one";
>
> 3. Whether a cause of action is "consistent with the underlying purposes of the legislative scheme" and;
>
> 4. Whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of states, so that it would be inappropriate to infer a cause of action based solely on federal law."

*Cort,* 422 U.S. at 78.

In subsequent cases, the Supreme Court went further to note that each of the factors is not equal in weight.  In *Touche Ross & Co. v Reddington,* 442 U.S. 560 (1975) the Court said "the central inquiry" was whether Congress intended for there to be a private right of action.

*Touche Ross*, 442 U.S. at 568; *Lamie v United States Trustee,* 540 U.S. 526, 534 (2004). This circuit has decided that in analyzing the *Cort,* factors it will focus on the second factor, "whether Congress intended to provide the plaintiff with a private right of action" is the "key inquiry in this calculus." *Opera Plaza v Hoand ,* 376 F.3d 831, 839 (9th Cir, 2004). See also: *Orkin v Taylor,* 487 F.3d 734, 739 (9th Cir, 2007).

"We...begin...our search for Congress's intent with the text and structure of [the statute]." *Alexander v Sandoval,* 532 U.S., 275, 288 (2001); *Lamie,* 540 U.S. at 534. (" The starting point in discovering Congressional intent is the existing statutory text"). In conducting this examination the court must consider "the entire statutory scheme provided by Congress to determine if a private cause of action exists, noting that analogous provisions expressly provided for private causes of action can imply Congressional intent not to create an implied cause of action."

### B. The Statute: An Analysis

Congress did not provide a private right of action when the Act, and its modifications were enacted. As noted in the previous section, Congress specifically limited the jurisdiction of the District Courts to cases brought "...by the United States..." 8 U.S.C. § 1329.

#### 1. Congressional Intent

When a federal statute provides for administrative remedies in lieu of, or as a prerequisite to a right to sue, a private right of action does not exist "unless Congressional intent can be inferred from the language of the statute, the statutory structure, or some other source." *Karahalios v Nat'l. Fed'n of Fed. Employees,* 489 U.S. 527, 532-33 (1989). Congressional intent is the focal point in determining whether to infer a private right of action from a federal statute. As the Supreme Court has stated:

> In the absence of a strong indication of contrary Congressional intent, we are compelled to conclude that Congress provided in the statue precisely the remedies it thought was appropriate.
>
> <u>Thompson v Thompson</u><br>484 U.S. 174, 179 (1988)
>
> <u>Middlesex County Sewage Authority</u><br><u>v National Sea Clammers Ass'n,</u><br>453 U.S. 1, 15 (1981)
>
> The presumption that a remedy was deliberately omitted is strongest when Congress has enacted a comprehensive legislative scheme, including an integrated system of procedures for enforcement.
>
> <u>Northwest Airlines v Transp Workers</u><br>451 U.S. 77, 97 (1981).

Congress knows how to grant a private right of action when it intends to do so. The plaintiffs have relied upon such a clear grant of a private in action in the fifth cause of action, relying upon 18 U.S.C. § 1595 which provides a civil remedy for violation of the TUPRA. See also: ADA, 42 U.S.C. § 12117; Rehab Act, 29 U.S.C. § 794(a)(A)(2). Here Congress did not provide such a remedy.

No known case addresses the issue of whether there is a private right of action by H-2A workers.[2] However, several courts have held that similar provisions under H-1B Visas do not provide a private right of action. "H-1B" petitions refer to applications filed under a provision of the Immigration and Nationality Act, Section 101 (a)(15)(h)(i)(b), as amended, 8 U.S.C. § 1101 (a)(15)(h)(i)(b), which authorizes an alien to come to the United States temporarily to perform services in a specialty occupation. See also: <u>Shah v Wilco Sys. Inc,</u> 126 F. Supp. 2d 641, 643 n1. (S.D.N.Y, 2000).

---

[2] Some cases have allowed a claim by H-2A workers. However, none have addressed the issue of whether a private right of action exists. *Castellanos v. Decatur Hotels*, 622 F.3rd 393 (5th Cir. 2010); *Arriaga v. Florida Pacific Farms*, 305 F.3d 1228 (11th Cir. 2002)

Title 8 U.S.C. § 1182(n) provides a comprehensive procedure under which an employer may apply for an H-1B Non-Immigrant Visa and a regulatory enforcement scheme providing for investigations and remedial actions. Pursuant to this statutory scheme, regulations have been adopted to implement the administration of H-1B applications. See: 20 CFR 655.700 et seq, Subpart H-Labor Condition Application and Requirements for Employers using Non-Immigrants, and H-1B Visas in Specialty Occupations and as Fashion Models. Both the statute, § 1182(n)(2)(a), and more specifically, the regulation, 20 CFR 655.806, describe the procedures to be used by an "aggrieved party."

The comprehensive regulatory scheme entrusts investigation of complaints and enforcement of the Secretary of Labor and the Attorney General. 8 U.S.C. § 112 (n)(2)(5). The regulation, 20 CFR 655.731, provides for complaints to, and investigation by the Wage and Hour Administrator of the U.S. Department of Labor. 20 CFR 655.731(d).

