1  Michele Besso
Northwest Justice Project
2  501 Larson Bldg., 6 South 2nd Street
Yakima, WA  98901
3  (509) 574-4234

4  Weeun Wang
Farmworker Justice
5  1126 16th Street NW, Suite 270
Washington, DC 20036
6
Attorneys for Plaintiffs
7
UNITED STATES DISTRICT COURT
8  FOR THE EASTERN DISTRICT OF WASHINGTON

9
ELVIS RUIZ, FRANCISCO JAVIER    |  No.  CV-11-3088-RMP
10  CASTRO and EDUARDO MARTINEZ,  |
                                |  PLAINTIFFS' STATEMENT OF
11          Plaintiffs,          |  FACTS IN SUPPORT OF
                                |  PLAINTIFFS' MOTION FOR
12      vs.                      |  PARTIAL SUMMARY
                                |  JUDGMENT
13  MAX FERNANDEZ and ANN        |
    FERNANDEZ, a marital community; |
14  and WESTERN RANGE            |
    ASSOCIATION, a foreign nonprofit |
15  organization,                |

16          Defendants.          |

17
**PLAINTIFFS' STATEMENT OF FACTS**
18
        Plaintiffs offer the following statements of fact in support of their Motion
19
for Partial Summary Judgment against defendants Western Range Association
20
(WRA) and Max Fernandez.
21
PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 1

**Western Range Association**

1.      WRA is a membership organization comprised of approximately 200 sheep rancher members.  Ex. C, Richins Dep. 34:6–22; Ex. T, WRA By-laws. WRA is owned and controlled by its rancher members.  Ex. C, Richins Dep. 17:11–20; Ex. T, WRA By-laws.

2.      WRA works with its members to obtain foreign workers to perform sheepherding work under the federal temporary agricultural guestworker program (hereinafter, the "H-2A program").  Ex. C, Richins Dep. 17:11–20; Ex. I, WRA Members Manual.

3.      Under the U.S. Department of Labor ("DOL") regulations governing the H-2A program, WRA is a "joint employer" of the H-2A workers, including the plaintiffs, brought into the United States to perform sheepherding work for WRA's membership.  WRA Answer to Complaint, ¶11 (ECF No. 63).

**Testimony and report of Dr. James Holt**

4.      On October 3, 2000, Dr. James Holt testified on behalf of WRA before the State of California's Industrial Workforce Commission regarding a proposed elimination of the exemption under California's minimum wage law for range sheepherders.  Ex. A, available at http://www.dir.ca.gov/iwc/PUBHRG10032000.htm  (hereinafter, "Holt testimony") at 88.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 2

**Northwest Justice Project**
510 Larson Bldg., 6 S. 2nd Street
Yakima, Washington 98901
T: (509) 574-4234  F: (509) 574-4238

5.      Dr. Holt was a senior economist with McGuiness Norris & Williams in Washington, D.C., general counsel to WRA.  Dr. Holt also consulted on the H-2A program for most of the other H-2A users around the country.  At the time of his testimony, Dr. Holt had been working with WRA for about twelve years and had gained a good deal of familiarity with sheepherding.  Ex. A, Holt testimony at 88.

6.      WRA executive director Dennis Richins considers Dr. Holt to be an unsurpassed expert in the sheepherding provisions of the H-2A regulations, and WRA chose him to testify for this reason.  Ex. C, Richins Dep., 180:1–8; 182:16–25.

7.      Dr. Holt provided the Commission with a report he had prepared on behalf of WRA entitled "The Open Range Sheep Industry in California and the Question of Imposing a State Minimum Wage on Sheepherders" (hereinafter the "Holt Report," set forth at Ex. B).  Ex. A, Holt testimony at 88; Ex. C, Richins Dep. 182:3–11.

8.      Dr. Holt submitted his report to the Commission with the approval of WRA's board of directors.  Ex. C, Richins Dep. 194:6–21.

9.      In his testimony, Dr. Holt stated:

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PAGE - 3

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

[The Holt Report] describes the Western Range Association structure for the use of the H-2A sheepherder program, including the particular obligations that the Western Range Association has taken on itself as a part of running the sheepherder program, *such as their status as joint employers, where they are essentially guarantors of the contract terms that the individual members contract for.*  Ex. A, Holt testimony at 89 (emphasis added).

10.    The Holt Report states:

The Western Range Association has voluntarily organized itself as a 'joint employer association' within the meaning of the H-2A regulations. *This means the Association assumes joint liability with its members for compliance with H-2A program requirements and all employment-related laws and regulations.*  Ex. B, Holt Report at 8 (emphasis added).

11.    The following paragraphs 12 through 19 set forth additional aspects of WRA's joint employer relationship with its members and workers as described in the Holt Report.

12.    "[I]f a member files for bankruptcy and fails to pay the herders, the WRA would assure that the herders' wages are paid."  Ex. B, Holt Report at 8.

13.    "[WRA] suspends and terminates the membership of members who fail to comply with [WRA] rules or legal requirements."  Ex. B, Holt Report at 8.

