# Exhibit C

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-48

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
1                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF WASHINGTON
2      ------------------------------------------------------

       ELVIS RUIZ, FRANCISCO JAVIER )
3      CASTO and EDUARDO MARTINEZ,   )
                                     ) Case No. CV-11-3088-RMP
4           Plaintiffs,              )
                                     )
5            vs.                     )
                                     ) Deposition of:
6      MAX FERNANDEZ and ANN         ) DENNIS RICHINS
       FERNANDEZ, a marital         )
7      community; WESTERN RANGE      )
       ASSOCIATION, a foreign       )
8      nonprofit organization,      )
                                     )
9           Defendants.             )
10     ------------------------------------------------------
11                 November 06, 2012; 01:44 p.m.
12                 November 07, 2012; 09:56 a.m.
13                 Location: 1245 Brickyard Road
                   Salt Lake City, Utah 84106
14
               Reporters:  Katie Harmon, RPR, CSR &
15                  Susan Sprouse, RPR, CSR
16
17
18
19
20
21
22
23
24
25
```

is not a membership requirement that you tell the association the size of your herd.

Q. Did counsel testify correctly when he just made that statement?

[redacted]

Q. So the association operates through some kind of a corporate --

A. Yes.

Q. -- entity?

A. Yes.

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          Q.    Sheep for slaughter, are they eligible for

2     membership in Western Range?

3          A.    Yes.

4          Q.    But it says here that members must be bona

5     fide wool growers?

6          A.    Well, that's a term that was used years ago

7     for sheep people and then the hair sheep has kind of

8     come on the -- say in the last few years because of the

9     problem of getting sheep sheared, getting people into

10    the country to shear the sheep.  And then the goats have

11    been tied into it.  But they would be just like a goat

12    because you can eat the meat but you don't shear them.

13              MR. BERNASKE:  Weeun, where are we going with

14    this?  I mean, what does this have to do with this

15    lawsuit?  I understand --

16         Q.    Well, I'd like to know whether there are

17    sheepherders who work for what you call hair growing

18    operations?

19         A.    I don't -- we don't have any in our

20    association.

21         Q.    So all of your members are growing for wool?

22         A.    Wool growers.  Some of them might have a

23    handful but that's all I know.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-51

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



10          Q.   Okay.  Where would that be if someone wanted

11     to look up the number of sheep requirements for

12     membership?

13          A.   Well, it wouldn't be in any of our records.

14               THE WITNESS:  What is that, Sarah, on the

15     petition that mentions that you have to have -- when

16     they advertise had to have to --

17               MS. PETERS:  Experience.

18          A.   Experience with at least a 1000 head of sheep

19     but it doesn't say you have to own that many sheep.

20          Q.   Just for keeping order, you know, we really

21     can't have Ms. Peters testify without putting her under

22     oath.  So I'd ask you to refrain from interacting with

23     Ms. Peters for the purpose of this testimony.

24          A.   Okay.

25          Q.   So in terms of the number of sheep that you

1          A.   Yes.



13         Q.   All right.  And so other than Department of

14    Labor regulations, there would be no other --

15         A.   No.  No.  No.

16         Q.   Let me finish.  No rules and regulations

17    governing member behavior that would be expected of

18    Western Range?

19         A.   No.

20         Q.   And I gather from that statement Western Range

21    board of directors hasn't made any rules applicable to

22    member conduct as was anticipated in the bylaws?

23         A.   No.

24    (Deposition Exhibit No. 2 was received into evidence.)

25         Q.   Mr. Richins, I'm handing you Exhibit DR2.  And

```
1    to do something they wouldn't do themselves.

2              MR. BERNASKE:  Can I ask for a five-minute

3    break and come right back?

