1  **Timothy J. Bernasek, WSBA No. 43604**
Email: tbernasek@dunncarney.com
2  **John R. Barhoum, WSBA No. 42776**
Email: jbarhoum@dunncarney.com
3  Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
4  Portland, OR 97204-1357
Telephone: 503-224-6440
5  Fax: 503-224-7324

**Honorable Rosanna M. Peterson**

6  Attorneys for Defendants Western Range Association

7

8  UNITED STATES DISTRICT COURT

9  FOR THE EASTERN DISTRICT OF WASHINGTON

10  ELVIS RUIZ FRANCISCO
JAVIER, CASTRO and EDUARDO
11  MARTINEZ,

12                    Plaintiffs,

13       v.

14  MAX FERNANDEZ and ANN
FERNANDEZ, a Marital
15  community; and WESTERN
RANGE ASSOCIATION, a foreign
16  nonprofit organization,

17                    Defendants.

Case No. 2:11-cv-03088-RMP

DEFENDANT WESTERN
RANGE ASSOCIATION'S
RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

18       Defendant Western Range Association ("WRA") submits the following brief in

19  response to Plaintiffs' Motion for Partial Summary Judgment, Dkt No. 140, and

20  Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, Dkt

21  No. 141.

22  /////

DEFENDANT  WESTERN  RANGE  ASSOCIATION'S  RESPONSE  TO  PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
DCAPDX_892514_v1

# I. Introduction

WRA was not a joint employer of Plaintiffs.  WRA is a non-profit organization that was created to facilitate compliance with the H-2A temporary agricultural program ("H-2A program") for its members.  Due to the regulatory requirements of the H-2A program, WRA must be listed as a joint employer of workers *for purposes of the H-2A program only*.  This distinction is critical in this case:  Plaintiffs' claims arise under the Fair Labor Standards Act ("FLSA"), not the H-2A program.

Through their focus on WRA's efforts to ensure its members comply with the H-2A program, Plaintiffs appear to suggest that any entity that facilitates placement of H-2A workers is automatically a joint employer for purposes of the FLSA. Through its early guidance and recent decision finding that the economic realities weighed against finding WRA was a joint employer, the United States Department of Labor ("DOL") has recognized that such a view is not supported by its regulations. Instead, *the only test applicable to determining joint employment under the FLSA is the economic realities test. Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997). In this case, the totality of economic realities clearly demonstrates that WRA lacked the requisite control over Plaintiffs' employment to be considered a joint employer.

WRA merely facilitated its members' compliance with the H-2A program. The only conditions it imposed on the terms of Plaintiffs' employment were designed solely to ensure its members complied with the H-2A program.  The DOL recognized this was insufficient, based on the facts of this case, to find that the factors weighed in favor joint employer status on WRA and this Court should too.  WRA is not a joint

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

DCAPDX_892514_v1

**DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
503.224.6440 / Fax: 503.224.7324

1  employer of Plaintiffs.

2       **II. WRA Was Created to Facilitate the Employment of H-2A
       Workers by its Members, Not to Act as the Employer of Such Workers.**

3

4       WRA is a non-profit organization that was created to enable its members to

5  comply with the complex and confusing H-2A program.  It was not designed to be,

6  and in fact, is not the employer of agricultural workers except as required under the

7  H-2A regulations.  Understanding the H-2A regulations and special procedures that

8  apply specifically to WRA shows that WRA's role is that of a facilitator for its

9  members rather than as an employer as Plaintiffs allege.

10      The H-2A temporary agricultural program allows American agricultural

11  employers to employ "nonimmigrant foreign workers" when there is a shortage of

12  domestic workers.  20 C.F.R. § 655.103(a).  Employers participating in the H-2A

13  program must meet program requirements which give preference to American

14  workers where possible. *See id.*

15      WRA meets these program requirements on behalf of its members under

16  special exceptions in the H-2A program. *See* 20 C.F.R. § 655.102.  WRA recruits

17  nonimmigrant foreign workers for its members and obtains visas for these foreign

18  workers. *See* 20 C.F.R. § 655.103(a).

