Michele Besso
Northwest Justice Project
501 Larson Bldg., 6 South 2nd Street
Yakima, WA 98901
(509) 574-4234

Weeun Wang
Farmworker Justice
1126 16th Street NW, Suite 270
Washington, DC 20036
(202) 293-5420

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELVIS RUIZ, FRANCISCO JAVIER CASTRO, and EDUARDO MARTINEZ,<br><br>Plaintiffs,<br><br>v.<br><br>MAX and ANN FERNANDEZ, a marital community; and WESTERN RANGE ASSOCIATION, a foreign nonprofit corporation,<br><br>Defendants. | Case No. 2:11-cv-03088-RMP<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN RANGE ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Defendant Western Range Association ("WRA") asks this Court to find that it was not an employer of the plaintiffs and to grant summary judgment in its favor

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

as to all claims against it. At the summary judgment stage, a district court resolves all reasonable inferences in favor of the non-moving party and, where disputed issues of material fact exist, assumes the non-moving party's version of events to be correct. *Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1165 (9th Cir. 2012). Because WRA has not shown that the facts, when so viewed, entitle WRA to judgment as a matter of law, the motion should be denied.

## ARGUMENT

### A. WRA Has Not Shown that it Was Not an Employer of the Plaintiffs Under the Fair Labor Standards Act.

In this action, defendants WRA and Max Fernandez are alleged to have jointly employed the plaintiffs with respect to violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and other claims arising from the employment of plaintiffs under the H-2A temporary agricultural guestworker program. WRA has moved for summary judgment based upon its claim that it did not employ the plaintiffs under the FLSA, even though there is no dispute that WRA acted in the capacity of a "joint employer" when it brought the plaintiffs into the United States to work as sheepherders under the H-2A program. Plaintiffs have moved for summary judgment on the same issue, as an examination of WRA's responsibilities as joint employer under the H-2A program and other aspects of its relationship with its rancher members and H-2A workers establishes that WRA

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

"employed" the plaintiffs as a matter of law. *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Summary Judgment Memo"), ECF No. 141 at 3-16.

The FLSA's expansive definition of an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). To determine whether an entity is an employer under the FLSA, district courts in this circuit are guided by the Ninth Circuit's analysis in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). In *Bonnette*, the court upheld a district court's finding of an employer-employee relationship after examining a number of factors that revealed that the workers were dependent on the defendant as a matter of "economic reality." *Id.* at 1470. The factors examined were whether the putative employer (1) had the power to hire and fire; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* Ultimately, however, "the determination of the relationship does not depend on…isolated factors but rather upon the circumstances of the whole activity." *Id.* at 1469 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

In support of its motion for summary judgment, WRA argues that the plaintiffs cannot establish the existence of an employment relationship with WRA

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

under the economic reality assessment prescribed by *Bonnette*. As discussed below, however, WRA's argument seizes on the fact that it did not supervise the plaintiffs' day-to-day work activities and ignores or mischaracterizes other aspects of its relationship with the plaintiffs that, when viewed in totality, demonstrate that WRA employed the plaintiffs as a matter of law.

**1. Direct Job-Site Supervision is Not a Necessary Condition for WRA to Have Jointly Employed the Plaintiffs Given WRA's Ability to Intervene in Critical Aspects of the Employment Relationship.**

WRA claims that it "exercised no control whatsoever" over the plaintiffs because WRA "never supervised Plaintiffs' work at any time while at the Fernandez ranch." Defendant Western Range Association's Memorandum in Support of Motion for Summary Judgment ("WRA Summary Judgment Memo"), ECF No. 131 at 5-6. Broadly speaking, "supervision of conditions of employment" is one of the non-exhaustive factors that courts may consider under the *Bonnette* test. However, the absence of direct, job-site supervision will not dispel the existence of a joint employment relationship when supported by other salient factors and viewed in terms of the economic realities of the relationship. *Bonnette*, 704 F.2d at 1470.

