1  Michele Besso
   Northwest Justice Project
2  501 Larson Bldg., 6 South 2nd Street
   Yakima, WA 98901
3  (509) 574-4234

4  Weeun Wang
   Farmworker Justice
5  1126 16th Street NW, Suite 270
   Washington, DC 20036
6  (202) 293-5420

7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF WASHINGTON
9

10 ELVIS RUIZ, et al.,

                 Plaintiffs,              No.  2:11-cv-3088-RMP

11                                        PLAINTIFFS' MEMORANDUM
        v.                                IN RESPONSE TO
12                                        FERNANDEZ DEFENDANTS'
   MAX FERNANDEZ, et al.,                 MOTION FOR SUMMARY
13                                        JUDGMENT
                 Defendants.

14

15 **I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
        PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DENIED.**

16      Defendants Max and Ann Fernandez have moved this Court for summary

17 judgment with respect to the plaintiffs' state law claims for violation of Washington

18 wage statutes, breach of contract, and quantum meruit.  Defendants' motion as to

19 these claims relies exclusively on the narrative report of an unidentified

20 investigator with the United States Department of Labor ("DOL") who

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

investigated plaintiffs' complaints against defendants after they left Fernandez

Ranch (the "DOL report").  Defendants have previously offered the same evidence

in their unsuccessful effort to have this case dismissed.  *See* Order Denying

Defendants' Motion to Dismiss, ECF No. 62 at 10 n.2.  Defendants now assert that

the DOL investigation produced findings that should be deemed established for the

purposes of this litigation under the doctrine of collateral estoppel.  In the

alternative, they ask the Court to give deference to the DOL investigator's narrative

as an "interpretation" by the agency of its own regulations.  Memorandum in

Support of Fernandez Defendants' Motion for Summary Judgment ("Fernandez

Summary Judgment Memo"), ECF No. 139 at 14-16.  Just as defendants' previous

argument based on the DOL investigation failed, the Court should find the latest

incarnations similarly without merit.  As demonstrated below, the investigator's

narrative report is inadmissible and not entitled to preclusive effect or deference.

**A. The DOL Report and its Contents Are Inadmissible Hearsay.**

In opposing a motion for summary judgment, a party may object that the

supporting materials relied on by the movant "cannot be presented in a form that

would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Under the Federal

Rules of Evidence, an out-of-court statement is inadmissible hearsay when offered

to prove the truth of the matter asserted.  Fed. R. Evid. 801-802.  In a civil case, an

exception may be available for certain "public records" setting out "factual

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 2

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1  findings from a legally authorized investigation," but only so long as "neither the

2  source of information nor other circumstances indicate a lack of trustworthiness."

3  Fed. R. Evid. 803(8).  Because the DOL report is generally untrustworthy, the court

4  should disregard it entirely.  In addition, the report is based on independently

5  inadmissible hearsay statements of third parties, to which no exception applies.

6  **1.  The Investigator's Report is Not Trustworthy.**

7  In considering admissibility under Rule 803(8), "a trial judge has the

8  discretion, and indeed the obligation, to exclude an entire report or portions thereof

9  …that she determines to be untrustworthy."  *Beech Aircraft Corp. v. Rainey*, 488

10  U.S. 153, 167 (1988).  The Rule 803(8) advisory committee's note proposed a

11  nonexclusive list of four "trustworthiness" factors to evaluate public records: (1)

12  the timeliness of the investigation; (2) the investigator's skill or experience; (3)

13  whether a hearing was held; and (4) possible bias.  In *Sullivan v. Dollar Tree*

14  *Stores, Inc.*, 623 F.3d 770 (9th Cir. 2010), the Ninth Circuit considered these

15  factors and upheld exclusion of a DOL investigator's report as untrustworthy in the

16  context of a summary judgment motion and in circumstances similar to those

17  encountered in this case.  In *Sullivan*, the DOL investigator's report was proffered

18  in connection with alleged violations of the Family and Medical Leave Act.  The

