Michele Besso
Northwest Justice Project
501 Larson Bldg., 6 South 2nd Street
Yakima, WA 98901
(509) 574-4234

Weeun Wang
Farmworker Justice
1126 16th Street NW, Suite 270
Washington, D.C. 20036
(202) 293-5420

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

ELVIS RUIZ, FRANCISCO JAVIER
CASTRO, and EDUARDO
MARTINEZ,

                Plaintiffs,

    v.

MAX and ANN FERNANDEZ and
WESTERN RANGE ASSOCIATION

            Defendants

No.  2:11-cv-3088-RMP

PLAINTIFFS' REPLY
MEMORANDUM IN SUPPORT
OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

## I.  WRA EMPLOYED THE PLAINTIFFS

### A.    WRA is No Less an Employer Under the FLSA as it Admittedly is Under the H-2A Program

Defendant Western Range Association ("WRA") admits that it is the

plaintiffs' employer in the context of the H-2A program.  WRA's Response to

Plaintiffs' Statement of Facts ("WRA Response to PSOF"), ECF No. 163 at ¶¶2, 8;

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 1

Northwest Justice Project
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

Plaintiffs' Statement of Facts ("PSOF"), ECF No. 146 at ¶¶3, 22.[1]  Under the H-2A

regulations, "employer" is defined as one who "has an employer relationship with

respect to employees . . . as indicated by the fact that it may hire, pay, fire,

supervise or otherwise control the work of any such employee."  20 C.F.R. §

655.100(b).[2]

As an H-2A employer in relation to the plaintiffs, WRA necessarily assumed

control over their employment terms and conditions.  The H-2A certification

process requires anyone who seeks to employ H-2A workers to assume

specifically-enumerated responsibilities to the workers, including compliance with

federal, state and local employment-related laws and regulations, 20 C.F.R. §

655.103(b), and the requirement that workers be paid no less than the FLSA

minimum wage.  20 C.F.R. § 655.102(b)(9).  *See also Arriaga v. Florida Pac.*

*Farms, L.L.C.*, 305 F.3d 1228, 1235 (11th Cir. 2002).

---

[1] The H-2A regulations provide no basis for distinguishing between the scope of one joint employer's liability and that of another.  Under the FLSA, "if the facts establish that the employee is employed jointly by two or more employers, . . . all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA].  In this event, *all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act.*" 29 C.F.R. § 791.2 (emphasis added).

[2] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and U.S. Department of Labor regulations promulgated thereunder, 20 C.F.R. part 655 (1987, amended 2009, 2010) (as the cited provisions of the H-2A regulations are substantially the same for purposes of this Motion for Partial Summary Judgment, all such citations are to the 1987 regulations).

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 2

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    Given the regulatory scheme imposing affirmative obligations upon WRA to

2    comply with the FLSA, WRA's claim not to be an employer for purposes of FLSA

3    liability is unsustainable.  Confronted with a similar argument in *Salazar-Calderon*

4    *v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985), the Fifth Circuit

5    held that a growers association cannot avoid liability under federal migrant labor

6    laws that used the same definition of "employer" as under the FLSA.  In that case,

7    the court focused on the fact that the association held itself out as playing the

8    regulatory role of employer, and that its functioning in that role was essential for

9    members of the association to have employed the aggrieved workers in the first

10   place.  *Salazar-Calderon*, 765 F.2d at 1346.  The same is true in this case -- but for

11   WRA's assuming the role and responsibilities of H-2A employer, WRA's rancher

12   members could not have lawfully employed the plaintiffs.  In order for WRA and

13   its members to participate in the H-2A program, WRA necessarily assumed

14   employer responsibilities under the FLSA that it cannot now evade.

15   Indeed, WRA's economist, Dr. James Holt, whom WRA regards to have

16   been a foremost expert on WRA's participation in the H-2A program,[3] flatly stated

17   that WRA, as an H-2A joint employer "assumes joint liability with its members for

18   compliance with the H-2A program requirements *and all employment related laws*

19   *and regulations*." PSOF at ¶10; WRA Response to PSOF at ¶4 (emphasis added).

20   ───────────────

21   [3] PSOF at ¶6; WRA Response to PSOF at ¶3.