§ 1182(n) contains a comprehensive regulatory enforcement scheme that provides for investigation of a claim and for remedies. That section directs the Secretary of the Department of Labor and Attorney General to establish procedures for receipt, consideration, and a disposition of complaints. Enforcement procedures have been established by way of detailed regulations. See: 20 CFR 655.800-655.855 (detailing the enforcement scheme, with investigation authority delegated to be Administrator of Wage and Hour Division of the Department of Labor).

Several courts have held that § 1182(n) does not provide a private right of action concerning an employer's violations. *Shah,* 126 F. Supp. 2d at 647-48; *Venkatraman v REI Systems,* 417 F.3d 418, 423-24 (4th Cir, 2005); *Ndiaye v CVS Pharmacy,* 547 F. Supp. 2d 807, 811 (S.D. Ohio, 2008); *Goel v U.S. Federal Cl.,* 2004 (Attached); *Watson v Electronic Data Systems,* (N.D. Texas, p.4, 2005) (Report and Recommendation of Magistrate Judge p.3).

Here, Congressional intent weighs decisively against finding a private right of action.

### 2. An amendment to the law that removed the District Court's jurisdiction is conclusive evidence of Congressional intent.

PUB L 104-208, SEC 381(A)(1) amended the first sentence of 8 U.S.C. § 1329. Prior to the 1996 amendment the first sentence read:

> The District Courts of the United States shall have jurisdiction of all cases, civil and criminal, arising under and of the provisions of this subchapter.

The effective date of the amendment was September 30, 1996 (Ex 6).

The elimination of the District Court's jurisdiction to hear "all cases" and the limitation to the District Court's jurisdiction to cases "brought by the United States" conclusively shows Congressional intent. No private right of action exists.

### 3. The other *Cort v. Ashe* Factors

In apprising the first *Cort* factor, courts look to whether the plaintiffs who claim a cause of action exists are specifically mentioned as beneficiaries in the statute. *Cannon v. Univ. Chicago*, 441 U.S. 677, 690-91 (1979); *Touche Ross v. Redington*, 442 U.S. at 568. "The question is not simply who would benefit from the law, but whether Congress intended to confer federal rights upon beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294 (1981).

H-2A workers are mentioned in the statute, 8 U.S.C. § 1188, but the subchapter does not grant the H-2A workers substantive rights. Only federal statutes, and not rules adopted pursuant to the statute, can provide the source of an implied right of action. *Touche Ross*, 442 U.S. at 477 n 18   No benefit is conferred upon the H-2A workers by the statute. The statute was enacted to allow growers and ranchers a source of labor when the needed labor is not available. The "especial benefit" is to the growers and ranchers and to protect U.S.

workers in the local market area.  The benefit to the temporary worker is incidental.  The first *Cort* factor does not suggest that a private right of action exists.

The third *Cort* factor, whether an implied cause of action is consistent with the underlying purposes of the legislative scheme must be answered in the negative.  Congress intentionally removed language in 1996 that gave the District Court jurisdiction.  Congress intended that all questions be brought by the U.S. Department of Labor.  8 U.S.C. § 188(g)(2)  A private right of action is not consistent with the underlying purposes.  The U.S. Department of Labor provides a uniform interpretation and application of its regulations and an administrative remedy.

The fifth *Cort* factor, whether a cause of action is traditionally one relegated to state law is answered no.  The court has consistently (for more than 100 years) ruled that the federal court has broad and exclusive power to regulate immigration.  <u>Fong Yue Ting v. U.S.</u>, 149 U.S. 698, 711 (1893); <u>De Canas v. Bica</u>, 424 U.S. 351, 354-55 (1976)  State and local laws that regulate immigration are preempted.  *De Canas*, 424 U.S. at 355

**VIII   THE DISTRICT COURT LACKS JURISDICTION TO HEAR THE CLAIMS BASED UPON THE CONTRACT.**

The claims under the Fair Labor Standards Acts (First Cause of Action) and those under state law, the Washington Wage Law (Second Cause of Action) and the state common law, Quantum Meruit (Fourth Cause of Action) are based upon the breach of contract claim.  The plaintiffs claim that the contract was breached because they performed work outside the job description and they are therefore entitled to a different wage.  Because the wage was not paid, they are entitled to recourse under the state and federal wage and hour laws and the state common law claim of quantum meruit.

However, as demonstrated above, the contract claim is actually a claim (albeit disguised) under the INA. The court lacks subject matter jurisdiction of such claims and thus cannot decide the three claims without deciding matters under the INA.

**IX     CONCLUSION**

The Court lacks subject matter jurisdiction over the plaintiffs' claims of breach of contract, FLSA, state wage, and quantum meruit. There exists a method of addressing such claims through administrative procedures. The claims should be dismissed.

Submitted this 20th day of October, 2011.

/s/ GARY E. LOFLAND
GARY E. LOFLAND, WSBA # 12150
Attorney for Defendants Fernandez

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October, 2011, I electronically filed the foregoing document entitled Defendant Fernandez's Memorandum in Support of Motion to Dismiss Re: Subject Matter Jurisdiction, including the attached exhibits, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michele Besso Michele@nwjustice.org

Eric Kekel	ekekel@dunncarney.com

Weeun Wang  wwang@farmworkerjustice.org


/s/Janet Greenwalt_____
Janet Greenwalt
Legal Assistant
Lofland and Associates