14.    "Since the H-2A program is very difficult for an individual rancher to use, the threat of suspension or termination by the WRA is an effective means of securing compliance."  Ex. B, Holt Report at 8.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PAGE - 4

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

15.    "As a joint employer with its members[,] the WRA is also a joint guarantor with its members of the written employment contract entered into with every sheepherder."  Ex. B, Holt Report at 9.

16.    "Among other things, the contract guarantees the herder full time employment for three years."  Ex. B, Holt Report at 9.

17.    "If a rancher no longer needs a herder, or a herder is dissatisfied with his employer, the WRA will transfer the herder to another rancher member."  Ex. B, Holt Report at 9.

18.    "Individual rancher members cannot terminate a herder's employment with the WRA[;] they can only refer the herder to [WRA] for reassignment."  Ex. B, Holt Report at 9.

19.    "Involuntary termination of herders by the WRA are [sic] very rare. Herders who are terminated, whether voluntarily or involuntarily, are offered prepaid return transportation to their home country by the WRA."  Ex. B, Holt Report at 9.

20.    WRA executive director Dennis Richins has indicated that of all of the above statements from the Holt Report are true and apply in full force today. Ex. C, Richins Dep. 194:22–197:14.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 5

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

### **WRA assumed employer responsibilities as part of its participation in the H-2A Program**

21.     In order to employ temporary agricultural workers under the federal H-2A program, prospective employers must apply to the DOL for H-2A labor certification in compliance with DOL rules governing the H-2A program.  20 C.F.R. § 655.100 (1987, amended 2009, 2010).[1]

22.     In its applications for H-2A labor certification to bring the plaintiffs into the United States as H-2A workers, WRA named itself as the employer and described itself as an association of joint employers.  Ex. C, Richins Dep. 115:21–116:16; 136:12–22; Ex. G, WRA-000025.

23.     Under DOL rules governing the H-2A program, a prospective H-2A employer must agree, as part of its application for H-2A labor certification, to abide by all conditions of employment required in the rules.  20 C.F.R. § 655.103. In doing so, the employer is required to make a number of specific assurances, among other things, that the employer agrees to comply with all applicable federal, state, and local employment-related laws and regulations, including health and safety laws.  20 C.F.R. § 655.103(b).

---

[1] As the cited provisions of the H-2A rules are substantially the same in each of the 1987, 2009, and 2010 versions of the rules, all such provisions are hereinafter cited to the 1987 rules.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 6

24.     In its applications for H-2A certification, WRA certified under penalty of perjury, by signature of WRA executive director Dennis Richins, as to the employer's assurances regarding compliance with a number of specified conditions of employment required by the H-2A rules.  Ex. G, WRA-000030, 000032.

25.     In its applications for H-2A certification, WRA agreed, among other things, that during the applicable period of employment, the employer will comply with all applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws.  Ex. G, WRA-000031.

26.     In its applications for H-2A certification, WRA also agreed that the wage rate offered to prospective H-2A workers is the highest of the adverse effect wage rate, the prevailing wage rate, or the federal or state minimum wage as applicable, and that the employer will pay the offered wage during the entire period of the approved labor certification.  Ex. G, WRA-000030.

27.     Following DOL approval of its applications for H-2A certification, WRA petitioned the U.S. Department of Homeland Security ("DHS") for the issuance of H-2A visas that allow its recruited workers admission into the United States.  Ex. C, Richins Dep. 157:15–158:20;  Ex. H, WRA-000014–000016.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 7

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

28.     In petitioning the DHS for H-2A visas for sheepherders, WRA identifies itself as the employer.  Ex. C, Richins Dep. 159:2–9;  Ex. H, WRA-000014.  Only an employer of a prospective H-2A worker may petition DHS to issue H-2A visa, and WRA is allowed to do so as a joint employer.  Ex. C, Richins Dep. 159:10–15.

29.     When a WRA member "orders" an H-2A sheepherder from WRA, the member must sign a sheepherder "Application Agreement" that "defines the conditions of employment for [the] sheepherder."  Ex. I, WRA Members Manual, WRA-000310;  Ex. C, Richins Dep. 139:16–140:20.

30.     WRA's sheepherder application agreement requires the member to certify its need for an H-2A sheepherder, agree to pay WRA specified sums to engage in efforts to obtain the requested herder, and agree to a detailed list of terms and conditions of employment to which the member must adhere.  The required terms and conditions include provisions as to the period of employment; wages, insurance and other benefits; that the employment be full-time and year round work; and that the member is familiar with, among other things, the DOL's H-2A rules and regulations and agrees to abide by them.  Ex. D (Richins Dep. Ex. 9) at p. 2 of 4.

**WRA recruited and hired plaintiffs in Chile, and
<u>brought them to the United States as H-2A workers</u>**

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 8

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1    31.    For over the past several years, WRA has retained "recruitment

2    coordinators" in Chile and Peru to recruit potential H-2A sheepherders in those

3    countries.  Ex. F, Peters Dep. 43:14–44:9;  Ex. C, Richins Dep. 100:13–17.