4              MR. WANG:  Sure.

5              (Break taken.)
```

23        Q.   And now you said, "We mostly serve open range

24   producers."  What do you mean by "open range producers?"

25        A.   Well, just like I was telling you, we got the

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-54

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1    alleged that they were not performing open range

2    sheepherding to this extent that would qualify Western

3    Range for the open range exemption.

4              MR. BERNASKE:  I don't know what open range

5    exemption -- that is not -- I don't recall that in the

6    pleadings at all.  It has to do with minimum wage --

7    standards -- Washington wage regulations is what it's

8    about.  It doesn't have anything to do with the

9    Department of Labor regulations.  So let's move into

10   what --

11             MR. WANG:  Let's do.  Let's move back to

12   Exhibit 2.



PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-55

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



[redacted]

Q. Is it not possible for Western Range to get out of the health insurance business as it's doing now?

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1      A.   Yes, it's very possible.  And it's very

2    possible we might be doing it because of the these Obama

3    rules.  We've had a hard time even keeping it and so

4    we'll probably be out of it before very long.

5      Q.   But in your -- what you just said about two

6    minutes ago is that you provide health insurance because

7    the Department of Labor requires it --

8      A.   I don't think it's a requirement.  The

9    Department of Labor, when it was set up, said it would

10   be nice if you could provide some insurance.  So we

11   provide the health insurance and we provide the death

12   benefit.

13     Q.   If you were to stop providing those insurance

14   benefits would you be able to avoid being a joint

15   employer of these workers?

16     A.   No.

17     Q.   Why is that?

18     A.   Because the Department of Labor originally

19   said it would be nice if you would provide them, it

20   didn't say we had to but we wouldn't be able to transfer

21   if we stopped being a joint employer, we'd have to be an

22   agent and then we couldn't transfer them.





13        Q.    So when it says at the discretion of the

14    association, are you saying that's not correct?

15        A.    Well, it's a little bit incorrect because like

16    Sarah mentioned this morning, we keep a board, a big

17    chalkboard lists people that are looking for transfers.

18    And -- but we don't advise anybody transferring them

19    unless they don't need them anymore or unless there is a

20    problem.

21        Q.    And that condition "unless there is a

22    problem," does that give you the ability to transfer a

23    worker if the worker is not being treated properly by

24    the member?

25        A.    Yes, it does.    Yeah.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-58

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-59

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



```
 5          Q.   The following sentence says, "The herder who

 6     faithfully performs his duty is guaranteed under the

 7     terms of the contract the opportunity for employment for

 8     three years."  Is that correct?

 9          A.   Yes.
```

```
21          Q.   I see.  So in terms of the guarantee, you said

22     if the member doesn't need the worker then he doesn't

23     have to have him.  So that's -- it's not the guarantee

24     of the member in this context; is that correct?

25          A.   To understand the sheep business, you go in
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-60

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1    the summertime and you've got twice as many herders as

2    you need in the wintertime.  So when it comes to

3    wintertime, this time of year, you will have several

4    herders that are going looking -- that are going to have

5    to go somewhere else like to California because their

6    season of lambing is different than the season here.

7        Q.   Well, I'm just wanting to know about the

8    guarantee for three years of employment.  The individual

9    rancher you said if he didn't need a worker he doesn't

10    have to have him, so he's not guaranteeing the three

11    years; is that true?

12        A.   No, but another member will, another member

13    will assume responsibility.

14        Q.   And so the membership makes that guarantee?

15        A.   Yes.

16        Q.   And that membership is embodied in Western

17    Range?

18        A.   Yes.



PLAINTIFFS' STATEMENT OF FACTS        Northwest Justice Project
IN SUPPORT OF PLAINTIFFS' MOTION    510 Larson Building, 6 S. 2nd Street
FOR PARTIAL SUMMARY JUDGMENT    Yakima, WA 98901
PAGE-61                      Phone: (509) 574-4234

2      Q.    And if the member rather than going out of

3    business just decided I don't need this worker --

4      A.    We'll transfer him; we'll find a place for

5    him.  We've always got a list of members that are

6    looking for herders most of the time.

7      Q.    Now, I've seen the Western Range contracts

8    with their members and they are generally for a one-year

9    period?

10      A.    Right.

11      Q.    And there is extensions for another year.  I

12    have not seen a written agreement to provide that member

13    with three years of employment -- or that worker, that

14    is.  Am I missing something?  Is there a --

15      A.    I think so.  It would probably be in the

16    contract or booklet that we have, the articles of

17    incorporation or the member manual.

18      Q.    So the contract, itself, wouldn't necessarily

19    provide that guarantee but these other sources would; is

20    that --

21      A.    I can't remember whether it's in the contract

22    or not but when you pay that much money to get them here

23    you want to use them because this gets expensive.  You

24    don't use them for three years.

25      Q.    What happens to a worker if you've made that

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-62

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          MR. WANG:  I want to ask one last question to

2    make sure the record is clear.