19      Before a nonimmigrant foreign worker will be approved for a visa under the

20  H-2A program, a temporary labor certification must be obtained from the Department

21  of Homeland Security.  20 C.F.R. § 655.130.  WRA completes this on behalf of its

22  members, as this is a complex process that involves creating and advertising a master

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
DCAPDX_892514_v1                    **DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
                                        Attorneys at Law
                                   851 SW Sixth Avenue, Suite 1500
                                      Portland, OR 97204-1357
                                   503.224.6440 / Fax: 503.224.7324

1 job order detailing a single job description covering positions available with every

2 member, advertising the open position to domestic workers, tracking domestic

3 worker responses, and filing the Application for Temporary Employment

4 Certification. 20 C.F.R. § 655.121(a)(2); 20 C.F.R. § 655.131; 20 C.F.R. § 655.152;

5 20 C.F.R. § 655.156; 20 C.F.R. § 655.130. Once WRA satisfies these requirements,

6 the foreign workers WRA recruits are eligible for H-2A visas. When visas are

7 secured, WRA advances the cost of transportation from the worker's home country to

8 the state where they are employed. Members reimburse these transportation costs to

9 WRA. Peters Depo at 95-97.

10     WRA's purpose in this process is to facilitate the H-2A procedure for

11 members, and WRA has extremely limited interaction with the foreign worker once

12 they arrive at the ranches and begin work. After a worker arrives, WRA's role is

13 limited to transferring a worker to a different member if needed. WRA is a non-

14 profit organization that exists solely to aid its members in navigating the complex H-

15 2A program to help enable its members' compliance with this complex federal law in

16 obtaining workers for their operations. While as a practical matter WRA's role is

17 that of a facilitator for its members rather than an employer of foreign workers, as

18 discussed below, WRA also does not meet the legal test as an employer under the

19 FLSA and state law.

20     **III. WRA Does Not Employ H-2A Workers for**
      **Purposes of the FLSA or Washington State Law.**

21

22     Under the FLSA, an employer is any person acting directly or indirectly as

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

1  such in relation to an employee.   29 U.S.C. § 203(e)(1).   As Plaintiffs argue, the

2  definition of "employ" should be interpreted expansively to accomplish the remedial

3  purposes of the act; however, the DOL has specifically declined to adopt a "strict

4  liability" standard for defining "joint employment" under the FLSA or other statutes

5  that utilize the same definition as the FLSA.  *See* Migrant and Seasonal Agricultural

6  Worker Protection Act, 62 FR 11734-01 ("The Department has very specifically

7  avoided creating 'strict liability' through any regulatory test which would operate

8  based on a presumption that a joint employment relationship exists.")  Similarly, the

9  DOL has specifically stated that "WRA operates as a joint employer solely for H-2A

10  program purposes."   Exhibit C to Western Range Association's Response to

11  Plaintiffs' Statement of Facts ("WRA Response"), Department of Labor Special

12  Procedures, at 8.[1]

13        Thus, for purposes of the FLSA and state law, the economic realities test *is the*

14  *only applicable standard* for determining whether a joint employment relationship

15  exists.  *See Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754-55 (9th

16  Cir. 1979); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469

17  (9th Cir. 1983); *Torres-Lopez*, 111 F.3d at 639 (9th Cir. 1997); *Anfinson v. FedEx*

18  *Ground,* 159 Wn. App. 35, 50, 244 P.3d 32 (2010) (joint-employer test under state

19  /////

20  /////

---

21  [1] DOL made this statement in an early special procedures guide.  While DOL's current guide no
longer specifically discusses WRA, DOL's recent decision finding every joint employment factor
22  weighs in favor of WRA clearly demonstrates that DOL still agrees with its earlier guidance on this
subject.

DEFENDANT  WESTERN  RANGE  ASSOCIATION'S  RESPONSE  TO  PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204-1357
503.224.6440 / Fax: 503.224.7324

1  wage claims analyzed under economic realities test).[2]

2    A.    **The *Torres-Lopez* Factors Control the Joint-Employment Analysis.**

3    *Torres-Lopez* is the seminal case concerning joint employer liability in the 9th

4  Circuit and sets forth the current test for joint employment under the FLSA. *Torres-*

5  *Lopez*, 111 F.3d at 639-640. Instead of using the controlling *Torres-Lopez* factors,

6  Plaintiffs rely on the more limited set of factors set forth in *Bonnette*. While the

7  *Bonnette* factors are relevant to the Court's analysis, they must be used in conjunction

8  with the more comprehensive set of factors set forth in the *Torres-Lopez* decision. [3]

9    *Torres-Lopez* examined whether a joint employment relationship existed

10  between a farmer and a farm labor contractor under the FLSA and the Migrant and

11  Seasonal Worker Protection Act ("MSWPA"). The Court noted that the term

12  "employ" has the same meaning under both statutes, and that the concept of joint

13  employment was identical between the FLSA and the MSWPA. *Torres-Lopez*, 111

14  F.3d at 639. The Court then examined a number of relevant factors determined by

15  the agencies and courts to be the key factors in the joint employment analysis. *Id.* at

16  640.