In the *Bonnette* case itself, the Ninth Circuit found that an entity was an employer even where it exercised no day-to-day supervision of the workers in

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

question. Specifically, the court determined that a state agency jointly employed workers hired to provide domestic services to elderly and disabled public assistance recipients, who were themselves solely responsible for day-to-day supervision. Although the state agency played no role in the direct supervision of the workers, it played substantial roles in other aspects of the employment relationship, including situations in which the agency "intervened when problems arose that [the worker and the immediate supervisor] could not resolve." *Id*. In view of a number of ways in which the state agency was found to have had "considerable control over the nature and structure of the employment relationship," the court concluded that the agency could not avoid its obligations as a joint employer of the workers. *Id.*

Similarly, in *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998), a staffing agency that supplied client companies with temporary, low-skilled workers echoed WRA's position, arguing that it did not exercise sufficient control over the workers to be their employer, *Baystate*, 163 F.3d at 673, emphasizing that it engaged in no "direct, on-the-job supervision of the workers at the client companies." *Id*. at 676. The First Circuit, applying the *Bonnette* test, held that the absence of direct supervision was not dispositive because the company "exercised indirect supervisory oversight of the workers through its communications with client companies regarding unsatisfactory performance,

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

occasionally taking workers off the site in the middle of a job. Thus, [the staffing agency] retained the authority to intervene if problems arose" between a worker and the joint employer responsible for his or her direct supervision. *Id.*

In the present case, WRA clearly has the power to intervene when problems arise between an H-2A worker and a WRA member rancher. WRA's own argument in support of summary judgment includes the admission that "WRA has the ability to modify the employment conditions of a worker…if it finds the member is not complying with H-2A program requirements[.]" WRA Summary Judgment Memo, ECF No. 131 at 7. WRA also had power to influence the employment relationship in other ways, including setting the terms and conditions of employment in its employment contracts, recruiting and hiring the sheepherders, and ultimately culminating in the power to suspend or terminate members who fail to comply with WRA standards. *See* Plaintiffs' Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment ("SOF"), ECF No. 146 at ¶¶42 - 76. With respect to its ability to ensure that its members comply with required employment terms, WRA itself has said that "the threat of suspension or termination [of a member] is an effective means of securing [the member's] compliance [with the H-2A regulations]." SOF ¶14.

WRA's power to transfer workers further illustrates its ability to intervene to resolve employment issues that may arise between its member ranchers and

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

workers. WRA's Members Manual advises its member ranchers that WRA "will make every attempt to find a solution for [the member's] labor problems" by facilitating communication between the worker and the member, or by transferring the worker. *Id.* at ¶65. WRA will authorize such a transfer "where a rancher no longer needs a herder, or a herder is dissatisfied with his [supervising] employer." *See id.* at ¶¶17, 38, 66. If a herder requests reassignment to another member because of mistreatment or for other reasons, WRA will accommodate the request, provided the herder is adequately performing his duties. *Id.* at ¶¶67-68. Finally, WRA may discipline members who violate WRA policies, which includes employing H-2A workers "outside of the job description" for range sheepherders as defined by the DOL. *Id.* at ¶¶13, 72-76. In sum, the fact that WRA did not directly supervise the plaintiffs' day-to-day performance at Fernandez Ranch in no way indicates that WRA "exercised no control whatsoever" over the workers or their conditions of employment. As demonstrated, just the opposite is true.