19  *Sullivan* court noted the following indicia of untrustworthiness in upholding

20  exclusion:

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 3

**Northwest Justice Project**
510 Larson Building, 6 S. 2ⁿᵈ St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    The report is incomplete because its exhibits are not attached. Its
2    author is unidentified and unknown, making it impossible to assess
     the author's skill or experience. No hearing was held. The document
3    does not appear even to be a final report, as distinct from an internal
     draft….The DOL did not issue the report or send it to either party at
     any time before this litigation; rather it became available only because
4    [a party] filed a [Freedom of Information Act] request….

5    623 F.3d at 778.

6        The DOL's report in this case bears the same indicia.  The report is

7    incomplete because it refers to numerous "exhibits" that do not accompany it.  *See*

8    DOL Narrative, ECF No. 49-3 at 13, 15, 17, 19-21, 24.  Its author is not identified,

9    and there was no hearing.  It does not set out final actions to be taken, but rather,

10   makes "recommendations" as to penalties (*id.* at 5).  And that "the file remain

11   open…" (*id*. At 9).  And the report was not made available outside of a request

12   under the Freedom of Information Act.  Fernandez Defendants' Memorandum in

13   Support of Motion to Supplement the Record, ECF No. 50 at 1-2.

14       Further examination of the report confirms that the investigation was

15   conducted in such a way as to make any of its supposed findings untrustworthy.

16   The report indicates that an investigator spoke with two plaintiffs about wage

17   issues, interviewed Max Fernandez and certain unnamed employees then working

18   at Fernandez Ranch, and then simply credited Mr. Fernandez' statements at face

19   value.  The investigator never told the plaintiffs about what Mr. Fernandez or the

20   unidentified sources had said or gave the plaintiffs any chance to rebut these

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 4

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

assertions.  Plaintiffs' Counter Statement of Facts ("CSOF") at ¶25-28.  For these reasons alone, the DOL report is untrustworthy, and thus inadmissible hearsay.

The investigator's narrative of supposed findings is likewise so permeated with error as to make the report untrustworthy.  In one of the more egregious examples, the investigator credits Mr. Fernandez' assertion that "the H-2A workers are kept busy either on the range or at the ranch doing specifically work with the sheep."  DOL Narrative, ECF No. 49-3 at 18.  Veracity aside, this statement misstates the standard for the FLSA exemption for range sheepherding, which requires that the worker spend the majority of his time engaged in the production of livestock "on the range."  29 C.F.R. § 780.324 (a); *Id.* at 780.326(a).  The exemption is "not intended to apply to feed lots or to any area where the stock involved would be near [ranch] headquarters."  29 C.F.R. § 780.329(c).[1]

For these reasons, the Court should deem the DOL report untrustworthy and exclude it entirely from consideration for purposes of the instant motion.

**2. Regardless of Admissibility Under the Public Records Exception, Proffered Contents of the Report are Inadmissible Hearsay.**

---

[1] The DOL investigator also made serious errors in discussing the joint employment relationship between WRA and Fernandez Ranch. For example, the investigator commented that "once [H-2A workers] are assigned to a rancher, the rancher is responsible for hiring and firing the workers." DOL Narrative, ECF No. 49-3 at 14. To the contrary, WRA makes all hiring decisions, and only WRA has the power to terminate workers. *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, ECF No. 141 at 10-11.

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

Not only is the DOL report generally untrustworthy, but the specific statements relied on by defendants are independently inadmissible under the Federal Rules of Evidence.  Even if the DOL report qualifies as a "public record" for purposes of Rule 803(8), this does not end the hearsay inquiry.

> Rule 803(8) deems a public report admissible based on the notion that its official author knows what he is talking about and will state the facts accurately. *That presumption does not attach to the statements of third parties who themselves bear no public duty to report what they observe. Thus, the statements in the report would be hearsay even if the author of the report were present in court. United States v. Chu Kong Yin*, 935 F.2d 990, 999 (9th Cir. 1991) ("the public documents exception to the hearsay rule is only the substitute for the appearance of the public official who made the record").