1    In line with both H-2A requirements and an employer's liability under the FLSA,

2    Dr. Holt stated that WRA has the obligation to pay wages to its sheepherders when

3    one of its rancher members fails or is unable to meet that obligation.  *See* PSOF at

4    ¶¶9-10, 12.  WRA has admitted that Dr. Holt's description of WRA's responsibility

5    as an H-2A employer is correct and applies in full force today. PSOF at ¶20; WRA

6    Response to PSOF at ¶7.

7         Under these circumstances alone, WRA must be deemed to have employed

8    the plaintiffs under the FLSA as a matter of law.

9    **B.    WRA Did Not Merely "Facilitate" Employment of the Plaintiffs**

10        WRA's attempt to characterize itself as a mere "facilitator" of its members'

11   ability to employ H-2A workers is disingenuous and completely disassociated from

12   the record facts in this case.  In fact, WRA and its members had, but did not

13   exercise, the option of WRA acting as an "agent" to facilitate the members'

14   employment of H-2A workers without incurring joint employer obligations.

15   Under the H-2A regulations, an agricultural association such as WRA "may act as

16   the agent of an employer, or may act as the sole or joint employer of any [H-2A]

17   worker . . . ." 20 C.F.R. § 655.103 (defining "agricultural association").  An H-2A

18   "agent" acts on behalf of an employer for temporary labor certification purposes,

19   but is not itself an employer or joint employer. *Id.* (defining "agent").  WRA did

20   not seek to limit its exposure to liability by acting as an agent for its members.

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 4

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

Rather, WRA chose deliberately to act in the capacity of joint employer and must now own up to the consequences.

In any event, as will be discussed below, WRA's role as H-2A employer encompassed more than sufficient control over the employment relationship with the plaintiffs to establish, under the FLSA and pertinent case law, that WRA was their employer as a matter of law.

### C.   WRA Has Admitted the Factual Basis to Conclude that it Has the Power to Hire and Fire

Hiring and firing are among a number of non-exhaustive factors in the analysis of economic realities that determines the existence of an employment relationship under the FLSA. *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). WRA claims that it "did not have the power to hire" and that it "did not participate in the members' hiring or firing process." WRA Response Memo at 8-9. However, WRA fails to provide any factual support for these statements, and thus fails as a matter of law to establish a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(c) and (e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (a party moving for summary judgment may carry its burden by showing an absence of evidence to support the nonmoving party's case); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (Where the record, taken as a whole, could not lead a rational factfinder to find for the nonmoving party, there is no genuine issue for trial); *Arpin v. Santa*

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    *Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (conclusory

2    allegations unsupported by factual data are insufficient to defeat a summary

3    judgment motion).

4           Instead, WRA has admitted facts that can lead to no conclusion other than

5    that it did hire the Plaintiffs.  WRA admittedly represented itself as the employer in

6    the H-2A applications to the U.S. Department of Labor ("DOL") and petitions to

7    the U.S. Department of Homeland Security ("DHS") that made it possible for

8    plaintiffs to have been employed as H-2A workers.  PSOF at ¶¶22, 27; WRA

9    Response to PSOF at ¶¶8, 10.  WRA admits that its "recruitment coordinators"

10   recruited plaintiffs for H-2A employment.  PSOF at ¶¶31, 33-34; WRA Response

11   to PSOF at ¶¶14-15.  WRA does not contest the fact that WRA's members have no

12   connection with WRA's recruitment coordinators.  PSOF at ¶32.  WRA admits that

13   it offered employment to recruited workers, brought them into the United States,

14   and decided where, among all of WRA's members in need of workers, a particular

15   worker would be assigned.  PSOF at ¶¶35-40, 45; WRA Response to PSOF at

16   ¶¶15-17, 20.

17          WRA has failed to cite any evidence of involvement of its rancher members

18   in the hiring of the Plaintiffs, or for the proposition that plaintiffs had not already

19   been hired by WRA by the time they were provided by WRA recruiters with plane

20   tickets to the United States and the names of their initial work assignments.  WRA

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 6

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    relies solely on statements contained in a DOL investigator's report for the

2    proposition that WRA did not hire or otherwise act as Plaintiffs' employer.