4    32.    The recruitment coordinators work for WRA; they do not work for

5    and have no connection with WRA's members.  Ex. C, Richins Dep. 138:15–20;

6    138:25–139:9.

7    33.    WRA's recruitment coordinator in Chile, Victor Toscanini, recruited

8    plaintiffs to work as WRA sheepherders.  Ex. C, Richins Dep. 100:13–101:15.

9    34.    WRA pays its recruitment coordinators on a commission basis, paying

10   $125 for each sheepherder recruited to WRA; in 2008, WRA paid its recruitment

11   coordinators in Chile and Peru a total of $60,279.  Ex. C, Richins Dep. 101:3–9;

12   Ex. F, Peters Dep. 48:22–49:24.

13   35.    Before a recruited worker travels to the United States, WRA's

14   recruitment coordinator provides the worker with a Pre-Employment Notice of

15   Rights and Obligations ("pre-employment notice").  Ex. C, Richins Dep. 110:10–

16   111:24;  144:6–8;  Ex. E, (Richins Dep. Ex. 10).

17   36.    The pre-employment notice, printed in both English and Spanish, is a

18   standard form prepared by WRA.  Ex. C, Richins Dep. 110:25–111:6.  WRA

19   requires the notice to be signed by a recruited worker before arrangements are

20

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 9

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1    made for the worker's departure from his home country. Ex. C, Richins Dep.

2    144:9–145:2;  Ex. E (Richins Dep. Ex. 10).

3        37.    In the pre-employment notice, WRA describes, among other things,

4    the nature of the work to be performed by the recruited worker; the minimum wage

5    rate to be paid; transportation arrangements to and from the worker's home

6    country; and the provision of tools, housing, food, and insurance benefits.  Ex. E,

7    (Richins Dep. Ex. 10)

8        38.    The pre-employment notice agreement informs the worker that all H-

9    2A sheepherders are subject to transfer; instructs the worker to contact WRA if a

10   member no longer has need of the worker, in which case the worker will be

11   transferred to another job assignment; and advises the worker to contact WRA

12   immediately if the worker is "having any problems" or becomes "unemployed."

13   Ex. E (Richins Dep. Ex. 10).

14       39.    WRA arranged for transportation of the plaintiffs from Chile to their

15   U.S. worksites, including Fernandez Ranch.  Ex. J, WRA-000068–000073 (Elvis

16   Ruiz);  Ex. K, WRA-000145–000163 (Francisco Castro);  Ex. L, WRA-000266–

17   000280 (Eduardo Martinez).

18       40.    WRA pays the costs of its sheepherders' inbound transportation to the

19   United States, as well as the cost of transportation from one WRA member

20   worksite to another if the herder is transferred.  Ex. B, Holt Report at 12.

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 10

41.     WRA provides return transportation to the home country for all herders when their employment terms are completed.  Ex. B, Holt Report at 12.

**WRA controls the nature and structure of the employment relationship.**

42.     Upon a sheepherder's arrival at his U.S. worksite, WRA requires the herder and the WRA member to whom he is assigned to enter into a "Sheepherder Employment Agreement."  Ex. C, Richins Dep. 167:5–13;  Ex. M, (Richins Dep. Ex. 14), WRA-000012 (Elvis Ruiz);  Ex. N, WRA-000095–000098 (Francisco Castro);  Ex. O, WRA-000179–000182 (Eduardo Martinez).

43.     WRA provides members and workers with its standard form of employment agreement containing terms and conditions required by WRA.  Ex. C, Richins Dep. 166:10–16.   WRA does not permit any changes to be made to the terms and conditions set forth in the agreement.  Ex. C, Richins Dep. 166:4–16; 176:7–14.

44.     Under WRA's sheepherder employment agreement, the nominal parties are the sheepherder and the WRA member to whom he is assigned, but the named member is specifically identified as "a member of the Western Range Association."  Ex. M, (Richins Dep. Ex. 14), WRA-000012;  Ex. N, WRA-000097; Ex. O, WRA-000181.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 11

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

45.    Under the sheepherder employment agreement, WRA determines where the sheepherder will initially work:  "[T]he Employee hereby accepts employment as a sheepherder with the Employer *or any other Employer who is a member of the Association who may be selected by the Association at the Association's option.*"  Ex. M, (Richins Dep. Ex. 14), WRA-000012, page 1 of 2 (emphasis added); Ex. C, Richins Dep. 167:14–168:5.

46.    The agreement contains terms and conditions of employment, including terms and conditions needed to comply with DOL requirements. Ex C, Richins Dep. 170:2–6.  Ex. M, (Richins Dep. Ex. 14), WRA-000012.

47.    The agreement also contains a provision generally requiring the WRA member to "comply with all applicable laws of the United States and the individual states."  Ex. M, (Richins Dep. Ex. 14), WRA-000012, page 1 of 2.