3          Q.   You have no factual basis to conclude that

4    this complaint was valid or not as to whether it

5    amounted to working out of the --

6          MR. BERNASKE:  Again, asked and --

7          Q.   -- job description?

8          MR. BERNASKE:  -- answered.  He said he didn't

9    fault the individual.  His answer was the individual

10   left.  He was not -- they were not able to follow-up on

11   the complaint because he left.  They did what the

12   regulations require.  They called Homeland Security,

13   that's what the piece of paper says.

14         MR. WANG:  So could you read back the question

15   and see if we can get a proper...

16         (Whereupon the reporter read back.)

17         Q.   So there is no factual basis for your

18   conclusion that this did not amount to working out of

19   the job description; is that correct?

20         A.   Right.  To me, there wasn't.





[redacted]

Q. I see. So in this case, would you regard this complaint against Max Fernandez as the first strike?

A. Not really on that one because we've never had anything previous and never had any reason to doubt him.

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1        Q.   If that's -- if the answer is no that you have

2    no responsibility that's where we will leave it.

3        A.   Okay.

4    (Deposition Exhibit No. 5 was received into evidence.)

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-65

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

2          Q.   Now, there is some discussion proceeding that

3     about -- in the paragraph before.  It talks about

4     Colorado Legal Services having filed six complaints with

5     the department, I think they're referring to the US

6     Department of Labor on behalf of sheepherders accusing

7     ranchers of providing abysmal working conditions.  And

8     you mentioned that you've done some work with Colorado

9     Legal Services?

10         A.   Lots of work with them.

11         Q.   Okay.  You mentioned Chris Snyder and Julie

12    Rodriguez?

13         A.   Chris Snyder is out of California.

14         Q.   Okay.  Colorado -- who do you know in

15    Colorado?

16         A.   I know Jennifer Rodriguez and Jennifer Lee.

17    And you'd be more than welcome to call them.

18         Q.   Were you aware of the six complaints that that

19    group filed against --

20              MR. BERNASKE:  Objection.  Relevance.

21         Q.   -- the ranchers in 2008?

22              MR. BERNASKE:  Objection.  Relevance.  Weeun,

23    where are we going with this?  I mean, let me --

24              MR. WANG:  Well, we're going on the process by

25    which Mr. Richins, you know, looks into complaints of

1    writing, in notes, telephone log or some sort of written

2    form?

3         A.    Yes.  And then they will be put in the

4    herder's file.

5         Q.    So that's a policy that you have?

6         A.    Yes, we address them immediately.

7         Q.    And the transfer coordinators, do they know

8    that that's what you require them to do?

9         A.    Yes, they know it.

10        Q.    How do they know it?

11        A.    Because that's the way we operate.  They've

12    known it since they've been in the office.

13        Q.    Do you -- you know, is that written someplace

14    in terms of their job description or how do you --

15        A.    I don't think --

16        Q.    -- make that --

17        A.    -- it's written anywhere, they just know what

18    I request and we require it from them.

19        Q.    Is that based on conversations that you've --

20        A.    Yes.

21        Q.    -- had with these people?

22        A.    Yes.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-67

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



5      Q.   So now in terms of your relationship to the

6   president, Mr. Raftopoulos, and I guess before that it

7   would have been Mr. Maez?

8      A.   Well, it's been several before since

9   Mr. Raftopoulos.

10     Q.   Is there any written form of reporting that

11  you're excepted to provide to the president?

12     A.   No.

13     Q.   But report to him orally from time to time?

14     A.   I talk to him from time to time when he will

15  ask if there are any problems.  If there is I will tell

16  him what they are and then he will say take care of it

17  and it will be taken care of.

18     Q.   And just for background, Mr. Raftopoulos, is

19  he is a full-time officer of Western Range?

20     A.   Yes, he is the president.  He will be going

21  out in June.