---

17  [2] Plaintiffs spend considerable time discussing a decade old statement from an economist. This
18  statement was not directed to the issue of joint employment for FLSA purposes. It should not be
viewed as anything more than a confusingly worded statement of WRA's longstanding position that
it exists to aid its members in facilitating compliance with the H-2A program, and that it will act as
19  a guarantor of its members' obligations to its workers in the event they go bankrupt. Richins Depo
at 253-254. A guarantor is only secondarily liable for the debtor's debt. *See Robey v. Walton*
20  *Lumber Co.*, 17 Wash. 2d 242, 255, 135 P.2d 95, 101 (1943). As such, a guarantor is not a joint
employer for employment law purposes. The joint employment test is the only applicable test for
21  joint employment, and its factors must be analyzed on a case-by-case basis.
[3] Plaintiffs also make much of *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334
22  (5th Cir. 1985). However, *Salazar* neglected to employ the controlling economic realities test, and
there is no evidence the controlling economic realities test was even briefed or before the court.

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

1    The adoption of the *Torres-Lopez* factors has been recognized by the DOL as

2  the applicable joint employment test under the FLSA.  US DOL Report, Dkt No. 133-

3  4 at 3.  As a result of a complaint raised by Plaintiffs before filing this action, the

4  DOL analyzed the economic realities of the relationship between WRA, Fernandez,

5  and the workers, and found that each factor in the *Torres-Lopez* case weighed against

6  finding that WRA was a joint employer of Plaintiffs.  *Id.*

7    Application of the more expansive *Torres-Lopez* factors is also consistent with

8  other joint employment cases.  Every recent case that has examined the economic

9  realities test has emphasized that no single factor is controlling and the Court's

10  decision must be based upon the totality of circumstances.  *Bonnette*, 704 F.2d at

11  1470; *Torres-Lopez*, 111 F.3d at 639; *see also Real*, 603 F.2d at 754-55; *Zhao v. Bebe*

12  *Stores, Inc.*, 247 F. Supp. 2d 1154, 1158 (C.D. Cal. 2003) (examining totality of

13  circumstances and finding manufacturer was not joint employer with garment sewing

14  company under FLSA).  Indeed, *Zhao* applied only the *Torres-Lopez* factors to its

15  analysis of the totality of the circumstances under the FLSA, despite discussing

16  *Bonnette*. *Id.* at 1158-1160.  *Bonnette* itself stated:

17    The four factors considered by the district court provide a
      useful framework for analysis in this case, but they are not
18    etched in stone and will not be blindly applied.  The ultimate
      determination must be based upon the circumstances of the
19    whole activity.

20  *Bonnette*, 704 F.2d at 1470 (internal citations omitted).  Thus, *Torres-Lopez* provides

21  the correct analysis of joint employment in this case.  As shown in WRA's earlier

22  briefing, WRA is not a joint employer under application of the *Torres-Lopez* factors.

DEFENDANT  WESTERN  RANGE  ASSOCIATION'S  RESPONSE  TO  PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
DCAPDX_892514_v1                                    **DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
                                                   Attorneys at Law
                                                   851 SW Sixth Avenue, Suite 1500
                                                   Portland, OR  97204-1357
                                                   503.224.6440 / Fax: 503.224.7324

1  Dkt. No. 131 at 4-8.  As such, the *Bonnette* factors should be considered only in

2  addition to those in *Torres-Lopez,* and even these factors show WRA was not a joint

3  employer of Plaintiffs.

4    **B.    Even Considering the *Bonnette* Factors, WRA was not a Joint Employer.**

5

6    Plaintiffs' application of *Bonnette* contains a number of factual and legal

7  inaccuracies regarding WRA's (non)involvement in Plaintiffs' employment.  Under

8  the *Bonnette* test, the Court considers whether the alleged employer 1) had the power

9  to hire and fire the employees; 2) supervised and controlled employee work schedules

10  or conditions of employment; 3) determined the rate and method of payment; and 4)

11  maintained employment records.  *Bonnette,* 704 F.2d at 1470.  In this case, each of

12  these factors weighs against finding that WRA was a joint employer.

13    **1.    WRA Did Not Have the Power to Hire Employees, and Could Only Fire Employees to Extent Necessary to Comply with its H-2A Obligations.**

14

15    WRA did not have the power to hire any of the workers employed by

16  members, and could only fire employees to the extent necessary to meet its H-2A

17  obligations.  Plaintiffs' arguments to the contrary misunderstand WRA's role as a

18  facilitator of member's compliance with the H-2A program.  Members tell WRA how

19  many workers they wanted to hire, and WRA recruits and transports the workers to

20  the United States so that its members can hire the workers to work on their ranches.