**2. WRA Exercised Broad Control Over Important Aspects of Plaintiffs' Conditions of Employment.**

An H-2A agricultural association's lack of direct, on-the-job supervision likewise does not defeat a finding of joint employer status where the association exercises control over other significant aspects of the employer-employee relationship. In *Salazar-Calderon v. Presidio Valley Farmers' Ass'n*, 765 F.2d 1334

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

(5th Cir. 1985), an agricultural association that employed "H-2" workers[1] argued that it could not be held liable for wage payment violations "committed by the individual growers who employed the workers on a day to day basis and not by the [association]." *Salazar-Calderon*, 765 F.2d at 1345-46. The Fifth Circuit disagreed, finding that the association met the FLSA definition of an "employer"[2] because it exercised control over other salient aspects of the employment relationship. As the court stated:

> [The H-2] visa petitions were indisputably direct efforts by the [association] to create a pool of temporarily legalized labor which its members could share. It was [the association], not the individual growers, who determined what terms of employment would be offered in the H-2 visa petitions. It was [the association], not the individual growers, that was listed as the plaintiffs' employer in the…visa petitions.

*Id.* at 1344. Moreover, the court found that "[the association], acting for the joint benefit of its members, determined the terms and conditions of employment that the growers would offer and recruited the workers to accept the visas. Its members then freely shared the workers among themselves." *Id.* at 1346. These aspects of control, the court held, rendered the association a joint employer under the FLSA standard, despite the fact that the violations occurred in the course of the day-to-

[1] The "H-2" temporary agricultural work visa program became the "H-2A" program in 1987.

[2] Joint employment under the Farm Labor Contractor Registration Act, the statute at issue in *Salazar-Calderon*, is analyzed as under the FLSA. *See* Plaintiffs' Summary Judgment Memo, ECF No. 141 at 5 n.4.

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

day employment with the grower members. *Id.* The facts of this case compel the same conclusion.

In light of *Salazar-Calderon*, the breadth of WRA's assertion that it had "no control whatsoever" over plaintiffs' employment is astonishing given the undisputed indicia of WRA's control over the H-2A application, recruitment, and hiring process; the terms and conditions of employment needed to comply with labor standards and worker protections required under the H-2A program; the assignment and transfer of workers among WRA members; and the termination of workers, all of which are discussed in detail in Plaintiffs' Summary Judgment Memo, ECF No. 141 at 3-16. Indeed, WRA has admitted that it acts as a joint employer under the H-2A program, and that as an H-2A joint employer:

> [WRA] assumes joint liability with its members for compliance with H-2A program requirements and all employment-related laws and regulations. For example, if a member files for bankruptcy and fails to pay the herders, the WRA will assure that the herders' wages are paid. The Association suspends and terminates the membership of all members who fail to comply with Association rules or legal requirements. . . .
>
> WRA is also a joint guarantor with its members of the written employment contract entered into with every sheepherder.[3] Among other things, the contract guarantees the herder full time employment for three years. If a rancher no longer needs a herder, or a herder is dissatisfied with his employer, the WRA will transfer the herder to another rancher member. Individual rancher members cannot terminate a herder's employment with the WRA, they can only refer the herder to the association for reassignment.

---

[3] WRA requires its members to enter into a standard form contract with its H-2A sheepherders and does not allow the members to negotiate the terms or conditions of a herder's employment. SOF at ¶¶42-43, 46.

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

SOF ¶¶9-18.

Nonetheless, WRA argues that "[t]o the extent WRA is even indirectly responsible for [H-2A workers' employment] conditions, it is only as required under the H-2A program." WRA Summary Judgment Memo, ECF No. 131 at 7-8. This argument merely highlights the fact that WRA acts a joint employer of the workers because that is a requirement of the H-2A program; it does not help WRA avoid its joint employer responsibilities. WRA chose to undertake joint employer responsibilities to its H-2A workers in order for WRA and its members to participate in the H-2A program. As with any entity that chooses to employ a worker, WRA is responsible for ensuring compliance with the laws governing that employment relationship. The fact that the DOL has set specific requirements as to terms and conditions of employment that govern WRA's participation in the H-2A program cannot somehow shift employer responsibility away from WRA, and is not otherwise relevant to determining WRA's employer status.