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 744 (N.D. Cal. 2011) (emphasis added).  *See also United States v. Mackey*, 117 F.3d 24, 28-29 (1st Cir. 1997) ("decisions in this and other circuits squarely hold that hearsay statements by third persons…are not admissible under [Rule 803(8)] merely because they appear within public records….  This is the same 'hearsay within hearsay' problem that is familiar in many contexts.").

Defendants assert that "the DOL found there was 'no violation' for the allegation of failing to pay the proper rate."  Fernandez Summary Judgment Memo, ECF No. 139 at 10.  However, the purported facts underlying the investigator's conclusion are based solely on the statements of third parties, rather than the investigator's firsthand observations:

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 6

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

[Fernandez and I] discussed the work other than the work described in the job description assigned to the "Sheep Herder" responsibilities. *Fernandez stated* that the H-2A workers are kept busy either on the range or at the ranch doing specifically work with the sheep. *He stated* that both he and his other non-H-2A workers do all the tractor work, harvesting, and feeding of the cattle and by the time the herders get back to the ranch all the harvest work is finished and the tractors are not used during the winter…*The interviews of the current workers indicate* that they do not do any work not related to the sheep.

DOL Narrative, ECF No. 49-3 at 7-8 (emphasis added).  Mr. Fernandez cannot shield these out-of-court statements made by him or by unnamed workers from cross-examination.  This is precisely what the rule against hearsay is designed to forbid.  *See Freitag v. Ayers*, 463 F.3d 838, 850 n.5 (9th Cir. 2006) (admitting a report under Rule 803(8) where the opposing party had a fair opportunity to challenge its reliability through cross-examination).  Accordingly, any third party statements are inadmissible.

### 3.  The DOL Investigator's Legal Conclusions are Inadmissible

Defendants urge this Court to adopt the DOL investigator's conclusion that defendant Fernandez did not violate the law by failing to "pay the proper rate." DOL Narrative, ECF No. 49-3 at16.  This conclusion is premised on the investigator's determination that the workers did not perform work outside of range sheepherding that would have required them to have been paid at higher wage rates.  As noted previously, this conclusion was faulty because the investigator considered as "range sheepherding" not only work with sheep that

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 7

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    actually took place on the range, but also when the workers worked with the sheep

2    at the ranch.  Not only is this incorrect, it amounts to a legal conclusion that is

3    inadmissible even if the report might otherwise qualify under the Rule 803(8)

4    hearsay exception.  Under Rule 803(8), admissibility of a public agency's

5    investigative report extends only to findings of fact, not legal conclusions.

6    *Sullivan*, 623 F.3d at 777.  In the context of a summary judgment motion, such

7    conclusions cannot by themselves establish the presence or, by implication, the

8    absence of a genuine issue of material fact.  *See id.*

9    **B. Plaintiffs' Claims are Not Precluded.**

10          Even if the Court deems some or all of the DOL report admissible, its

11    findings are not entitled to preclusive effect in this litigation.  The doctrine of

12    collateral estoppel invoked by defendants, also known as "issue preclusion," bars

13    only the "relitigation of issues *already actually litigated by the parties and decided*

14    *by a competent tribunal.*"  *Reninger v. Dep't of Corrections*, 134 Wn.2d 437, 449

15    (1998) (emphasis added).  State law is generally controlling when preclusion is

16    asserted as to claims under state law.  *See Murray v. Alaska Airlines, Inc.*, 522 F.3d

17    920, 922 (9th Cir. 2008).  Under Washington law, administrative agency

18    determinations can have preclusive effect only if "the party against whom the

19    doctrine is asserted…had a *full and fair opportunity to litigate the issue* in the

20    earlier proceeding."  *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 8

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

299, 307 (2004) (emphasis added).  In such case, the agency must have been "acting in a judicial capacity" in reaching its findings; if not, there will be no preclusive effect.  *See Reninger*, 134 Wn.2d at 449, quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).  Accordingly, when deciding whether to apply the doctrine to agency findings, courts place great weight on "the differences between procedures in the administrative proceeding and court procedures."  *Christensen*, 152 Wn.2d at 308.  Because the DOL's investigation bore none of the "essential elements of adjudication," its factual findings should be given no preclusive effect in the instant litigation.  *See Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 509 (1987) (quoting Rest. 2d of Judgments § 83(2)).