3    However, as explained in detail in Plaintiffs' Memorandum in Opposition to

4    Fernandez' Motion for Summary Judgment (ECF No. 166 at 2-8), the DOL

5    investigator's report is inadmissible and unreliable hearsay under the Federal Rules

6    of Evidence.

7         Regarding the power to fire, WRA admits that it has the power to fire, but

8    claims that it does so "only to the extent necessary to meet its H-2A obligations."

9    WRA Response Memo at 8.  This proffered limitation, however, does nothing to

10   diminish WRA's liability as a joint employer.  WRA admits that its standard

11   employment contract with the workers makes WRA a necessary party to *any*

12   decision to terminate an H-2A worker,[4] and that an individual rancher member

13   *cannot* on its own terminate a herder's employment.  PSOF at ¶¶ 18, 20, 69-71;

14   WRA Response to PSOF at ¶¶6-7, 37.   Indeed, WRA cannot allow workers to be

15

16   _____

17   [4] WRA's assertion that its own executive director does not know how this
     provision made it into WRA's employment contract (WRA Response Memo at 10-
18   11) does not lessen the provision's efficacy.  *See Hearst Commc'ns, Inc. v. Seattle
     Times*, 154 Wn.2d 493, 504 (2005) (when construing contracts, Washington courts
19   "do not interpret what was intended to be written but what was written.")

20

21

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1  fired unilaterally by the members because WRA is required by law to guarantee the

2  workers employment.  PSOF at ¶¶ 16-18, 64; WRA Response to PSOF at ¶¶6, 33.

3       WRA's claims, made here for the first time, that individual members "can

4  and do terminate employees" (WRA Response to PSOF at ¶37) and that "WRA

5  cannot prohibit a member from firing a worker" (WRA Response Memo at 14) are

6  factually unsubstantiated and miss the point in any event.  Even if an employer

7  were to dismiss a worker, absent the worker's own breach of the employment

8  contract, that dismissal would not absolve WRA of its obligation as joint employer

9  to provide the worker with employment by transferring the worker to another

10  member.  WRA Response to PSOF at ¶¶6, 34, 67-68.

11       **D.   WRA's Claim that it Has No Control Over Plaintiffs'**
         **Employment is Belied by Factual Admissions as to its Role in**
12       **Determining Employment Terms and Conditions**

13       In light of an extensive record to the contrary, WRA cannot support its claim

14  that it "does not control any aspect of the work performed by the workers."  WRA

15  Response Memo at 18.  As previously noted, WRA admits that, as an H-2A joint

16  employer, it is jointly liable with its members for compliance with the H-2A

17  regulations and all other employment-related laws and regulations, including

18  compliance with FLSA wage requirements.  Further, WRA admits that it has taken

19  affirmative steps to ensure that members comply with all worker protections and

20  minimum standards required under the H-2A regulations, including with respect to

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 8

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

wages, benefits, and working conditions.  There is no dispute, for example, that WRA mandates rancher members' use of WRA's standard form employment contract in order to secure such compliance.  WRA Response Memo at 14. Likewise, WRA uses its transfer power to ensure that all H 2A requirements are met, such as the "three-fourths guarantee."  Id.  WRA conceded that it retains "authority to intervene where problems arise between the member and the worker," for the purpose of "ensuring [members'] compliance with the H-2A regulations." WRA Response Memo at 15.

WRA's power to transfer workers also reflects its control over the employment relationship, and in this regard, WRA again fails to raise a dispute of material fact.  Rather, WRA has admitted its power to transfer workers is exclusive.  PSOF ¶58 (members may not transfer herders without WRA involvement and consent); WRA Response to PSOF at ¶29.  WRA also admits that transferring workers is a way for WRA to ensure that workers are provided with wages, benefits, and working conditions that meet H-2A requirements.  PSOF at ¶¶16-18, 20, 64-67; WRA Response to PSOF at ¶¶6-7, 29, 33-35, 67.  WRA likewise admits that it has the "power to take action against members who violate employment laws[.]" WRA Response Memo at 15.  *See also* PSOF at ¶¶14, 72-73; WRA Response to PSOF at ¶6 (admitting that "the threat of suspension or termination by the WRA is an effective means of securing [members'] compliance

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 9

Northwest Justice Project
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

[with H-2A requirements]") and ¶39 (WRA By-Laws authorize WRA to discipline or even terminate a member for violations of H-2A obligations).