48.    Although not explicitly referenced in the agreement, the H-2A rules provide that all terms and conditions required under the rules are incorporated in the job offers and work contracts provided to H-2A workers.  20 C.F.R. § 655.102(b) (every H-2A job offer shall include the minimum wage, benefits, and working condition provisions required under the regulations); 20 C.F.R § 655.103 (job offers must include agreement to abide by conditions set forth in H-2A labor certification rules); 29 C.F.R. § 501.10 (for DOL enforcement purposes, H-2A

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 12

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

"work contract" defined as including all material terms and conditions of employment required under H-2A labor certification rules).

49.    In anticipation of potential claims against WRA by sheepherders, the agreement provides that the WRA member "agrees to defend, indemnify, and hold the Association harmless from any claim, demand, or lawsuit arising out of or related to the employment of the Employee, including but not limited to any claim by the Employee for wages or damages of any kind." Ex. M, (Richins Dep. Ex. 14), WRA-000012, page 2 of 2.

50.    WRA maintains employment files, called "herder files," for all of its sheepherders; the files contain documentation of their employment contracts, labor certifications, travel information, and transfer records. Ex. F, Peters Dep. 36:24–37:25. In addition, any records made by WRA personnel as to a complaint by or about a herder would be kept in the herder's file. Ex. C, Richins Dep. 91:23–92:4; 234:12–235:19.

### **WRA controls the wages and benefits offered to its sheepherders**

51.    WRA will not allow members to negotiate wage rates lower than rates required under H-2A rules. Ex. C, Richins Dep. 176:7–177:5.

52.    WRA requires its members to provide worker's compensation insurance coverage to workers assigned to them, as required under the H-2A rules.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 13

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

Ex. C, Richins Dep. 41:11–23;  Ex. M, (Richins Dep. Ex. 14), WRA-000012; 20 C.F.R. § 655.102(b)(2).

53.    WRA provides health and life insurance to WRA herders pursuant to a group insurance plan.  Ex. C, Richins Dep. 40:13–18; Ex. P, WRA-000436 to 000442.  WRA's sheepherder employment agreement requires the herders to pay for one half of the monthly premium for insurance coverage. Ex. M, (Richins Dep. Ex. 14), WRA-000012.

54.    WRA would not be able to provide this group insurance plan to its herders were it not their joint employer.  Ex. C, Richins Dep. 40:13–41:10.

55.    WRA's group insurance plan for its herders also covers WRA's office employees, though with a different schedule of benefits than the one applicable to herders. Ex. P, WRA-000442.

**WRA controls workers' job assignments and has
the power to transfer workers from among assignments**

56.    The sheepherder employment agreement provides that WRA may "transfer [the herder] to another Employer, who is a member of the Association, provided that the new Employer agrees to be bound by all terms and conditions of this Agreement."  Ex. M, (Richins Dep. Ex. 14), WRA-000012.

57.    Under the sheepherder employment agreement, if a herder objects to a transfer, "the Association will consider the worker's concerns," but a worker who

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 14

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1 refuses a transfer "may be subject to dismissal."  Ex. M, (Richins Dep. Ex. 14),

2 WRA-000012, page 2 of 2.

3     58.    WRA members may not transfer herders among themselves without

4 obtaining WRA's involvement and consent; otherwise, WRA would lose control

5 over worker assignments. Ex. C, Richins Dep. 210:25–212:5.

6     59.    WRA has employed transfer coordinators who are responsible for

7 arranging transfers of herders when the need arises. Ex. F, Peters Dep. 19:23–

8 20:10.

9     60.    WRA continuously maintains a listing of available herders for

10 transfer.  Ex. I, WRA Members Manual, WRA-000320.

11     61.    WRA transferred both plaintiffs Castro and Martinez from one WRA

12 member to another at various times during their H-2A employment.  Ex. Q, WRA-

13 000147–000154 (regarding transfers of Francisco Castro); Ex. R, WRA-000270–

14 000272 (transfer of Eduardo Martinez).

15     62.    At various times since 2005, five sheepherders left employment with

16 Max Fernandez after WRA transferred them to other members.  Ex. S, Max

17 Fernandez Response to Interrogatory No. 2 of Plaintiffs' First Set of

18 Interrogatories.

19     63.    WRA's pre-employment notice instructs sheepherders about the

20 possibility of transfer and to contact WRA when they need to be transferred:  "All

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  PAGE - 15

**Northwest Justice Project**
510 Larson Bldg., 6 S. 2nd Street
Yakima, Washington 98901
T: (509) 574-4234  F: (509) 574-4238

H-2A sheepherders are subject to transfer.  If a member no longer needs your

services, you will contact Western Range Association's office and at the next

available transfer you will be moved to a new employer."  Ex. E, (Richins Dep. Ex.

10).

64.     WRA's ability to transfer sheepherders from members who do not

have work for them allows WRA to ensure compliance with the three quarters

work guarantee required under the H-2A rules.  Ex. C, Richins Dep. 149:17–

150:15.

65.     WRA has also encouraged its members to make use of transfers to

resolve work placement problems: "If you have any problems with a herder please

call Western Range Association immediately.  Sometimes we can solve the

problem with communications or, if necessary, a transfer of the herder.  We will

make every attempt to find a solution for your labor problems."  Ex. I, WRA

Members Manual, WRA-000320.