22     Q.   Is that a 40-hour a week position?

23     A.   No.

24     Q.   Okay.  That's what I meant when asked about

25  full time.

```
 1              THE WITNESS:  I don't care.

 2              MR. BERNASKE:  Wrap up by 5:00 tonight and

 3    then that will be three and a half hours, so you will

 4    have another three and a half tomorrow.

 5              MR. WANG:  That works for me.

 6              Gary, you still there?

 7              MR. LAUGHLIN:  Yes.

 8              MR. BERNASKE:  Are you okay if we go until

 9    about 5:00 and it then sounds like we've got three and a

10    half hours tomorrow probably.

11              MR. WANG:  That's fine.

12              (Break taken.)
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-69

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



[redacted]

Q. Do you happen to know what he does on a day-to-day basis to find herders for Western Range?

A. No, I don't. I don't.

Q. You don't. Do you get any kind of reports from him?

A. No.

Q. But the workers for the plaintiffs in this lawsuit are from Chile?

A. Yes.

Q. By definition then, would they have been

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          A.   No, I didn't.  I didn't do another thing.

2          Q.   When you were asked to sign off that things

3    were done properly, did you ask any questions about what

4    was done?

5          A.   No, I didn't because she's worked for me for a

6    long time and I trust her to do exactly what it said.

7          Q.   So you just signed and no questions?

8               MR. BERNASKE:  Objection.  Asked and answered.

9          A.   Right.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-71

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

111



25        Q.    Are you familiar with the job orders though

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-72

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1    that.  So I don't know what to tell you.   There is no

2    requirement there to my knowledge.

3         Q.   But in terms of the numbers of months, my

4    question is whether that is a Department of Labor

5    requirement or --

6         A.   What you do mean the number of the months?

7         Q.   It says, "in this case must have six months

8    experience."

9         A.   Yes, that's to make sure the herder has got

10   experience before he comes.

11        Q.   All right.  But have you seen that number of

12   months vary from three, four, five or six?

13        A.   No, it's always this -- this amount right

14   here.

15        Q.   It's always been six months?

16        A.   Yeah.

17        Q.   And just to be clear, this is not the form

18   that goes to the worker in the foreign country?

19        A.   No, it goes to the Department of Labor.

20   (Deposition Exhibit No. 8 was received into evidence.)



PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-73

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

116



17        Q.    What is the significance of Western Range

18    being named as the employer in these certification

19    applications?

20        A.    Well, the significance is, it's the only way

21    that we can do it as a joint employer.  We got to have

22    all of the members sign them and it holds up the

23    paperwork.  There is enough delay as it is without --

24    without taking it any longer.  We have a document, I

25    think, in our office gives us power of attorney to do

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-74

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
 1        (The examination continued the following day.)

 2    November 7, 2012                              9:56 a.m.

 3                  EXAMINATION CONTINUED

 4    BY MR. WANG:

 5        Q.   All right.  Mr. Richins, you understand that

 6    you are still under oath?

 7        A.   Yes.

 8        Q.   Okay.  Could you refer again to Exhibit 8?

 9    Mr. Richins, Exhibit 8 is the application for H-2A

10    certification that we had discussed at length yesterday?

11        A.   Yes.
```

23        Q.   Okay.  Could you tell us what the difference

24    is between association joint employer status and these

25    other options that you had?

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-75

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1    employees the H-2A workers were not requested to pay for

2    these application or recruitment fees.

3         A.    Right.

4         Q.    Do you recall that?  And, in fact, that those

5    fees would be prohibited.  Do you recall that, sir?

6         A.    Yes.

7         Q.    Now you indicated that those assurances were

8    not meant to apply to Western Range but to the employer

9    -- the rancher member.  Is that correct?

10        A.    Yes.

11        Q.    Is the rancher member in a position to ensure

12   that the worker paid no recruitment fees or Visa fees?

13        A.    I don't know.  But I assume they are because

14   we tell them.



21        Q.    So is Western Range in a position to ensure

22   that the recruiter takes no money from the workers?

23        A.    I can't guarantee anything.  I mean -- but

24   everyone is instructed there's no money to be given.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-76

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



[redacted]

MR. WANG: Could you mark this as Exhibit 9, please?

(Deposition Exhibit No. 9 was received into evidence.)

Q. Mr. Richins, I'm handing you Exhibit DR9. It was given to me yesterday at the close, at the end of yesterday's session. Do you know what DR9 is?

[redacted]

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



21        Q.    And why do you require the workers -- I'm

22    sorry, your members to adhere to all of these

23    obligations?

24        A.    Common, good business sense.

25        Q.    One of the applications under J is that they

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-78

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1            MR. WANG:  Okay.

2        Q.   All right.  Mr. Richins, thanks for catching

3    the oversight there as Exhibit 10 there, sir.  Okay.

4    What is Exhibit 10?

5        A.   It's a preemployment notice.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-79

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



    3          Q.    Was there any effort made to look in your

    4     office to see if there are signed forms for each of the

    5     plaintiffs?

    6          A.    I haven't made any effort.  Because once they

    7     travel, it's a different contract anyway.

    8          Q.    Okay.  So I'd ask that you look for these

    9     records and produce them when they are located, sir?