21    In their brief, Plaintiffs confuse WRA's compliance with the H-2A regulations

22  and its recruitment activities with the power to hire or fire employees.  *See* Dkt No.

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

**DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
503.224.6440 / Fax: 503.224.7324

1  141 at 10-11.  WRA does not dispute that they ensured compliance with the H-2A

2  programs in their recruitment of workers to travel to the United States.  However,

3  mere recruitment consistent with the H-2A regulations is certainly not akin to the

4  power to hire and fire employees, nor is it what the Court in *Bonnette* meant by the

5  power to hire and fire.

6      In *Bonnette*, the 9th Circuit found that the defendant agencies had the power to

7  hire and fire home care workers hired by grant recipients based on the fact that the

8  agencies occasionally hired and fired workers when the recipient was unable to, and

9  they also controlled the grant money that these home care workers received as

10  payment.  Thus, the court stated "[r]egardless of whether the [agencies] are viewed as

11  having the power to hire and fire, their power over the employment relationship by

12  virtue of their control over the purse strings was substantial." *Bonnette*, 704 F.2d at

13  1470.  In this case, WRA had no degree of control over the workers either through

14  direct participation in hiring or firing decisions or through financial control of the

15  workers.  As the DOL stated in looking at the payment and right to hire and fire

16  factors: "Fernandez makes all the decisions involving pay rates above the specified

17  amount, pay dates, transportation, and hiring and firing, as well as completing the

18  workers payroll."  US DOL Report, Dkt No. 133-4 at 3.

19      WRA did not participate in the members' hiring or firing process.  Plaintiffs

20  discuss at length many of the terms of the H-2A program under which WRA and its

21  members were required to comply.  For example, Plaintiffs discuss the pre-

22  employment agreement, which contains a number of provisions required by the H-2A

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

DCAPDX_892514_v1

**DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204-1357
503.224.6440 / Fax: 503.224.7324

1  program to notify potential workers of their rights and responsibilities under the

2  program. Dkt. No 146-6 at 1 (Pre-employment agreement).  Among these provisions

3  are a required notification that the workers are subject to transfer.  *Id.*  The H-2A

4  program requires that employers guarantee three-quarters employment, which often

5  necessitates a transfer in the event an employer no longer has work for the worker or

6  otherwise desires to fire the worker.  *See* 20 C.F.R. §655.122(i). Thus, workers are

7  subject to transfer if their employer wants to terminate them or no longer has work

8  for them.  Exhibit A to WRA Response, Richins Depo at 43-44.  Similarly, Plaintiffs

9  note that workers are to notify WRA if they are terminated by their employer.  Dkt

10  No. 146-14 at 2 (Employment Agreement).  Again, this provision exists to ensure that

11  workers are transferred to another member in the event they are terminated so that

12  they can receive the guaranteed three-quarters employment.[4]  Richins Depo at 149-

13  150.  Indeed, the pre-employment agreement specifically states: "You are NOT

14  employed by Western Range Association but by a MEMBER of Western Range

15  Association (WRA)."  Dkt. No 146-6 at 1.

16      Plaintiffs make much of the fact that the employment agreement contains a

17  provision that makes WRA a party to any decision to terminate and allows WRA or

18  the member to terminate the agreement for willful breach.  Dkt No. 141 at 11.

19  Dennis Richins, the executive director of Western Range Association, explained that

---

20  [4] Plaintiffs confuse WRA's requirement to transfer a worker with the member's ability to fire a
    worker. Dkt No. 141 at 11.  The member DOES have the power to fire the worker from his
21  employment, regardless of whether WRA later reassigns the worker.  If WRA later reassigns the
    worker to another member, that member then hires the worker.  At no point is the worker "hired" by
22  WRA – WRA simply acts as the member's facilitator in aiding in its compliance with the H-2A
    regulations. Richins Depo at 77; 117.