**3. WRA Exercises Control Over Wages.**

WRA argues that it "has no control over the rate of pay or method of payment" to H-2A workers. WRA Summary Judgment Memo, ECF No. 131 at 6. Rather, WRA claims, the DOL determines the workers' rate of pay, and Max

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

Fernandez controlled the method of payment. *Id.* at 6-7. These arguments are likewise without merit.

The fact that the DOL sets a minimum wage rate for range sheepherding is of no moment. As described above, WRA voluntarily participates in the H-2A program as a joint employer, and thus jointly assumes responsibility with its members for compliance with all laws governing wages. SOF at ¶¶10, 22-26. Moreover, WRA forbids its members from negotiating wage rates lower than those prescribed by the regulations, *id.* at ¶51, and may discipline a member for noncompliance with the wage rate requirements. *See id.* at ¶¶10, 13-14, 72-73. This ability to intervene to prevent or remedy illegal pay practices establishes that WRA participated in the method of payment as well. *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 140 (2d Cir. 1999) (entity participated in the "method of payment" under the *Bonnette* test where it ordered a stop to the illegal misclassification of workers as independent contractors). As noted above, WRA has the ability to intervene in disputes between members and workers, including disputes regarding the payment of wages. As a "guarantor" of the terms and conditions of H-2A workers' conditions of employment, WRA will pay a herder's

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

wages if the member fails to pay. *See* SOF at ¶¶9-10, 12.[4] Thus, WRA's motion should be denied.

**4. WRA was Solely Responsible for Hiring the Plaintiffs and had the Exclusive Right to Fire Them.**

WRA cites the report of an unnamed DOL investigator described above as evidence that, once WRA has assigned an H-2A herder to a member rancher, the member is then responsible for hiring and firing the worker. *See* WRA Summary Judgment Memo, ECF No. 131 at 7. As discussed more fully in Plaintiffs' Memorandum in Opposition to Fernandez Defendants' Motion for Summary Judgment, the Court should not consider this report because it amounts to multiple layers of inadmissible hearsay. The report is not admissible by way of the "public records" hearsay exception under Federal Rule of Evidence 803(8) because it does not meet the trustworthiness requirement of that exception. *See id.* at 3-6. Even if the Rule 803(8) hearsay exception were to apply, the report's third-party statements relied upon by WRA are independently inadmissible as "hearsay-within-hearsay."

[4] WRA notes that it "never prepared payroll or payment information." WRA Summary Judgment Memo, ECF No. 131 at 8. Even so, the absence of any one factor does not defeat the conclusion that an entity is a joint employer under the FLSA. *See Real v. Driscoll Strawberry Assoc's, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Moreover, WRA "maintained employment records" under the *Bonnette* test because it kept a "herder file" with employment-related documents for each of its H-2A workers. *See* SOF at ¶50.

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

*See id.* at 6-7. Thus, the court should accord the report no weight in considering this motion.

In any event, the DOL investigator's reported belief that WRA's members have responsibility for hiring and firing is simply incorrect. To the contrary, it cannot be seriously disputed that WRA was solely responsible for recruiting the workers, screening them for minimum qualifications, deciding which workers would be assigned to particular job sites, and transporting the workers to those job sites in the United States. *See* SOF at ¶¶31-32, 39-40. Moreover, WRA's executive director has admitted that only WRA may terminate a herder's employment. SOF ¶¶69-71. These are crucial indicia of WRA's control over the nature and structure of the relationship with its H-2A workers. *See Baystate*, 163 F.3d at 675-76 (applying the *Bonnette* test).

**5. That Plaintiffs Did Not Use WRA's Premises or Equipment Has No Bearing on the Analysis of WRA's Employer Responsibilities.**

WRA deems it a "relevant factor" that the plaintiffs made no use of WRA premises or equipment in carrying out their jobs. WRA Summary Judgment Memo, ECF No. 131 at 8. Plaintiffs disagree. While the *Bonnette* factors are not exclusive, a court need not give weight to factors that are of no consequence to the economic realities of a particular employment situation. *See Bonnette*, 704 F.2d at 1470. The fact that plaintiffs' work did not involve WRA premises or the use of its

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

equipment does nothing to diminish the conclusion, based on examination of the totality of the nature, structure, and economic realities of the relationship among WRA, its members, and their workers, that WRA did employ the plaintiffs.