In each of the cases cited by defendants, the court gave preclusive effect to agency findings only after a formal adversarial hearing in which "[v]ery little of significance distinguished the administrative proceedings…from a formal jury trial."  *Reninger*, 134 Wn.2d at 451.  For example, the parties were represented at formal administrative hearings by counsel who gave opening statements and closing arguments; examined and cross-examined witnesses; obtained documents and offered exhibits via a discovery process; made evidentiary objections; conducted depositions under oath; and submitted posthearing briefs evaluating the evidence.  *See Reninger*, 134 Wn.2d at 451; *Christensen*, 152 Wn.2d at 303-04; *Shoemaker*, 109 Wn.2d at 509-510; *State v. Dupard*, 93 Wn.2d 268, 275 (1980).

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 9

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    The DOL's investigation in this case offered the plaintiffs none of these

2   essential elements of adjudication.  Indeed, there was no "prior proceeding" for

3   collateral estoppel purposes because the DOL never held a hearing, formal or

4   informal, as part of its investigation.  Apart from having been interviewed, the

5   plaintiffs had no opportunity to participate in the investigation.  And as the Court

6   has recognized, the plaintiffs were never given notice of any opposing party's

7   factual assertions, much less the chance to rebut them before a neutral adjudicator.

8   *See* Order Denying Defendants' Motion to Dismiss, ECF No. 62 at 10 ("Without

9   notification of any findings from the administrative investigation, a complainant

10  could not pursue his or her complaints further.").

11    Accordingly, no supposed finding of the DOL report merits any preclusive

12  effect in this lawsuit.

13  **C. The Investigator's Report Warrants No Deference as a DOL**
    **"Interpretation" of its Own Regulations**

14    Defendants argue that the Court should apply the deference that courts

15  afford to official DOL interpretations of its regulations to the investigator's report

16  in this case.  *See Auer v. Robbins*, 519 U.S. 452 (1997).  This argument is without

17  merit.  Such deference is due only when the Secretary uses her rulemaking

18  authority or issues other interpretive guidance such as Opinion Letters in order to

19  clarify ambiguous agency regulations.  *Christopher v. SmithKline Beecham Corp.*,

20  635 F.3d 383, 392 (9th Cir. 2011) (rulemaking); *In re Farmers Ins. Exch.*, 481 F.3d

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 10

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1119, 1129 (9th Cir. 2007) (Opinion Letters).  When the DOL conducts an

investigation into allegations of an employer's labor violations, the agency clearly

is not engaged in rulemaking or issuing interpretive guidance of regulations.  The

cursory and untrustworthy narrative report by the DOL investigator in this case

warrants no judicial deference, and defendants have failed to meet their burden of

showing that they are entitled to judgment as a matter of law.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' TRAFFICKING CLAIMS SHOULD BE DENIED.

Defendants' argument that plaintiffs' claims under the Trafficking Victims

Protection Reauthorization Act ("TVPRA") are insufficient mischaracterizes both

the underlying facts and the requirements of the statute.[2]  Plaintiffs allege a pattern

of intimidation and threats that meets the statute's requirements:  abuse and

threatened abuse of the legal process, confiscation of passports and other

immigration documents, and defendant's financial benefit as a result of obtaining

plaintiffs' services by these means.  Because the evidence, viewed in the light most

favorable to the plaintiffs, is more than sufficient to support their TVPRA claims,

defendants are not entitled to summary judgment on this issue.