The record facts clearly indicate that WRA controlled the employment relationship in ways that are central to a determination that as a matter of economic reality, it was an employer of the plaintiffs under the FLSA.

### E.    WRA Has Control Over the Payment of Wages

WRA asserts that it had no control over the payment of wages to the Plaintiffs, in that DOL set the minimum wage rates to be paid the workers under H-2A regulations, and that it was not directly involved in paying the workers. WRA Response Memo at 16.  However, WRA admits that it had important other wage-related responsibilities to workers.  WRA requires its members to pay H-2A workers wages no less than that the minimum wage rates required under the H-2A regulations.  PSOF at ¶¶51; WRA Response to PSOF at ¶24.  In addition, WRA's executive director admitted that if a member fails to pay the right wage, WRA has the ability to make the member pay the proper wage.  Ex. II, Richins Dep. 44:24 – 45:4.  On one occasion where a WRA member in Idaho failed to pay his H-2A workers properly, WRA's director went to Idaho himself, paid the workers, brought the workers back with him, and terminated the member. Ex. II, Richins Dep. 199:24-200:3.  If a herder should find himself without work for part of the H-2A visa period, WRA would pay the worker's wages.  ECF No. 162-1 at 7

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 10

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1  (Richins Dep. 48:6-21).  It is thus clear that the Plaintiffs were economically

2  dependent on WRA to ensure that they were paid properly.

3     **F.    WRA Maintains Employment Records.**

4     WRA claims that the files it maintains with each of its H-2A employee's

5  visa information, employment contracts, travel information, and transfer records

6  are not "employment records" for FLSA purposes.  WRA Response Memo at 17.

7  While WRA's files may not include payroll information, WRA's herder files

8  include the locations where its employees' payroll documents can be found. *Id.*  In

9  any event, even if WRA maintained no employment records at all, that would not

10  prove that WRA did not employ plaintiffs when viewed in the context of the

11  extensive record to the contrary.  As WRA has correctly observed, the court is not

12  required to blindly adhere to the factors set out in the case law, but must rather

13  determine whether an entity is an employer in view of the totality of economic

14  realities of the relationship between the parties.  *Bonnette*, 704 F.2d at 1470;

15  *Torres-Lopez v. May*, 111 F.3d 633, 650 (9th Cir. 1997).

16     **G.    WRA's Contractual Liability as an H-2A Employer**

17     WRA asserts that it has no liability under the contract claims in this case

18  because there is "no provision in the employment agreement that obligates WRA to

19  guarantee the written contract for the benefit of the employee."  WRA Response

20  Memo at 19.  The fact that WRA is not nominally a party to employment

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 11

1    agreements between the plaintiffs and WRA's rancher member does not shield

2    WRA from its contractual obligations.  As an H-2A employer, WRA is

3    contractually bound to its H-2A workers as a matter of law.  The H-2A regulations

4    provide that H-2A requirements become terms of the employment contract

5    between H-2A employers and workers. 20 C.F.R. § 655.103 (defining "work

6    contract"); 29 C.F.R. § 501(3) (same).  Thus, WRA is jointly liable in contract for

7    its members' breach of the H-2A requirements, including the requirement to pay

8    the highest applicable wage rate.

9        Nor does WRA's nominal absence from the employment agreements that the

10    rancher members signed with the Plaintiffs mean that WRA has no obligations

11    under the terms of those agreements.  WRA admits that it requires members to

12    enter into a standard form employment agreement drawn up by WRA and does not

13    allow members or herders to alter its terms.  PSOF at ¶43; WRA Response to

14    PSOF at ¶19.  While the contract names the rancher member as the employer, it

15    specifically identifies the member as "a member of Western Range Association."