66.     If a WRA member no longer needs a herder or if the herder becomes

dissatisfied with the member, WRA will transfer the herder to another member.

Ex. B, Holt Report at 9;  Ex. C, Richins Dep. 45:10–20;  46:19–47:1; 196:16–20.

67.     WRA's ability to transfer herders extends to situations in which

member is found to have mistreated a herder and in which a member has violated

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 16

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1  wage payment or other terms of employment required by the DOL.  Ex. C, Richins

2  Dep. 42:23–43:12;  44:1–45:4.

3       68.    If a herder requests reassignment to another member "because of

4  alleged mistreatment or for other reasons" WRA will accommodate the request

5  provided the herder is adequately performing his duties.  Ex. B, Holt Report at 13.

6

7                   **WRA has the power to terminate workers.**

8       69.    WRA's sheepherder employment agreement allows WRA to

9  terminate the employment of a worker who commits a willful breach of contract.

10  Ex. M, (Richins Dep. Ex. 14), WRA-000012.

11       70.    Under the sheepherder employment agreement, WRA must be made a

12  party to any termination by mutual agreement of the parties.  Ex. M, WRA-

13  000012; Ex. C, Richins Dep. 171:9–15.

14       71.    Individual WRA members cannot terminate a herder's employment,

15  and can only refer the herder to WRA for reassignment.  Ex. B, Holt Report at 9;

16  Ex. C, Richins Dep. 196:20–197:3.

17

18          **WRA has the power to terminate members who violate herder**
            **employment conditions or terms or otherwise mistreat workers.**
19

20       72.    WRA's By-laws empower WRA's Board of Directors to suspend,

21  terminate, or expel members for cause, including for conduct in violation of the

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 17

By-laws or of any other rules and regulations of the Association.  Ex. T, WRA-000388 –000389; Ex. B, Holt Report at 8;  Ex. C, Richins Dep. 195:14–196:1.

73.    For purposes of the membership termination provisions of WRA's By-laws, rules and regulations of the Association include DOL rules and regulations.  Ex. C, Richins Dep. 29:2–12.

74.    Any WRA member caught mistreating a WRA sheepherder is subject to termination of WRA membership.  Ex. C, Richins Dep. 68:21–69:21; 79:5–80:1.

75.    WRA does not permit its members to employ H-2A sheepherders to perform non-sheepherding work, also known as "work outside of the job description," because that is in violation of DOL rules and would be grounds for termination of membership.  Ex. C, Richins Dep. 190:18–191:10.

76.    WRA considers a member's use of an H-2A contracted worker outside of the job description to be a direct violation of an agreement between WRA and the DOL.  Ex. I, WRA Members Manual, WRA-000321.

### Plaintiffs' Work at the Fernandez Ranch

77.    Plaintiffs worked for Max and Ann Fernandez pursuant to the H-2A program.  Fernandez Answer, ¶1. (ECF No. 65)

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 18

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1    78.    Defendant Max Fernandez operates Fernandez Ranch.  Fernandez

2    Answer, ¶ 4. (ECF No. 65)

3    79.    Defendants filed H-2A visa applications as joint employers each year

4    from 2007 to 2010 for sheepherders.  Fernandez Answer, ¶ 4. (ECF No. 65)

5    80.    Defendant Max Fernandez entered into employment contracts with

6    each of the plaintiffs.  Fernandez Answer, ¶ 10. (ECF No. 65)

7    81.    Max Fernandez did not pay plaintiffs at either the federal minimum

8    wage or the non-sheepherder adverse effect wage rate ("AEWR") for the non-

9    sheepherding work that they performed at Fernandez Ranch.  Fernandez Answer, ¶

10    11.  (ECF No. 65)

11    82.    The sheep at Fernandez Ranch are kept fenced at the headquarter

12    ranch every year from some time in December until after lambing is finished in

13    April.  Ex. U, Fernandez Dep. 34:8–17.

14    83.    Plaintiff Eduardo Martinez arrived at Fernandez Ranch on January 5,

15    2010.  Ex. Y, WRA 000177.

16    84.    Eduardo Martinez worked in January and February 2010 at the

17    headquarters ranch feeding the sheep, cows and horses twice per day.  This

18    involved loading hay bales onto pickup trucks, driving to wherever the animals

19    were being kept, and then unloading the hay for the animals. Ex. Z, Martinez Dep.

20    17:1-21.

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 19

85.     Mr. Martinez also worked in January and February 2010, cleaning up at the ranch and performing truck and machine maintenance.  Ex. Z, Martinez Dep. 17:1–22:21; Ex. AA, Maintenance Records; Decl. Martinez ¶¶ 2–3.

86.     In early March 2010, Mr. Martinez continued feeding the animals, checked fences, cleaned the yard and patio, and cut firewood.  Ex. Z, Martinez Dep. 22:22–23:1–3.