   10              MR. WILLIAMS:  Can I interject with that?

   11     Because this would have been in the documentation -- if

   12     it's in the files, it would have been provided in the

   13     documentation that has already been provided to you in

   14     the herder file.  That's the only place that that would

   15     have resided.  So if that's not in those documents, then

   16     we don't have a copy.

   17          Q.    All right.  So you're indicating that one of

   18     these forms would have been signed by the herder --

   19          A.    Yes.

   20          Q.    And the terms would have been exactly as set

   21     forth in this blank --

   22          A.    Yes.

   23          Q.    -- agreement that you provided me?  Now, this

   24     agreement between Western Range and the herder indicates

   25     that the position that the herder has applied for is

```
1          Q.   Which -- the consulate in the foreign country

2     of the worker?

3          A.   The American consulate in the foreign country.

4          Q.   I'm talking about the United States Department

5     of Labor.  I've asked you whether they've reviewed this

6     contract.

7          A.   I couldn't tell you.  I don't know.

8          Q.   Now going down to the seventh line of the

9     paragraph, the contract states "All H-2A sheepherders

10    are subject to transfer.  If a member no longer needs

11    your services, you will contact Western Range

12    Association office and at the next available transfer

13    will be moved to a new employer.  The H-2A sheepherder

14    program guarantees three quarter time employment."

15             Is that accurate as to the guarantee of the

16    worker?
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-81

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



```
16          Q.   And as we said yesterday if there was some gap

17    in your ability to transfer a worker, would it -- I

18    think you indicated that Western Range would be obliged

19    to pay the worker during that gap period.  Is that true?

20          A.   Yes.  It's never happened, but that's true.

21          Q.   Now, the contract at the end obliges -- strike

22    that.

23               There's a provision where the worker at the

24    end of the contract indicates that he's read and

25    understood that he is to be an open-range sheepherder.
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-82

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
1    person that is obliged to do that?

2         A.   Yes.

3         Q.   Not the member?

4         A.   The member contacts us.  We buy a ticket to

5    make sure they go.

6         Q.   And you are required to tell the worker that

7    he has to go at a certain time?

8         A.   Yes.  They know that.  The herders know it.

9         Q.   And is that your obligation, that is Western

10   Range's obligation, on the H-2A orders to comply with

11   that?

12        A.   Yes.

13             MR. WANG:  Make this 12, please.

14   (Deposition Exhibit No. 12 was received into evidence.)
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-83

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



```
21        Q.   And the very first page is the notice of

22   action by the Department of Homeland Security --

23        A.   Right.

24        Q.   -- to you saying yes we've approved your

25   position?
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-84

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          A.    Yes.   This is the receipt.

2          Q.    I see.   So when the petition was granted, it

3    was granted to Western Range as the employer.   Is that

4    correct?

5          A.    Yes.

6          Q.    And Western Range petitioned the Department of

7    Homeland Security as the employer for this worker.   Is

8    that true?

9          A.    Yes.



16         Q.    When the Department of Homeland Security

17   granted the petition, it's stated if you will read with

18   me on the front page, "The above petition and extension

19   of stay have been approved.   The status of the named

20   foreign worker in this classification as valid is

21   indicated above.   The foreign worker can work for the

22   petitioner."   That would be Western Range?

23         A.    Yes.   We are acting on behalf of the member.

24         Q.    Okay.   And you're adding words that don't

25   appear in the grant of the petition.   Is that right?

```
 1    second page looks like the number got caught off.   Do

 2    you see that, sir?

 3         A.   Yes.
```

17         Q.   Can you tell us how long this contract has

18    been used by Western Range?

19         A.   For years.

20         Q.   For years?

21         A.   Yes.

22         Q.   Has it been changed since the time that this

23    was entered?

24         A.   It could have been.  We've had our counsel

25    look over it and it might have been tweaked a little bit

```
1    but not much.

2         Q.   Was there anything significant in terms of

3    changes that come to mind?

4         A.   No.
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-87

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



6    and he needs to transfer him, otherwise he stays with

7    Mr. Fernandez.

8         Q.    Are there circumstances where the worker wants

9    not to work for Mr. Fernandez?

10        A.    Occasionally.

11        Q.    And then in that case he could be transferred

12   to Western Range?

13        A.    Yes.

14        Q.    Now I just want to get to a couple of other

15   points.  The compensation provision, do you see that,

16   sir?