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
DCAPDX_892514_v1                        DUNN CARNEY ALLEN HIGGINS & TONGUE LLP
                                                    Attorneys at Law
                                              851 SW Sixth Avenue, Suite 1500
                                                 Portland, OR 97204-1357
                                              503.224.6440 / Fax: 503.224.7324

1  he did not know why that provision exists.[5]  Richins Depo at 171-172.  As discussed

2  above, WRA has always acknowledged that in order for them to ensure compliance

3  with the H-2A regulations, its members keep WRA informed of termination decisions

4  so that WRA can transfer the worker to a new location upon termination.  *See* Richins

5  Depo at 211-212.  Further, representatives of WRA indicated that the organization

6  will not itself terminate a worker unless there is a clear violation of the H2-A

7  regulations.  Exhibit B to WRA Response, Peters Depo at 118-121; *see also* Richins

8  Depo at 43-44.  Otherwise, employment decisions rest solely with the member.  *Id.*

9  As Mr. Richins stated, WRA simply does not terminate a member's employee, as

10 both parties usually want out of the employment relationship by the time such a

11 situation arises.  Richins Depo at 44.  As such, the member will terminate the

12 employee, then WRA can transfer him.  *Id.*  Put simply, WRA has only very limited

13 rights to fire employees, and it has not exercised those rights in recent memory.

14       Finally, Plaintiffs claim that WRA's role as a facilitator in the H-2A process

15 somehow is akin to an ability to hire and fire workers.  As explained above, WRA

16 simply facilitated the legal process of getting the workers to the United States, where

17 they were then hired by its members.[6]  WRA did not itself hire the workers, nor did

18 _____

19  [5] Mr. Richins also correctly noted that such a provision is not binding on the parties to the
    agreement, as WRA is not a signatory to the agreement.  Specifically, Mr. Richins testified:
20  **Q.** Is that -- since Western Range is not a party to this contract, I suppose it's not really fair to say
    that they retained the right to terminate the employee?
21  **A.** Probably not. I don't know why it's there. I couldn't tell you. (Richins Depo at 171)
    [6] Indeed, WRA is reimbursed by the members that hire the workers for its cost of transporting the
    workers to the United States.  Peters Depo at 95-97.  In *Arriaga v. Florida Pacific Farms, LLC*, 305
22  F.3d 1228 (11th Cir. 2002), the 11th Circuit held that since transportation costs were primarily
    incurred for the benefit of the employer, not the worker, they must be reimbursed by the employer

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

1  WRA derive any benefit from the work performed by the workers.  Peters Depo at

2  115-118; Richins Depo at 148.  WRA exists simply to facilitate the H-2A process for

3  its members, and does not itself have the ability to hire or fire workers.  It does not

4  meet this factor of the *Bonnette* analysis.

5  **2.  WRA Did Not Supervise or Control Any Aspect of the Plaintiffs' Work Schedules or Conditions of Employment.**

6

7  WRA did not supervise or control any aspect of the workers' schedules or

8  conditions of employment.  Plaintiffs' arguments regarding the degree of control over

9  workers' schedules and conditions of employment completely miss the mark.  Instead

10  of focusing on the *actual conditions of Plaintiffs' work*, Plaintiffs focus instead on the

11  form of the workers' agreements with their employers and the ability to transfer

12  workers if they are fired by their employer.  Dkt No. 141 at 11-15.  In addition to

13  being factually inaccurate, Plaintiffs' arguments are irrelevant to the factors in the

14  *Bonnette* case.

15  In *Bonnette*, the 9th Circuit made clear that the "control" factor examined the

16  "structure and conditions of employment," including the number of hours each

17  worker would work, and exactly what tasks would be performed.  *Bonnette*, 704 F.2d

18  at 1470.  This factor was thoroughly discussed in both *Torres-Lopez* and *Zhao*.  In

19  *Torres-Lopez*, the 9th Circuit examined control over the following items in examining

20  _____

21  in the first paycheck if failure to reimburse would drive the wage rate below the minimum wage.  *Id.* at 1242-1244.  In this case, Fernandez, the employer, derived the benefit from hiring the workers, and is the entity that shoulders those costs.  Peters Depo at 95-97.  Unlike the defendant in

22  *Arriaga*, WRA derives no benefit from the transportation of the workers, and does not itself bear any of the expenses incurred in transporting them to the United States..

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

DCAPDX_892514_v1

**DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204-1357
503.224.6440 / Fax: 503.224.7324

1    the alleged employer's degree of control:  the daily harvest schedule, the number of

2    workers needed for harvest, when harvest occurred, the right to inspect the work, the

3    daily presence of the alleged employer, and the degree of communication with the

4    other employer.    *Torres-Lopez*, 111 F.3d at 642.    Similarly, the court in *Zhao*

5    examined the alleged employer's supervision of day-to-day management of the

6    employees, who scheduled work, who controlled worker shifts and hours of work,

7    and who was responsible for employee assignments. *Zhao*, 247 F. Supp. 2d at 1160.

8    Based primarily on the lack of control of the manufacturer over the operations of the

9    garment sewing company, *Zhao* concluded that the manufacturer was not a joint

10   employer of the employees even though its agent occasionally inspected the facilities.