**B. The Court Should Deny WRA's Motion for Summary Judgment on Plaintiffs' Contract Claims.**

WRA claims that "WRA and Plaintiffs are not parties to any employment contracts." WRA Summary Judgment Memo, ECF No. 131 at 9. This claim cannot stand given that WRA requires all herders and members to use WRA's standard form employment contract; is the sole drafter of the contract; identifies the rancher as a WRA member in the contract; and requires the member to indemnify and hold harmless WRA for wage claims by herders under the contract. *See* SOF at ¶¶42-44, 49. Paragraph seven of the employment contract requires the employee to notify the Association within thirty days of any failure on the part of the Employer to pay the Employee any wages owed. The failure to do so is a breach of the agreement and allegedly releases the WRA from any further obligation to the employee. Exhibit M to SOF. This provision makes sense only if WRA is a party to the agreement.

Regardless of whether WRA is a nominal contractual party, by participating in the H-2A program as a joint employer, WRA has taken upon itself the responsibility to act as "guarantor" of the employment contracts made with its H-

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

2A workers. SOF at ¶¶9, 15. And as part of its role as guarantor, WRA has assumed the contractual obligation imposed on all H-2A employers to comply with all employment terms and conditions required under the H-2A program, and with all other employment-related laws and regulations. SOF ¶48; *see also Salazar-Calderon*, 765 F.2d at 1342. Thus, WRA's motion for summary judgment on the plaintiffs' contract claims should be denied.

### C. The Court Should Deny WRA's Motion for Summary Judgment on Plaintiffs' Quantum Meruit Claims.

WRA argues that it is entitled to summary judgment on the plaintiffs' quantum meruit claim because there is no joint employer relationship between WRA and the plaintiffs. WRA Summary Judgment Memo, ECF No. 131 at 9-10. As shown above, WRA cannot establish that proposition as a matter of law. WRA further argues that it was defendant Fernandez, rather than WRA, who required the plaintiffs to perform work outside of the contract. *Id.* at 10. However, as demonstrated above, because WRA is a guarantor of the H-2A worker's contractual terms, and thus jointly and severally liable for their violation, the Court should deny summary judgment for WRA on the plaintiffs' quantum meruit claim.

## CONCLUSION

For the foregoing reasons, the Court should deny WRA's motion for summary judgment.

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

RESPECTFULLY SUBMITTED this 14th day of January, 2013.

NORTHWEST JUSTICE PROJECT

/s/ Michele Besso
Michele Besso, WSBA #17423

FARMWORKER JUSTICE

/s/ Weeun Wang
Weeun Wang

MEMORANDUM IN OPPOSITION TO WRA'S MOTION FOR SUMMARY JUDGMENT - 16

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238

CERTIFICATE OF SERVICE

I hereby certify that on January 14th, 2013, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system and caused it to be served by mail to the following:

John Barhoum: jbarhoum@dunncarney.com

Timothy J Bernasek: tbernasek@dunncarney.com

Gary Lofland: glofland@glofland.net

Weeun Wang: wwang@farmworkerjustice.org

John Jay Carroll: jcarroll@vhlegal.com

DATED this 14th day of January, 2013.

By: /s/ Alex Galarza
Alex Galarza, Legal Assistant for
Michele Besso, WSBA #17423
Attorney for Plaintiffs
Northwest Justice Project

**Northwest Justice Project**
510 Larson Building
6 S 2nd Street
Yakima, WA 98901
Tel. (509) 574-4234 Fax (509) 574-4238