## A. Defendants Knowingly Obtained Plaintiffs' Services By Means Of Abuse and Threatened Abuse of Legal Process.

_____

[2] Plaintiffs contest many of the facts proffered by defendants in support of their motion for summary judgment.  *See* Contested Facts set forth in Part I of Plaintiffs' CSOF.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 11

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    The TVPRA recognizes that labor trafficking can occur in circumstances

2   where the victims, although not violently or physically restrained, are subjected to

3   "more subtle psychological methods of coercion."  *United States v. Bradley*, 390

4   F.3d 145, 150 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101

5   (2005).  Specifically, the TVPRA prohibits knowingly obtaining the labor or

6   services of a person by means of the abuse or threatened abuse of law or legal

7   process.  18 U.S.C. § 1589(a)(3).  As stated in the TVPRA:

8       "Abuse or threatened abuse of law or legal process" means the use or
         threatened use of a law or legal process, whether administrative, civil,
9        or criminal, in any manner or for any purpose for which the law was
         not designed, in order to exert pressure on another person to cause that
10       person to take some action or refrain from taking some action.

11  18 U.S.C. § 1589(c)(1).

12      As Congress has recognized, trafficking can occur in the context of a wide

13  range of legal abuses, "including [violations of] labor and immigration codes[.]"

14  *Nunag-Tañedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1145

15  (C.D. Cal. 2011), quoting H.R. Conf. Rep. 106-939, at 3, 4 (2000).  Many courts

16  have held that threats of deportation can constitute a condition of servitude induced

17  through abuse of the legal process, violating the TVPRA.  *See, e.g., Espejo*

18  *Camayo v. John Peroulis & Sons Sheep, Inc.*, 2012 WL 4359086,*4 (D. Colo.

19  Sept. 24, 2012); *Velasquez Catalan v. Vermillion Ranch Ltd. P'ship*, 2007 WL

20  38135, *8 (D. Colo. Jan. 4, 2007); *Ramos-Madrigal v. Mendiola Forestry Serv.*

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 12

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1  *LLC*, 799 F. Supp. 2d 958, 960 (W.D. Ark. 2011); *Kiwanuka v. Bakilana*, 844 F.

2  Supp. 2d 107, 115 (D.D.C. 2012); *Nunag-Tañedo*, 790 F. Supp. 2d at 1146.  Such

3  threats constitute a misuse of the legal process when used to instill fear and

4  promote compliance.  *See Velasquez Catalan*, 2007 WL 38135 at *8.  These

5  threats gain added weight under the statute when accompanied by other indicia of

6  trafficking, such as a defendant's retention of a plaintiff's immigration documents.

7  *See Espejo Camayo*, 2012 WL 4359086 at *5.

8        Defendants quote at great length the case of *Alvarado v. Universidad Carlos*

9  *Albizu*, 2010 WL 3385345 (S.D. Fla. Aug. 25, 2010).  *See* Fernandez Summary

10  Judgment Memo, ECF No. 139 at 20-21.  However,

11        *Alvarado*'s facts are not similar to those here. *Alvarado* did not
   involve "threats" of deportation…; rather, the employer merely

12        threatened to withdraw support for (and retention of an attorney to
   assist) the employee's application to extend the employee's labor

13        certification. Thus, a case like *Alvarado* is not particularly persuasive
   in the circumstances presented here.

14  *Espejo Camayo*, 2012 WL 4359086 at *4.  Indeed, the facts of this case share

15  much in common with those of *Espejo Camayo*, where H-2A sheepherders brought

16  a claim under the TVPRA's "abuse of the legal process" prong after the defendants

17  threatened them with deportation, "apparently simply to instill fear and promote

18  compliance." *Id.* at *5.  The defendant bragged about having workers arrested who

19  had left the ranch, and retained important immigration documents. *Id.*   The court

20

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 13

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

found that these facts were sufficient to support the TVPRA claims.  *Id.*  Given the similarity of the facts to the case at bar, this Court should do the same.