16    PSOF at ¶44; WRA Response to PSOF at ¶20.  *See* Ex. M. to Plaintiff's Statement

17    of Material Facts, ECF No. 146-14 ("Sheepherder Employment Agreement") at

18    189-90.  A member can thus be considered to have entered into the contract in a

19    representative capacity for WRA as well as for himself.  In fact, several terms of

20    the agreement explicitly provide that WRA has contractual rights and obligations.

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 12

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

For example, if a WRA member fails to properly pay a worker, the worker must notify WRA within a specified time or forfeit any claim against WRA. Sheepherder Employment Agreement, ¶9 at 189.  In addition, the agreement provides for WRA to determine workers' initial jobsite assignments and empowers WRA to transfer workers, even if a worker objects to a transfer.  PSOF at ¶¶45, 56-57; WRA Response to PSOF at ¶¶20, 28.  The agreement also requires members to indemnify and hold WRA harmless from any claim or lawsuit related to a worker's employment, including "any claim by the Employee for wages or damages of any kind."  PSOF at ¶49; WRA Response to PSOF at ¶22.  From these provisions, it is clear that WRA and its members intended WRA to be bound to contractual obligations owed to the workers.

WRA does acknowledge that it is obliged to guarantee the payment of wages owed to workers.  WRA Response Memo at 19.  However, without any record support for the proposition, WRA claims that this obligation is limited to cases where a member is unable to pay a worker due to bankruptcy.  *Id.*  To the contrary, WRA's expert, James Holt, stated that WRA assumes joint liability with its members for *all* employment-related laws and regulations, listing bankruptcy merely as an example.  PSOF at ¶¶10, 12; WRA Response to PSOF at ¶¶4, 6.  Dr. Holt's testimony could not be clearer: By participating in the H-2A program as a joint employer, WRA has promised to ensure the contract terms that WRA's

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 13

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

individual members contract for.  PSOF at ¶9; WRA Response to PSOF at ¶4.  By

its own admission, therefor, WRA is liable in contract for its members' failure to

comply with H-2A program obligations, including wage rates, as a matter of law.

## II. PLAINTIFFS' WORK WAS NOT EXEMPT FROM THE FLSA MINIMUM WAGE

Plaintiffs are entitled to judgment as a matter of law against the WRA that

the range production of livestock exemption from the federal minimum wage does

not apply to them.  Western Range Association, as the employer, has the burden of

proving that the exemption applies to them, and they have failed to do so.

## III. DEFENDANTS HAVE FAILED TO RAISE A DISPUTE OF MATERIAL FACT AS TO THEIR BREACH OF CONTRACT

Plaintiffs are also entitled to summary judgment that defendants breached

their employment contract by failing to pay plaintiffs the required adverse effect

wage rate ("AEWR") for the work that they performed.  Even if defendant

Fernandez' testimony were accepted as fact, the undisputed facts still establish that

the plaintiffs were not principally engaged in range sheepherding during their

employment at Fernandez Ranch.

As set forth in more detail in Plaintiffs' Memorandum In Support Of Motion

For Partial Summary Judgment, ECF No. 141 at 27-28, defendants' contract with

plaintiffs incorporates their assurance that the wage that they are offering is "at

least the adverse effect wage rate in effect at the time the work is performed, the

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 14

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

prevailing hourly wage rate, or the legal federal or state minimum wage rate, whichever is highest." 20 C.F.R. § 655.102 (b) (9).  *See also Frederick County Fruit Growers Ass'n v. Martin*, 968 F.2d 1265, 1268 (D.C. Cir. 1992).   Defendant Fernandez paid plaintiffs only a flat monthly wage of $750 per month, a wage which would have met this assurance only if plaintiffs were "principally engaged in the range production of livestock" 29 U.S.C. 213 (a)(6)(E).  PSOF ¶115-116, ECF 146 at 28.

The undisputed facts are that none of the plaintiffs spent more than fifty percent of their time on the range, performing range production duties.  Plaintiffs' Reply Statement of Facts in Support of Motion for Summary Judgment, ("Plaintiffs' Reply PSOF") Nos. 84-106. The range sheepherder duties are ones

> which require constant attendance [of livestock] on a standby basis, away from headquarters, such as herding, where the computation of hours worded would be extremely difficult. Such constant surveillance of livestock that graze and reproduce on range lands is necessary to see that the animals receive adequate care, water, salt, minerals, feed supplements, and protection from insects, parasites, disease, predators, adverse weather, etc.