87.     In the remainder of March and part of April 1010, Mr. Martinez worked a shift from 6:00 am to 8:00 pm helping with the lambing at the headquarters ranch, as well as doing clean-up.  Ex. Z, Martinez Dep. 23:13–24:6.

88.     After lambing was finished, Mr. Martinez prepared the sheep to be taken to pasture, cleaned at the ranch, fed the dogs and the cows, and checked on the horses, after which he helped with calving.  Ex. Z, Martinez Dep. 24:7–25:14.

89.     In May 2010, Mr. Martinez worked one week taking the sheep to pasture each day, leaving at 6:00 in the morning and returning the sheep to the corral at the headquarters ranch at 6:00 in the evening.  At night he stayed in the ranch housing.  Ex. Z, Martinez Dep. 25:20–26:10; Decl. Martinez ¶ 9.

90.     A week later, when a new sheepherder arrived at the ranch, that sheepherder took the sheep out to pasture, and Mr. Martinez worked at the ranch cleaning corrals, checking the pickup trucks, making firewood and constructing a

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 20

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1  corral for cattle, until he left the ranch on May 20, 2010.  Ex. Z, Martinez Dep.

2  26:11–28:11.

3      91.    During Eduardo Martinez' entire employment at Fernandez Ranch,

4  from January 5, 2010 until he left on May 20, 2010, he lived on the main

5  headquarters ranch and worked under the constant supervision of Max Fernandez.

6  Decl. Martinez ¶¶ 8–9.

7      92.    Elvis Ruiz worked at Fernandez Ranch from August 2007 until

8  January 3, 2010.  Decl. Ruiz ¶ 1.  For the first four days at the ranch, he helped the

9  other sheepherder maintaining machinery, repairing fence posts and other ranch

10  chores.  After that he took the sheep to graze on rented property near the ranch for

11  about one month.  Decl. Ruiz ¶¶ 1–2.

12      93.    In October 2007, Mr. Ruiz spent about fifteen days grazing the sheep

13  on the headquarters ranch, until the lambs were sold.  After that he worked for the

14  next several months doing a variety of ranch chores, such as: preparing the land to

15  plant, repairing machinery, changing the oil in tractors, and repairing fences.  He

16  would leave the sheep to graze on the ranch in the morning, do his other ranch

17  work, and then bring the sheep back to the corral at night.  He would also cut

18  firewood during this time.  Decl. Ruiz ¶¶ 3–4.

19      94.    During the entire time that Elvis Ruiz worked on the ranch, Max

20  Fernandez would supervise him directly or call him on the telephone regularly

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 21

**Northwest Justice Project**
510 Larson Bldg., 6 S. 2nd Street
Yakima, Washington 98901
T: (509) 574-4234  F: (509) 574-4238

1    during the day to give him instructions as to what tasks to do next and check up on

2    him.  Decl. Ruiz ¶ 16.

3        95.    Starting with the first snows in December 2007 and through February

4    2008, the sheep would stay in a corral on the main ranch.  Elvis Ruiz would feed

5    the animals twice per day, which took 2.5 hours each feeding, plus take firewood

6    to the house. Decl. Ruiz ¶ 4.

7        96.    During the lambing season of March and April 2008, Elvis Ruiz

8    worked the night shift.  Decl. Ruiz ¶ 5.

9        97.    From late April to September 2008, Mr. Ruiz took the sheep to graze

10    at various properties off the ranch, except for one week in July in which he worked

11    and slept at the ranch between grazing locations.  Mr. Ruiz stayed at the ranch

12    from October to December 2008.  In October he would take the sheep to nearby

13    properties to graze during the day three days per week.  During the other days, Mr.

14    Fernandez had Mr. Ruiz doing ranch chores.  In November 2008, Mr. Ruiz also

15    vaccinated the cows.  Once again, from December 2008 to February 2009, he

16    worked regular hours each day feeding the sheep, cows, and horses, and doing

17    chores around the ranch.  He would also run errands into Goldendale for Mr.

18    Fernandez, as well as repair and maintain machinery.  Decl. Ruiz ¶¶ 6–9.

19        98.    In March and early April 2009, Mr. Ruiz worked a regular shift

20    lambing at headquarters.  Francisco Castro worked the other shift.  Decl. Ruiz ¶ 9.

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 22

99.   From the time that Francisco Castro took the sheep out away from the ranch in late April 2009, until he returned to the ranch five months later in September 2009, Elvis Ruiz had no responsibilities for the sheep at all.  Mr. Ruiz cut the hay for harvest, prepared the tractor at the end of each day for the next day's work, repaired fences, cared for the cows and horses, and prepared machinery for storage.  Decl. Ruiz ¶¶ 10–12, ¶15 (c) & (f).  In late September 2009, Mr. Ruiz and Mr. Castro built a corral for the cows.  Decl. Ruiz ¶ 15.  In November 2009, Mr. Ruiz worked in crop land.  Decl. Ruiz  ¶15 (a) & (b).