17        A.    Yes.

18        Q.    Under Section 3 calls for a monthly salary of

19   $1,118.70.  Do you see that, sir?

20        A.    Yes.

21        Q.    Did Mr. Ruiz, was he paid that much?

22        A.    I don't know.

23        Q.    Do you know what the normal -- well, if he was

24   working with Max Fernandez, are you aware of what

25   Mr. Fernandez was actually paying his sheepherders?

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-88

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
 1        A.   Yes.
```

[REDACTED]

```
 7        Q.   Has this contract been reviewed by the

 8   Department of Labor?

 9        A.   Couldn't answer that.  Don't know.

10        Q.   All right.  At the bottom of the first page,

11   the obligations of the employee -- I'm sorry it's the

12   wrong section.  I didn't actually mean to refer to that.

13   Let's take a look at the next page.  Under Section 11

14   for termination of employment --

15        A.   Yes.

16        Q.   -- there are a number of ways in which the

17   agreement between Max Fernandez and the worker could be

18   terminated according to this provision.  Is that right?

19        A.   Yes.

20        Q.   Okay.  One of them is that if the employee

21   were to willfully breach a contract, then it says here

22   the association, that's Western Range, and/or the

23   employer, that would be Max Fernandez, may at their

24   option terminate the contract.  Do you know why Western

25   Range retained the right to terminate the contract?
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-89

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
 1          A.   I don't.

 2          Q.   Is that -- since Western Range is not a party

 3     to this contract, I suppose it's not really fair to say

 4     that they retained the right to terminate the employee?

 5          A.   Probably not.  I don't know why it's there.  I

 6     couldn't tell you.

 7          Q.   You have no idea why this is here?

 8               MR. BERNASEK:  Objection.  Asked and answered.
```



```
16          Q.   And do you know why Western Range dictated

17     that term to the employer?

18          A.   I don't know why.  I can understand why, but I

19     don't know why.

20          Q.   How can you understand why?

21          A.   Because we've told our members we want

22     everything in writing.  If they terminate them for

23     cause, we want it in writing.

24          Q.   So you have the power to terminate the

25     employees so long as you get consent by the employer and
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-90

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1        Q.   When you say you don't employ the herder, you

2   would qualify to say that you are the joint employer of

3   the herder.  Is that true?

4        A.   We've gone over this.  We're a joint employer

5   as a vehicle to bring them in, not to herd sheep.  We

6   don't have any.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-91

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



6            MR. WANG:  That should be 15.

7    (Deposition Exhibit No. 15 was received into evidence.)

8         Q.   Mr. Richins, I'm providing you with Exhibit

9    15, which has no Bates numbers but that's the way it was

10   produced --

11        A.   Yeah.

12        Q.   -- to the plaintiffs in this case.  This is a

13   copy of the report of James S. Holt, Ph.D. titled the

14   Open Range Sheep Industry in California and the Question

15   of Imposing State Minimum Wage on sheepherders.  Are you

16   familiar with Mr. James Holt?

17        A.   Yes.

18        Q.   How so?

19        A.   He was a lobbyist and worked for the law firm

20   of -- let's see, McGuinness, Norris & Williams.

21        Q.   He worked for Western Range?

22        A.   Yes.

23        Q.   You say he's a lobbyist.  What do you mean by

24   that?

25        A.   I don't know.  He -- he pretty well started



9        Q.   And was he knowledgeable about the sheep, the

10   sheep industry?

11        A.   Yes.

12        Q.   How did he acquire that knowledge?

13        A.   I don't know.

14        Q.   Did you work with him in terms of providing

15   him industry information?

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-93

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1    wage commission at that hearing.  Is that correct?

2         A.   Now say that again.

12        Q.   Did you and he have any interaction in terms

13   of preparing for that testimony?

14        A.   I can't remember.  That's been a lot of years

15   ago.  I don't know.

16        Q.   Why did Western Range pick Mr. Holt to

17   testify?

18        A.   He was more knowledgeable about H-2A than

19   anyone that we knew.

20        Q.   And in terms of that knowledge of the H-2A

21   program, that would extend to Western Range's

22   obligations and its responsibilities --

23        A.   Yes.

24        Q.   -- into the program?  Is that right?

25        A.   Yes.

or more?