11   *Id.*

12         In WRA's case, each and every factor examined in *Bonnette, Torres-Lopez,*

13   and *Zhao* demonstrates that WRA lacked the requisite control over the workers to be

14   considered a joint-employer.    Fernandez, not WRA, controlled the hours each

15   employee worked, the tasks to be performed by each worker, the herding schedule,

16   the number of workers needed for herding, and the day-to-day management of the

17   employees. *See* Richins Depo at 117.  Further, each Plaintiff testified that WRA

18   never inspected the work performed by the workers and it was never present at the

19   ranches. *See* Dkt No. 133-2, Castro Depo at 66; Dkt No. 133-3, Martinez Depo at 48;

20   Dkt No. 133-1, Ruiz Depo at 40.  Finally, WRA does not communicate with its

21   members about the specific work performed by the worker other than as required

22   under the H-2A program.  Richins Depo at 224.

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

1    Plaintiffs' arguments to the contrary attempt to manufacture a relationship

2    between the parties that simply did not exist.  For example, Plaintiffs argue that since

3    WRA provided a form sheepherder agreement to its members, it must have had

4    control over the structure of the employment relationship.  Dkt No. 141 at 12.  While

5    WRA did provide a form sheepherders agreement for its members to use, it did so

6    simply to ensure that the agreement complied with the H-2A regulations, not to

7    exercise control over the employment relationship.  *See* 20 C.F.R. § 655.122.

8    Similarly, Plaintiffs again misunderstand the purpose of WRA's ability to

9    reassign workers that have been fired by one of its members.  Dkt No. 141 at 12-14.

10   WRA may reassign the workers when they are fired by a member for any number of

11   reasons – there is no more work for the worker, the worker has expressed concerns

12   about the employer, etc.  Peters Depo at 26, 31-32; Richins Depo at 43-44.  WRA

13   cannot prohibit a member from firing a worker; however, since the H-2A regulations

14   require that the workers are paid for three-quarters of the contracted time, WRA will

15   transfer the worker to ensure compliance with the regulations.  *See* 20 C.F.R. §

16   655.122(i); Richins Depo at 149-150.  This ability to transfer did not grant WRA any

17   control over the day-to-day work of the worker, nor did WRA have the power to

18   assign specific work to a worker.[7]  Peters Depo at 118-120.

19   _____

20   [7] The case Plaintiffs cite in support of their position is unpersuasive.  WRA functions nothing like
the temporary staffing agency in *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st
Cir. 1998).  In that case, unlike WRA, the workers were the direct employees of the staffing agency

21   – the agency hired and fired the workers, determined the worker's pay, required the workers to
submit timesheets, issued the worker's paychecks, and maintained the worker's pay and

22   employment records.  *Id.* at 676.  As with most temporary staffing agencies, Baystate was the direct
employer of the workers, and responsible for all aspects of their work-related activities.  In short,

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

DCAPDX_892514_v1

**DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
503.224.6440 / Fax: 503.224.7324

1    Finally, while WRA may retain some authority to intervene where problems

2  arise between the member and the worker, WRA's powers are limited to ensuring

3  compliance with the H-2A regulations.    While workers may contact WRA in the

4  event a problem arises, WRA will not intervene between the member and the worker

5  if there is such a problem, but will simply transfer the worker if both parties desire it.

6  Richins Depo at 43-44.   Further, WRA's power to take action against members who

7  violate employment laws is not related to the employment agreements between the

8  members and the workers, but rather relates to independent agreements with

9  members as a condition of their membership in WRA.  *See* Richins Depo at 48-49.

10    In short, Plaintiffs did not examine any of the actual factors or conditions of

11  work relied on by the Court in *Bonnette*, *Torres-Lopez*, and *Zhao*.  Instead, Plaintiffs

12  focus on aspects of the relationship between WRA and its members that are outside

13  the scope of the FLSA economic realities test and are quite simply not relevant to this

14  analysis.   It is clear that WRA was merely a facilitator for its members, and did not

15  exercise any control or supervision over the work activities of these workers.    WRA

16  does not meet the second factor of the *Bonnette* analysis.

17      **3.      WRA Does Not Determine the Rate or Method of Payment of
           its Members' Workers.**

18

19    WRA does not determine the rate or method of payment of the workers

20  _____

21  the other factors in *Baystate* weighed in favor of finding that Baystate was the employer of the
    workers, despite the fact that due to the nature of a temporary staffing service, Baystate did not
    directly supervise the work its employees did each day.  In this case, WRA does not function as the

22  workers' direct employer, but rather as a facilitator for its members who handle all aspects of the
    employment relationship.