Here, the evidence shows multiple instances of conduct by Mr. Fernandez that constitute misuse of the legal process.  When plaintiffs Castro and Ruiz arrived at Fernandez Ranch, Mr. Fernandez took away and held their immigration documents, despite requests for their return.  CSOF ¶1.  Mr. Castro retrieved his documents only upon his transfer from the ranch in October 2008.  CSOF ¶2.  Mr. Fernandez returned Mr. Ruiz' passport only after multiple requests almost two years later.  CSOF ¶2.  All of the plaintiffs testified that Mr. Fernandez would threaten them almost on a daily basis, saying that they would be sent back to Chile if they did not do as he said.  CSOF ¶3.  Mr. Fernandez instructed plaintiffs not to talk with neighbors and repeatedly warned plaintiffs that, if they left the ranch without permission, he would call immigration or the police and they would be deported.  CSOF ¶¶4-5.  After Mr. Castro fled the ranch, Mr. Fernandez told plaintiff Martinez that the FBI was hunting for Castro.  CSOF ¶7.

The many ways that Mr. Fernandez acted to exert control over the plaintiffs support plaintiffs' claim that his constant threats of deportation were threats intended to keep the plaintiffs on his ranch, rather than innocent recitations of the H-2A program requirements.  For example, when Mr. Fernandez found out that a woman was visiting plaintiff Castro as he herded sheep by the Centerville

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 14

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

Highway, he first prohibited Mr. Castro from seeing her.  CSOF ¶14.  When Mr.

Castro objected, Mr. Fernandez warned that, if this woman ever came onto the

ranch, Mr. Fernandez would call the police.[3]  *Id.*  Mr. Fernandez regularly watched

the sheepherders through binoculars.  CSOF ¶15.  Plaintiffs felt that the threats

were intended to intimidate them.  CSOF ¶9.  Mr. Martinez continued to have

nightmares after he left the ranch as a result of Mr. Fernandez' threats. CSOF ¶9.

Even after plaintiffs left the ranch, Mr. Fernandez tried to misuse the legal

process to intimidate them into refraining from exercising their rights.  In April

2010, several days after plaintiffs sent Mr. Fernandez a letter demanding unpaid

wages, Mr. Fernandez filed a criminal complaint against plaintiff Ruiz, falsely

accusing him of pocketing $100 given to him by a neighbor five months earlier for

the purchase of hay from the ranch.  CSOF ¶17.  Then, in 2011, after the DOL

found that Mr. Fernandez owed plaintiffs Castro and Ruiz unpaid wages, both

plaintiffs received anonymous letters threatening that immigration authorities

would be waiting for them if they went to the DOL office to pick up their checks.

CSOF ¶18.  Since no one else knew about the checks, plaintiffs believe that

Fernandez sent these letters.  CSOF ¶19.  All three plaintiffs fled the ranch at night

---

[3] Mr. Fernandez' conduct in this instance is particularly egregious because, under
Washington law, migrant agricultural workers are permitted to have guests visit
them at their employer-provided housing even over the farm owner's objection.
*See State v. Fox*, 82 Wn.2d 289, 292-93 (1973).

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    when they left because they believed that, if Mr. Fernandez knew that they were

2    leaving, he would call the police to stop them.  CSOF ¶20.

3        Contrary to Mr. Fernandez' allegation, the evidence does not show that

4    plaintiffs were free to transfer to a different ranch upon their own request.  .  CSOF

5    ¶22.  Mr. Martinez' transfers had been at the request of the ranchers he worked

6    with.  CSOF ¶23.  Mr. Castro did not know whether or not Western Range would

7    authorize a transfer without Mr. Fernandez' approval and therefore asked Mr.