29 C.F.R. §780.329(c).  Even when plaintiffs were taking care of sheep, a majority of the time they were not on the "range", defined as "land that is not cultivated, but rather produces native forage for animal consumption", 29 C.F.R. § 780.326(a) and "not intended to apply to feed lots or to any area where the stock involved would be near headquarters." 29 C.F.R. § 780.329(c).

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 15

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    It is undisputed that Eduardo Martinez never worked out on the range at all

2   from the time he arrived in January 2010 until he left in May 2010. Plaintiffs'

3   Reply PSOF,  Plaintiffs' Facts No. 84-86.  During the winter months, it is

4   undisputed that he had responsibilities to feed the animals twice a day at the

5   headquarters ranch, "repair corrals, if needed, and basically, you know just be

6   around there for anything happen." *Id*, Fernandez Dep. 161:23-25, ECF No. 175-1

7   at 49.  During March and April it is undisputed that the sheepherders, including Mr.

8   Martinez, worked helping with the lambing, which took place in the lambing barn

9   on the headquarters ranch.  PSOF ¶87, Plaintiffs Reply PSOF at page 2.  It is also

10  undisputed that during Mr. Martinez' entire employment at Fernandez Ranch, he

11  lived on the main headquarters ranch and worked under the supervision of Mr.

12  Fernandez.   Mr. Fernandez' only dispute regarding Eduardo Martinez' work at the

13  ranch is that he denies that Eduardo also worked on vehicle maintenance, with

14  calving and other ranch chores.  Plaintiffs' Reply PSOF ¶¶ 84-86.

15   The uncontested facts establish that Mr. Ruiz spent at most five

16  months herding sheep on the range over the 28 months that he worked at the

17  Fernandez Ranch.  Defendant Fernandez does not contest plaintiff's testimony that

18  from September 2007 through mid-April 2008, plaintiff's work was all performed

19  either on the main headquarters ranch itself or in nearby pastures.  PSOF ¶¶92-96.

20  Nor does he contest that from October 2008 though early April 2009, all of Mr.

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 16

Northwest Justice Project
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

Ruiz' work was performed on or near the headquarters ranch. Plaintiffs' Reply

PSOF ¶92-98. Although Defendant Fernandez denies plaintiff Ruiz' testimony that

he did not work as a range sheepherder at all in 2009, and that he did not work with

the sheep at all during the time that plaintiff Francisco Castro took the sheep off the

ranch from late April 2009 until September, 2009, Mr. Fernandez provides no

testimony or other evidence to the contrary.   Plaintiffs' Reply PSOF ¶ 99-106.  Mr.

Fernandez' testimony as to Mr. Ruiz' duties during this five month period was that

Mr. Ruiz would take food to Mr. Castro, clean the dogs' feet, and change horses for

Mr. Castro, which required Mr. Ruiz to come and go during the day, often with Mr.

Fernandez.  PSOF ¶114, Fernandez Dep. 74:4-13, as well as feed the dogs and

horses on the ranch.  Fernandez Dep. 78: 4-9.   Mr. Ruiz continued to sleep at the

main ranch, and there is no evidence that he had any responsibility for watching

the sheep during this time.  Mr. Fernandez' admitted in his testimony that only one

sheepherder stays out with the sheep at any time. Fernandez Dep. 17:6-10.  Even

accepting Mr. Fernandez' version of the facts, Mr. Ruiz' work from April to

September 2009 would not qualify as "range sheepherding."   Finally, the

uncontested facts are that Mr. Ruiz lived and worked on the headquarters ranch

from September 2009 until he left the Fernandez Ranch on January 3, 2010.  PSOF

¶¶99-100.

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

1    Plaintiff Francisco Castro worked at the Fernandez Ranch from March to

2    October 2008, and then again from March 2009 through March 2010.  PSOF

3    ¶¶101-106.   The uncontested facts establish that Francisco Castro worked from

4    March until October, 2008 on the ranch under Mr. Fernandez' direct supervision,

5    living in ranch housing.  Plaintiffs' Reply PSOF ¶102.