100.   Elvis Ruiz did not work as a range sheepherder at all in 2009.  Decl. Ruiz ¶¶ 2–7.

101.   Francisco Castro arrived at the Fernandez Ranch in March 2008.  Decl. Castro ¶ 1.  He did not take the sheep off the ranch at all until late April or May of 2009.  Decl. Castro ¶¶ 2–7.

102.   From March 2008 until he asked to be transferred from Fernandez Ranch in October 2008, Mr. Castro worked on the headquarters ranch under Mr. Fernandez' direct supervision, performing a variety of ranch tasks and sleeping at the ranch housing.   During this time he built a fence on the property across the road from the main ranch and helped construct a large hay storage structure.  Decl. Castro ¶¶ 2–4, ¶11 (e), (f), (g), (h) & (k); Ex. V (Fernandez Dep. Exhibit 9).

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 23

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1    103.   From April 2008, when Elvis Ruiz started taking the sheep off of the

2    ranch to graze, until late September 2008 when Mr. Ruiz returned, Mr. Castro had

3    no responsibilities caring for the sheep. Decl. Castro ¶ 2.

4    104.   From the time of Mr. Castro's return to the Fernandez Ranch in

5    March 2009 until he left the ranch for good on March 30, 2010, he spent a total of

6    five months watching the sheep off the ranch.  During part of that time, Mr.

7    Fernandez instructed him to leave the sheep in temporary fencing during the day

8    on the pasture and to return to the ranch to perform ranch work.  Decl. Castro ¶¶ 6–

9    7, 12–13.

10    105.   Aside from that one five-month period, Mr. Castro worked the entire

11    time under Mr. Fernandez' direct supervision on the ranch, sleeping in the ranch

12    housing.  Decl. Castro ¶¶12–14.

13    106.   After Mr. Castro returned to the ranch with the sheep in September

14    2009, he stayed on the ranch performing general ranch chores for the remainder of

15    his employment with Fernandez Ranch including cleaning, repairing fences,

16    building a garage, maintaining equipment, plowing, moving boulders from fields,

17    feeding animals in the corrals, tagging new calves, and helping turn wood into

18    lumber.  Decl. Castro ¶¶ 8, 11(b), (c), (d), (i), & (j).

19    107.   Only one sheepherder at a time took the sheep to graze. Decl. Castro ¶

20    13; Ex. U, Fernandez Dep. 17:3–10; 74:4–23; 78:4–12.

21

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

108.    During plaintiffs' employment, Max Fernandez had a total of somewhere between 300-500 adult sheep. Ex. U, Fernandez Dep. 60:9–21; 61:4–8.

109.    Max Fernandez sold his lambs and calves to a buyer in Oregon in 2008-2010. Ex. U Fernandez Dep. 47:24–48:20; 50:19–51:1; Ex. W, (Fernandez Dep. Ex. 4).

110.    Max Fernandez kept watch on the sheepherders through binoculars on a daily basis even when they were herding the sheep off of the ranch. Ex. U, Fernandez Dep.18:4–20; 78:13–24.

111.    The attached map shows all of the locations at which the plaintiffs would have grazed sheep or performed other work associated with Fernandez Ranch.  Ex. X, (Fernandez Dep. Ex. 1)

    a.  Properties 10 and 11 constitute the main headquarters ranch where Fernandez' home, office, lambing barn, hay structure, and herder ranch housing are located.  Mr. Fernandez also grows grass, wheat and alfalfa there.  Ex. U, Fernandez Dep. 30:2–20.

    b.  Properties 1 and 2 are uncultivated, fenced land leased by Mr. Fernandez from the government for grazing his sheep.  These properties are approximately five miles from the main ranch.  Ex. U, Fernandez Dep. 10:18–11:24; 14:6–21.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 25

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

c. Property 3 is a fenced, uncultivated property owned by Mr. Fernandez that he uses for grazing sheep. It sits on the Centerville Highway approximately five miles from the main ranch. Ex. U, Fernandez Dep. 15:20–16:21.

d. Property 4 is an uncultivated parcel of land across the street from Property 3 that Mr. Fernandez leases to graze sheep. Ex. U, Fernandez Dep. 18:24–19:25.

e. Properties 5 and 6 are parcels owned by Mr. Fernandez where the cattle graze year round. Ex. U, Fernandez Dep. 20:15–25.

f. Property 7 is land owned by Mr. Fernandez on which he alternately grows wheat and uses for grazing.  When the sheep graze here, the herders stay at night at the main ranch in their regular housing.  Ex. U, Fernandez Dep. 23:2–10; 24:7-18.

g. Property 8 is rented land that is fenced, and that Fernandez Ranch uses to grow hay and to graze.  Ex. U, Fernandez Dep. 24:21–25: 13.

h. Property 9 is owned by Max Fernandez. He uses this fenced land across from the ranch headquarters to grow grass and alfalfa and to graze sheep.   Ex. U, Fernandez Dep. 28:13–22; 29:6–13.