A. Be more likely.

[redacted]

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234





```
16          Q.   Is that consistent with the practices of

17    Western Range Association?

18          A.   It all depends on the time of year.

19          Q.   You said that when -- during the winter,

20    there's fewer needs for sheepherders than there are

21    during the summer.  Is that correct?

22          A.   Yes.

23          Q.   And so would it be, would it be the case that

24    during the winter you don't need as many sheepherders

25    for that many sheep?
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-96

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          A.    Yes.

2          Q.    So could one sheepherder take care of two or

3   three bands --

4          A.    No.

5          Q.    -- in the wintertime?

6          A.    No.

7          Q.    Now if you were to get an application from one

8   of your members that called for 500 sheep --

9          A.    Uh-huh.

10         Q.    -- but he, the member wanted two or more

11   herders, what would you think of that in terms of

12   whether this application is calling for the right number

13   of workers?

14         A.    I'd ask him why.  And he'd have to explain to

15   me why.

16         Q.    And does that happen from time to time?

17         A.    Not very often because they can't afford them.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-97

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



11    Q.    So that's -- that would be one of those things

12    that you would apply the one strike rule?

13    A.    Right.

14    Q.    How do you find out?  How do you go about

15    making sure that people are not using herders outside of

16    their job description?

17    A.    We don't know for sure unless the herder calls

18    in and tells us something.

19    Q.    Now you said before that you've, on your watch

20    you've not thrown any member out.  So has that never

21    come up?

22    A.    Oh, it's come up, but we reprimanded them and

23    got it taken care of it.  There's been some awfully

24    close but we never had to throw one out.

25    Q.    What kind of things did the worker, was the

1        Q.   But you -- I'm just asking whether you would

2   have read this at the time that it was submitted?

3        A.   I don't know that I did because he prepared

4   it, then gave it to the meetings in the Industrial

5   Welfare Commission.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-99

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-100

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



15      A.   Yes.

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-101

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



4          Q.    He says that involuntary termination of

5    herders by the Western Range Association are very rare.

6    Herders who are terminated, whether voluntarily or

7    involuntarily, are offered prepaid return transportation

8    to the home country by Western Range Association.  Is

9    that also true?

10          A.    Yes.

11          Q.    Is there anything about the two paragraphs

12    that we've just gone over that Mr. Holt read -- wrote

13    that doesn't apply in full force today?

14          A.    No.

15          Q.    Okay.  Let me give you what we'll mark now as

16    Exhibit 16.

17    (Deposition Exhibit No. 16 was received into evidence.)

18          Q.    Mr. Richins, Exhibit 16 is a set of documents

19    marked WRA000179 through 000204.  And it was produced

20    from a group of documents that related to Western

21    Range's joint employment of Eduardo Martinez.  Do you

22    see that, sir?

23          A.    Yes.

24          Q.    Page 1 of this set of documents is the

25    sheepherder agreement between Ellison Ranching and

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-102

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
1          A.    I didn't pay much attention to it to be honest

2     with you.

3          Q.    So since we were a little bit confused about

4     what we were talking about, I thought you said yesterday

5     you reviewed the lawsuit complaint?

6          A.    I did.

7          Q.    And when you read that these workers asserted

8     that they were not working as sheepherders, did you

9     check the facts, maybe even go to Mr. Fernandez, maybe

10    check some of the other workers?

11         A.    Yes.

12         Q.    Okay.  And what did you do --

13         A.    I checked with Mr. Fernandez and he told me

14    that was wrong.  And he says I can prove it by the

15    people that work on my ranch.

16         Q.    And did you do any follow up with that?

17         A.    No.

18         Q.    You didn't check the veracity of the

19    statements to you?

20         A.    Where was I going to find an answer to it?

21         Q.    You didn't check with his other workers?

22         A.    No, I didn't.

23         Q.    So you took his statement at face value?

24         A.    Yes.
```

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-103

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234



PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-104

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

6       (Deposition Exhibit No. 18 was received into evidence.)

7           Q.   Mr. Richins, you've just been handed

8       Exhibit 18.  This is --

9               MR. WILLIAMS:  Is this something we should

10      have?

11          Q.   This was reviewed yesterday with Ms. Peters.

12      And that's the --

13              MR. BERNASEK:  Yeah, it's right here.

14          Q.   -- the WRA production numbers 000354 through

15      000369.  And are you familiar with this packet of

16      documents?