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

DCAPDX_892514_v1              **DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
                                   Attorneys at Law
                              851 SW Sixth Avenue, Suite 1500
                                 Portland, OR  97204-1357
                              503.224.6440 / Fax: 503.224.7324

1  employed by its members.  Plaintiffs' arguments to the contrary again focus on

2  factors outside those contemplated by the Court in this analysis, and confuse the

3  requirements of the H-2A program with requirements imposed independently by

4  WRA.  In *Bonnette*, the 9th Circuit noted that it was undisputed that the workers'

5  wages were paid for by the agencies – indeed, the funding for the home care worker

6  program came directly from the agencies.  *Bonnette*, 704 F.2d at 1470.  Conversely,

7  in *Zhao*, the Court refused to find that the manufacturer had control over the payroll

8  records or wages simply because it employed an agent to monitor the garment sewing

9  company's compliance with federal and state labor laws.  *Zhao*, 247 F. Supp. 2d at

10  1160.  In this case, it is clear that the rate was determined by the DOL and the method

11  of payment was determined by Fernandez.  *See* Dkt No. 146-14 (Employment

12  Agreement); *see also* US DOL Report, Dkt No. 133-4 at 3.  The bottom line is that

13  Fernandez was responsible for paying the worker and controlled the method of

14  payment.[8] WRA controlled neither the rate nor the method of payment.

15      Thus, unlike the agencies in *Bonnette*, WRA did not directly pay the workers

16  or exercise any control over the purse strings – that power rested solely with the

17  members.  Like the manufacturer in *Zhao*, WRA simply monitored compliance with

18  federal and state laws, but did not have any direct access or control over the wages

19  paid to the workers.  WRA simply required its members to pay the wage required

20  under the H-2A program.  Since WRA did not control the method or rate of pay it

21  [8] Plaintiffs make much of the fact that WRA is a guarantor of its members' payment if the member
is in bankruptcy and is unable to pay. WRA's agreement to act as a guarantor in the event of
22  bankruptcy is part of its agreement with its members, and is designed ensure compliance with the
H-2A regulations. *See* Richins Depo at 254-255

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

1    does not meet this factor of *Bonnette*.

2    **4.    WRA Did Not Maintain Employment Records for its Herders.**

3    Plaintiffs cannot seriously argue that WRA maintained employment records for

4    its herders.    While Plaintiffs correctly note that WRA maintained copies of visa

5    information, employment contracts, travel information, and transfer records, these

6    records are not "employment records" within the meaning of *Bonnette*.    In *Bonnette*,

7    the agencies directly paid for the home care workers, and kept records of documents

8    relating to the *employees' actual employment with the recipients*. *Bonnette*, 704 F.2d

9    at 1470.    Similarly, in *Zhao*, the court mentions payroll records as the key

10    employment records in the *Bonnette* analysis. *Zhao*, 247 F. Supp. 2d at 1160.    In this

11    case, Fernandez controlled the hours worked by the workers, the method and rate of

12    payment to the workers, and all other key aspects of the employment agreement.    As

13    such, Fernandez kept all records of such employment.    The records kept by WRA

14    *have nothing to do with the workers' actual employment* with the members – they

15    were simply evidence of the workers' general dates of arrival and departure in the

16    states and the locations where their actual employment records can be found.    Peters

17    Depo at 37.    WRA did not keep employment records within the meaning of *Bonnette*,

18    and thus does not meet the fourth factor of the *Bonnette* analysis.

19    As discussed above, WRA is a mere facilitator for its members to enable their

20    compliance with the H-2A process.    WRA is a non-profit organization that exists

21    solely for the benefit of its members.    It does not itself supervise, control, or

22    otherwise dictate any aspect of the actual work performed by the workers employed

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 17
DCAPDX_892514_v1                    **DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
                    Attorneys at Law
                    851 SW Sixth Avenue, Suite 1500
                    Portland, OR 97204-1357
                    503.224.6440 / Fax: 503.224.7324

1 by its members.  Unlike the employers in *Bonnette* and *Torres-Lopez*, it does not

2 have the ability to hire or fire workers, it does not control any aspect of the work

3 performed by the workers, and it does not participate in payroll or keep payroll or

4 other employment records.  Much like the manufacturer in *Zhao*, it simply provides a

5 service for which its members have contracted, and leaves the actual work to its

6 members.  As such, WRA does not meet any of the four factors deemed relevant by

7 the Court in *Bonnette* in the joint employment analysis.