8    Fernandez for permission for a temporary transfer to a different ranch.  CSOF ¶24.

9    When it was time for the lambing to begin in March 2009, WRA arranged for Mr.

10   Castro's transportation back to Mr. Fernandez without asking Mr. Castro whether

11   or not he wished to return.  *Id.*  Mr. Ruiz testified that he did not know that he had

12   a right to request a transfer.  CSOF ¶23.  Finally, nowhere does the employment

13   agreement signed by plaintiffs state that plaintiffs could request a transfer, let alone

14   that they had a "right" to transfer to another ranch.  To the contrary, section twelve

15   of the agreement states that "[WRA] and the employer may transfer the employee

16   to another employer… If an Employee objects to a transfer, the [WRA] will

17   consider the worker's concerns; however refusal on the part of the worker to

18   transfer may subject the worker to dismissal..."  *See* Ex. 15 to Statement of Facts in

19   Support of Plaintiffs' Motion for Partial Summary Judgment (hereafter "SOF"),

20

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 16

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    ECF No. 146.  Clearly, all of the power here lies with WRA and the rancher, not

2    with the workers.

3        Given the factual context of Mr. Fernandez' statements that the plaintiffs

4    would be reported to immigration authorities if they left his ranch, the plaintiffs

5    have alleged sufficient facts to support their claim that Fernandez' threats

6    constitute a "abuse of legal process" under the TVPRA since the objective was to

7    intimidate and coerce the plaintiffs into remaining on the ranch.

8    **B. Defendant Fernandez Knowingly Concealed, Removed and Confiscated Plaintiffs' Immigration Documents.**

9        The TVPRA specifically makes it unlawful for anyone to "confiscate[], or

10   possess[] any actual or purported passport or other immigration document …" in

11   the course of a violation of section 18 U.S.C. § 1589.  18 U.S.C. § 1592.  Thus,

12   such action provides a basis for the TVPRA's civil cause of action under 18 U.S.C.

13   §1595.  Here, plaintiff Ruiz' allegation that Mr. Fernandez held his passport for

14   two years despite Mr. Ruiz' requests to have it returned to him (CSOF ¶1) and

15   Plaintiff Castro's allegation that Fernandez took his passport upon his arrival and

16   held it against his wishes until he was transferred to Utah seven months later

17   (CSOF ¶2) are sufficient to raise an issue of material fact that Fernandez violated

18   the TVPRA, especially given the pattern of intimidation engaged in by Fernandez.

19   **C. Mr. Fernandez' Conduct Caused Plaintiffs to Believe that they Would Suffer Serious Harm**

20

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 17

Plaintiffs' testimony of regular verbal abuse and threats, restrictions on the use of telephones and leaving the ranch, denial of sufficient access to food and other necessities, the requirement that plaintiffs work seven days per week without any days of rest, and the very visible close ties that Mr. Fernandez had with local law enforcement, all support plaintiffs' claim that Fernandez intended plaintiffs to believe that they would suffer serious harm if they did not do the work that he assigned them. *See* 18 U.S.C. § 1589(a)(4); CSOF ¶¶3-15, 21, 25-26.

Defendants argue that plaintiffs' admission that they "were provided food" defeats their claim of mistreatment.  Given the amount and quality of the food at issue, this argument is baseless.  Plaintiff Castro testified that the food he was provided while living in a trailer off the ranch was little more than flour, coffee and salt.  His diet for the five-month period consisted mostly of his homemade bread, sheep meat, and coffee, plus one can of tuna and one package of spaghetti provided by Mr. Fernandez.  CSOF ¶¶11-13.  All three plaintiffs testified that they were hungry while working at the Fernandez Ranch, a serious matter for grown men performing physical labor seven days per week.  CSOF ¶10.

In light of the foregoing, plaintiffs have raised sufficient issues of material fact so as to preclude dismissal of their trafficking claims by summary judgment.