6    When Mr. Castro returned to the Fernandez Ranch in March 2009, he

7    worked in the lambing on ranch headquarters until some time in April, when he

8    took the sheep out to pasture.  For a period of approximately one month in July,

9    Mr. Castro watched the sheep on pasture at a property by the Centerville Highway,

10   approximately 5 miles from the main ranch. PSOF ¶¶104, 111(c).  This period

11   hardly counts as range sheepherding, as Mr. Castro stayed right off a paved

12   highway near the ranch, and Mr. Fernandez had him leave the sheep within fencing

13   during the day while Mr. Castro returned to the ranch to work.  PSOF ¶104.  Once

14   Mr. Castro brought the sheep back to the ranch in September 2009, he stayed and

15   worked on the ranch until he left the ranch for good on March 30, 2010.  PSOF

16   ¶106.

17   Since the uncontested facts show that plaintiffs spent far less than half their

18   time at Fernandez Ranch engaged in range sheepherding, their work did not qualify

19   for the FLSA exemption for range sheepherding, and therefore their work also did

20   not come within the scope of the Special Procedures for Sheepherders.  *See* ECF

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 18

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

No. 146-30, Ex. CC, at 305 ("[The special procedures] govern all H-2A requests for FLSA-exempt sheepherders and goatherders with a date of need filed on or after June 30, 2001.")   Therefore, Defendants' contract with plaintiffs required them to pay plaintiffs at the highest of the federal minimum wage, the prevailing wage or the hourly AEWR for non FLSA-exempt ranch workers.   20 C.F.R. § 655.102(b)(9).  Because in this case the AEWR was the highest of the three wage rates listed in the regulation, Defendants' failure to pay plaintiffs the hourly AEWR was a breach of contract as a matter of law.  *See Perez-Benites v. Candy Brand, LLC*, 2011 WL 1978414 at *15-16 (W. D. Ark., May 20, 2011); *see also* 20 C.F.R. §§ 655.101(b)(1)- (2) (all job offers must comply with the requirements of 20 C.F.R. § 655.102 and must include the assurances listed in 20 C.F.R. § 655.103 ).

Defendant Fernandez' only argument against plaintiffs' breach of contract claim is that the DOL investigator's finding that plaintiffs' work unrelated to sheepherding was *de minimis* either precludes plaintiffs' claims or at least "creates an issue of fact in this case."   Fernandez Memorandum in Response to Plaintiffs' Motion for Partial Summary Judgment, ECF No.169 at 3.  As plaintiffs articulate at length in their response to defendant Fernandez' motion for summary judgment, the DOL investigator's narrative is neither admissible nor entitled to preclusive effect in this litigation.*See* ECF No. 166 at 2-11.

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238

## III. CONCLUSION

Based on the foregoing, Plaintiffs ask the Court to grant partial summary judgment to the plaintiffs as requested.

RESPECTFULLY SUBMITTED this 28th day of January, 2013.


NORTHWEST JUSTICE PROJECT


/s/ Michele Besso
Michele Besso, WSBA #17423


FARMWORKER JUSTICE


/s/ Weeun Wang
Weeun Wang


<u>CERTIFICATE OF SERVICE</u>

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 20

1    I hereby certify that on January 28th, 2013, I caused the foregoing document

2    to be electronically filed with the Clerk of the Court using the CM/ECF system and

3    caused it to be served by mail to the following:

4

5            John Barhoum: jbarhoum@dunncarney.com

6            Timothy J Bernasek: tbernasek@dunncarney.com

7            Gary Lofland: glofland@glofland.net

8            Weeun Wang: wwang@farmworkerjustice.org

9            John Jay Carroll: jcarroll@vhlegal.com

10

11   DATED this 28th day of January, 2013.

12                              By: /s/ Alex Galarza
                                    Alex Galarza, Legal Assistant for
13                                  Michele Besso, WSBA #17423
                                    Attorney for Plaintiffs
14                                  Northwest Justice Project

15

16

17

18

19

20

21

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
PAGE - 21

**Northwest Justice Project**
510 Larson Building, 6 S. 2nd St.,
Yakima, Washington 98901
Phone: (509) 574-4234  Fax: (509) 574-4238