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

  i. Property 12 is considered part of the main ranch. It is planted in grass and alfalfa and used for grazing for sheep and cattle.  Ex. U, Fernandez Dep. 34:18–35:10.

  j. Property 13 is a neighbor's property that Mr. Fernandez would use to graze the sheep. Ex. U, Fernandez Dep. 37:24–38:11.

  k. Each square on the map is approximately one mile long.   Ex. X, (Fernandez Dep. Ex. 1).

  l. Plaintiff Ruiz grazed sheep in 2008 for a time on the property identified in Exhibit No.2 as near the John Day Dam by the Columbia River.   Ex. U, Fernandez Dep. 35:24–36:11.

112. During plaintiffs' employment at Fernandez Ranch, Mr. Fernandez employed two or even three sheepherders at a time.  Ex. S, Max Fernandez Response to Interrogatory No. 2 of Plaintiffs' First Set of Interrogatories.

113. Lambing is done in the large barn on the main ranch, close to the home of Max Fernandez, as shown in the attached photograph.  Ex. U, Fernandez Dep. 32:11–13;  Ex. BB (Fernandez Dep. Ex. 3).

114. According to Max Fernandez, the only work that Elvis Ruiz did for the five months that Francisco Castro was caring for the sheep off the ranch, was take food to Mr. Castro, feed the horses and dogs, and remove grass from the dogs' feet.  Ex. U, Fernandez Dep. 74:4–13; 78:4–12.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 27

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

115.    The DOL has established a set of "special procedures" for employers of H-2A range sheepherders that exempt those employers from minimum hourly wage and recordkeeping requirements.  *See* Ex. CC, DOL Field Memorandum No. 24-01 (issued August 1, 2001) and attached Special Procedures: Labor Certification for Sheepherders Under the H-2A Program.

116.    The DOL's sheepherder special procedures apply only to H-2A employers' requests for FLSA-exempt sheepherders.  Ex. CC, DOL Field Memorandum No. 24-01 at pp.3.  Pursuant to the Special Procedures, qualifying H-2A employers may pay range sheepherders a flat monthly wage, regardless of the number of hours worked.  Ex. CC, US DOL Special Procedures, pp. 3.

117.    The DOL's rationale for the special procedures is the "unique characteristics of sheepherding," which requires workers to spend extended periods of time grazing herds of sheep in isolated mountainous terrain, and to be on call 24 hours a day, 7 days a week. Ex. CC, Field Memorandum at p. 1 ¶ 3.

118.    The Special Procedures are intended for workers whose duties fit within the Dictionary of Occupational Titles ("DOT") description for Ex. DD, "sheepherder" (DOT 410.687.022).

119.    The Special Procedures do not apply to those workers whose duties would be classified as Ex. EE, "Farmworker, Livestock." (DOT 410.664.010) and Ex. CC, US DOL Special procedures at Part 1.

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 28

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

120.    Under the DOL's sheepherder special procedures, employers may supplement the sheepherder job description by including information such as the size of flocks of sheep, which may be up to 1,000 head of sheep.  Ex. CC, US DOL Special Procedures, pp. 1-2.

121.    In the Holt Report, Dr. James Holt indicated that a typical flock (or "band") of sheep numbers approximately 1,000 ewes, together with their lambs, and that a single sheepherder typically works with one such band of sheep.  Ex. B, Holt Report at 6-7; Ex. C, Richins Dep. 188:18–189:15.

122.    WRA executive director Dennis Richins considers it economically infeasible to employ more than one sheepherder to care for a band of only 500 sheep.  Ex. C, Richins Dep. 188:3–18.

123.    WRA requires ranchers to have at least 500 sheep in order to become a member of WRA.  Ex. C, Richins Dep. 17:5–10;  23:24–24:9.


RESPECTFULLY SUBMITTED this 12th day of December, 2012


NORTHWEST JUSTICE PROJECT


/s/ Michele Besso
Michele Besso, WSBA #17423

**Northwest Justice Project**
**510 Larson Bldg., 6 S. 2nd Street**
**Yakima, Washington 98901**
**T: (509) 574-4234  F: (509) 574-4238**

1   FARMWORKER JUSTICE

2

3   /s/ Weeun Wang
    Weeun Wang

1    <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on December 12, 2012, I caused the foregoing

3  document to be electronically filed with the Clerk of the Court using the CM/ECF

4  system and caused it to be served by mail to the following:

5

6        John Barhoum: jbarhoum@dunncarney.com

7        Timothy J Bernasek: tbernasek@dunncarney.com

8        Gary Lofland: glofland@glofland.net

9        Weeun Wang: wwang@farmworkerjustice.org

10       John Jay Carroll: jcarroll@vhlegal.com

11

12  DATED this 12th day of December, 2012.

13                    By: /s/ Alex Galarza
                          Alex Galarza, Legal Assistant for
14                        Michele Besso, WSBA  #17423
                          Attorney for Plaintiffs
15                        Northwest Justice Project

16

17

18

19

20

21

PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT PAGE - 31

**Northwest Justice Project**
510 Larson Bldg., 6 S. 2nd Street
Yakima, Washington 98901
T: (509) 574-4234  F: (509) 574-4238