17          A.   Yes.

18          Q.   Can you just tell us what it is?

19          A.   It's member information.

20          Q.   Okay.  And it's from -- it's about Max

21      Fernandez?

22          A.   Yes.

23          Q.   Now if you would turn to page 356.  This would

24      be a letter from Mr. Fernandez to Larry Garro dated

25      September 28, 1995.  Is that Mr., Mr. Fernandez's

PLAINTIFFS' STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE-105

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

1          Q.    And are there -- could you tell us whether you

2     talked to him about these plaintiffs, though?

3          A.    I don't remember.  I think it was to do with

4     that investigation the DOL had against Max.

5          Q.    Okay.  And what do you recall happened in that

6     conversation?

7          A.    I don't remember what it was.  Nothing earth

8     shaking, I know that.

9          Q.    So you do remember talking to him about the

10    investigation but nothing else?

11         A.    Yes, that's it.





[redacted]

Q. So if you took notes about a conversation with Mr. Lopez, you would have put it into the herder files?
A. Yes.
Q. Were you ever told anything about the circumstances for Mr. Castro or Mr. Ruiz having left the ranch?

Northwest Justice Project
510 Larson Building, 6 S. 2nd Street
Yakima, WA 98901
Phone: (509) 574-4234

```
1    Ruiz v. Fernandez   11/06/12    Deposition of  Dennis Richins
2
                         C E R T I F I C A T E
3
4    STATE OF UTAH              )
                                :ss
5    COUNTY OF SALT LAKE        )
6
7            THIS IS TO CERTIFY that the deposition of
     DENNIS RICHINS, the witness in the foregoing deposition
8    named, was taken before me, Katie A. Harmon, a
     Registered Professional Reporter, Certified Court
9    Reporter, and Notary Public in and for the State of
     Utah:
10
             That the said witness was by me, before
11   examination duly sworn to testify the truth, the whole
     truth, and nothing but the truth in said cause;
12
             That the testimony of said witness was
13   reported by me in Stenotype, and thereafter caused to be
     transcribed into typewriting, and that a full, true, and
14   correct transcription of said testimony so taken and
     transcribed is set forth in the foregoing pages and said
15   witness deposed and said as in the foregoing annexed
     deposition.
16
             I further certify that a copy of the
17   transcript of the same was mailed to the witness at 1245
     Brickyard Road  Salt Lake City, UT 84106 for reading,
18   along with the original witness certificate, said
     certificate to be signed in front of a Notary Public and
19   to be returned Within 30 days of the date hereon.
20           I further certify that I am not of kin or
     otherwise associated with any of the parties to said
21   cause of action, and that I am not interested in the
     event thereof.
22
             WITNESS MY HAND and official seal at Salt Lake
23   City Utah, 21st this day of November, 2012.
24
25           _____

                     Katie Harmon, RPR, CSR
26
             GARCIA & LOVE REPORTING AND VIDEOGRAPHY
27                         801.538.2333
```

```
 1   Ruiz v. Fernandez   11/06/12   Deposition of  Dennis Richins
 2                  C E R T I F I C A T E
 3
 4   STATE OF UTAH              )
                                :ss
 5   COUNTY OF SALT LAKE        )
 6
 7           THIS IS TO CERTIFY that the deposition of
     DENNIS RICHINS, the witness in the foregoing deposition
 8   named, was taken before me, Susan Sprouse, a Registered
     Professional Reporter, Certified Court Reporter, and
 9   Notary Public in and for the State of  Utah:
10           That the said witness was by me, before
     examination duly sworn to testify the truth, the whole
11   truth, and nothing but the truth in said cause;
12           That the testimony of said witness was
     reported by me in Stenotype, and thereafter caused to be
13   transcribed into typewriting, and that a full, true, and
     correct transcription of said testimony so taken and
14   transcribed is set forth in the foregoing pages and said
     witness deposed and said as in the foregoing annexed
15   deposition.
16           I further certify that a copy of the
     transcript of the same was mailed to the witness at 1245
17   Brickyard Road  Salt Lake City, UT 84106 for reading,
     along with the original witness certificate, said
18   certificate to be signed in front of a Notary Public and
     to be returned Within 30 days of the date hereon.
19
             I further certify that I am not of kin or
20   otherwise associated with any of the parties to said
     cause of action, and that I am not interested in the
21   event thereof.
22           WITNESS MY HAND and official seal at Salt Lake
     City Utah, 21st this day of November, 2012.
23
24
25                         _____
                           Susan Sprouse, RPR, CSR
26
             GARCIA & LOVE REPORTING AND VIDEOGRAPHY
27                        801.538.2333
```