8     **C.**    **Under the *Torres-Lopez* factors and based on the totality of the economic realities of the circumstances, WRA is not a joint employer of Plaintiffs.**

9

10 As discussed at length in WRA's Memorandum in Support of Summary Judgment,

11 application of the Torres-Lopez factors clearly demonstrates that WRA was not a

12 joint employer with Fernandez for purposes of the FLSA.  Dkt. No. 131 at 4-8.

13 Rather than reargue the points raised in WRA's earlier briefing, the points are

14 summarized as follows:  Fernandez was Plaintiffs' only employer for FLSA

15 purposes.  He told Plaintiffs what work to perform, supervised their work, controlled

16 the method of payment, controlled their work schedule, and work was performed on

17 his ranch using his equipment.  In fact, each Plaintiff testified that they never spoke

18 to or saw any WRA representative while they worked for Fernandez.  As such, WRA

19 does not meet the test for joint employment set forth in *Torres-Lopez*.

20     **IV.  Plaintiffs' Breach of Contract Claim Fails for Want of a Contract.**

21     WRA did not have an employment contract with the workers.  Recognizing

22 this fact, Plaintiffs claim that WRA was a guarantor of the written contract between

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 18
DCAPDX_892514_v1      **DUNN CARNEY ALLEN HIGGINS & TONGUE** LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204-1357
503.224.6440 / Fax: 503.224.7324

1 the parties, and thus liable for any breach of contract.    Plaintiffs' claim fails.

2 Initially, Plaintiffs point to no provision in the employment agreement that obligates

3 WRA to guarantee the written contract for the benefit of the employee.    Plaintiffs

4 only point to a nonbinding, and incomplete, statement of WRA's former economist as

5 support for the proposition that WRA was a joint guarantor of the agreement.    At any

6 rate, Washington has recognized that a guarantor must answer for another's debt or

7 default *only in the event of nonperformance by the primary debtholder*.    *See Robey v.*

8 *Walton Lumber Co.*, 17 Wash. 2d 242, 255, 135 P.2d 95, 101 (1943).    In this case,

9 there is no allegation that Fernandez is not able to answer for any debts he may have.

10      Further, WRA agreed to be a guarantor of its members *only in the event they*

11 *file for bankruptcy*.    *See, e.g.,* Richins Depo at 255.    Where the guaranty is

12 conditional, the obligation of the guarantor may not be enforced unless the event has

13 occurred or the act has been performed.    *Robey*, 135 P.2d at 102.    Since Fernandez

14 has not filed for bankruptcy, that guarantee is not at issue here.    WRA is not a party

15 to the employment agreement between Fernandez and Plaintiffs, and certainly does

16 not guarantee its terms.    As such, WRA cannot be liable to the extent Fernandez

17 breached the employment agreement.

18 /////

19 /////

20 /////

21 /////

22 /////

DEFENDANT WESTERN RANGE ASSOCIATION'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

1                              **V. Conclusion**

2          Based on the foregoing, Plaintiffs' Motion for partial Summary Judgment

3   should be denied.

4          Dated:  January 14, 2013.

5

6                              DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

7

8                              _____
                               Timothy J. Bernasek, WSBA No. 43604
9                              Email:  tbernasek@dunncarney.com
                               John R. Barhoum, WSBA No. 42776
10                             Email:  jbarhoum@dunncarney.com
                               Attorneys for Defendant Western Range Association
11
                               Trial Attorney:  Timothy J. Bernasek
12                                              WSBA No. 43604

13

14

15

16

17

18

19

20

21

22

DEFENDANT  WESTERN  RANGE  ASSOCIATION'S  RESPONSE  TO  PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

**CERTIFICATE OF SERVICE**

1

2

3   I hereby certify that on January 14, 2013, I caused the foregoing document to

4 be electronically filed with the Clerk of the Court using the CM/ECF system and

5 caused it to be served by mail to the following:

6   Michele Besso    :   micheleb@nwjustice.org

7   Weeun Wang    :   wwang@farmworkerjustice.org

8   Gary E. Lofland    :   glofland@glofland.net

9   John Jay Carroll    :   jcarroll@vhlegal.com

10   Dated:  January 14, 2013.

11

12   DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

13

14   _____
   Timothy J. Bernasek, WSBA No. 43604
15   Email:  tbernasek@dunncarney.com
   John R. Barhoum, WSBA No. 42776
16   Email:  jbarhoum@dunncarney.com
   Attorneys for Defendant Western Range Association
17
   Trial Attorney:  Timothy J. Bernasek
18                WSBA No. 43604

19

20

21

22

CERTIFICATE OF SERVICE - 1
DCAPDX_714945_v2