## III. THE MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' QUANTUM MERUIT CLAIMS SHOULD BE DENIED.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 18

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    Plaintiffs have pled a claim for quantum meruit as an alternative remedy to

2  their contract claim.  The principles of quantum meruit allow the Court to award

3  plaintiffs the reasonable value of their work when a change in circumstances

4  requires extra work that was not contemplated in the original contract.  *See Young*

5  *v. Young*, 164 Wn.2d 477, 485 n.4 (2008).  The elements of quantum meruit are: (1)

6  the defendant requests work, (2) the plaintiff expects payment for the work, and (3)

7  the defendant knows or should know the plaintiff expects payment for the work.

8  *Id.* at 486.  Contrary to Fernandez' argument, recovery can be awarded under

9  quantum meruit even where the parties have entered into an express contract.

10  *D'Amato v. Lillie*, 401 F. App'x 291, 293-94 (9th Cir. 2008).

11    In *D'Amato*, the parties entered into a contract whereby a worker would

12  manage a salon.  Over time, the business expanded and the worker began

13  managing multiple salons.  The court agreed that this change in the worker's duties

14  justified the worker's retention of additional salary under the theory of quantum

15  meruit.  The court reasoned that if a jury found that "[the employer] either knew or

16  reasonably should have known of the services performed and benefit conferred,"

17  the second and third elements of quantum meruit would be met, and that the first

18  requirement was met where "substantial changes occurred *requiring* [the worker]

19  to perform work outside the scope of the contract[]." *D'Amato v. Lillie*, 2008 U.S.

20  Dist. LEXIS 117252, *12 (E.D. Wash. Oct. 23, 2008) (emphasis added).  By

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 19

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

contrast, the plaintiff workers in *MacDonald v. Hayner*, 43 Wn. App. 81 (1986),

cited by defendants, failed to prevail on quantum meruit because the workers

decided *on their own initiative* to expand the scope of the work initially contracted

for and then demand additional compensation. *MacDonald*, 43 Wn. App. at 85.

Here, as in *D'Amato*, plaintiffs had no control over the work being

demanded of them. Max Fernandez at all times supervised and directed the work

of plaintiffs. CSOF ¶21; s*ee also* SOF ¶¶91, 94. Plaintiffs came to Fernandez

Ranch prepared to work as range sheepherders. However, Mr. Fernandez needed

only one sheepherder at any one time to herd his sheep off the ranch property.

SOF ¶107. Mr. Fernandez requested additional sheepherders and then assigned

them to perform duties well outside the scope of range sheepherding. SOF ¶¶84-

91, 92-93, 95-100. Mr. Fernandez benefitted from this arrangement, as he obtained

the work of plaintiffs for an unlimited number of hours, seven days per week, for a

total of $750 per month. Given Fernandez's knowledge of the H-2A sheepherder

job description, he either knew or should have known that plaintiffs should receive

additional payment for their additional services and that he was receiving those

services essentially free of charge. Accordingly, plaintiffs have alleged sufficient

facts so as to preclude summary judgment on their quantum meruit claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 20

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    RESPECTFULLY SUBMITTED this 14th day of January, 2013.

2

3

     NORTHWEST JUSTICE PROJECT

4

5    /s/ Michele Besso
     Michele Besso, WSBA #17423

6

7

     FARMWORKER JUSTICE

8

9    /s/ Weeun Wang
     Weeun Wang

10

11

12

13

14

15

16

17

18

19

20

21

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on January 14th, 2013, I caused the foregoing document

3  to be electronically filed with the Clerk of the Court using the CM/ECF system and

4  caused it to be served by mail to the following:

5

6          John Barhoum: jbarhoum@dunncarney.com

7          Timothy J Bernasek: tbernasek@dunncarney.com

8          Gary Lofland: glofland@glofland.net

9          Weeun Wang: wwang@farmworkerjustice.org

10         John Jay Carroll: jcarroll@vhlegal.com

11

12  DATED this 14th day of January, 2013.

13                          By: /s/ Alex Galarza
                                Alex Galarza, Legal Assistant for
14                              Michele Besso, WSBA #17423
                                Attorney for Plaintiffs
15                              Northwest Justice Project

16

17

18

19

20

21

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
FERNANDEZ DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 22

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238