# Exhibit II

```
                                                                        1

 1                 UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF WASHINGTON
 2     --------------------------------------------------

       ELVIS RUIZ, FRANCISCO JAVIER )
 3     CASTO and EDUARDO MARTINEZ,  )
                                    ) Case No. CV-11-3088-RMP
 4           Plaintiffs,            )
                                    )
 5           vs.                    )
                                    ) Deposition of:
 6     MAX FERNANDEZ and ANN        ) DENNIS RICHINS
       FERNANDEZ, a marital         )
 7     community; WESTERN RANGE     )
       ASSOCIATION, a foreign       )
 8     nonprofit organization,      )
                                    )
 9           Defendants.            )
10     --------------------------------------------------
11              November 06, 2012; 01:44 p.m.
12              November 07, 2012; 09:56 a.m.
13               Location: 1245 Brickyard Road
                    Salt Lake City, Utah 84106
14
              Reporters:  Katie Harmon, RPR, CSR &
15                   Susan Sprouse, RPR, CSR
16
17
18
19
20
21
22
23
24
25
```

1    Q.   And so in that case, is it -- do you have the
2    discretion to move that worker from a member who is not
3    treating the worker properly?
4    A.   Yes, but we would consult with the member
5    first because he is the one that brought him in on his
6    petition.
7    Q.   And if you consulted with the member and
8    determined that, yes, there is a valid complaint against
9    this member, do you have the power to move the worker to
10   another employer?
11   A.   Well, when it gets to that point the member
12   wants to get rid of them as bad as the herder wants to
13   be gone.
14   Q.   But in answer to my question, do you have the
15   power to move the worker even no matter what the member
16   wanted?
17   A.   If there were proof enough that he was being
18   mistreated, yes.
19   Q.   I see.  And if the member failed to comply
20   with other terms and conditions required by the
21   Department of Labor that -- mistreating the worker, do
22   you have the discretion to move the worker?
23   A.   Yes.  Yes.
24   Q.   Say if the worker -- if the employer failed to
25   pay the minimum required wage rate, would you then have

1   the discretion to move that worker away from that
2   member?
3       A.   Yes.  And we also have the discretion to make
4   him pay the right way -- right wage.
5       Q.   The following sentence says, "The herder who
6   faithfully performs his duty is guaranteed under the
7   terms of the contract the opportunity for employment for
8   three years."  Is that correct?
9       A.   Yes.
10      Q.   Now as I understand it, the contracts are for
11  one-year terms but could be extended on a year to year
12  basis for three years?
13      A.   Right.
14      Q.   What this makes -- this indicates that the
15  worker who does his job and does it correctly has a
16  guarantee for three years.  Is that Western Range's
17  policy?
18      A.   Yes. Yes.  If the member needs him.  I mean,
19  if not then that's when the transfer comes in to effect.
20  We could transfer him to a member that needed someone.
21      Q.   I see.  So in terms of the guarantee, you said
22  if the member doesn't need the worker then he doesn't
23  have to have him.  So that's -- it's not the guarantee
24  of the member in this context; is that correct?
25      A.   To understand the sheep business, you go in

1   here.  Am I not correct that you are a joint employer of
2   these H-2AH-2A workers?
3          A.   Yes.
4          Q.   How do you square that with your statements
5   here to the worker that he is not employed by Western
6   Range?
7          A.   Western Range doesn't have sheep.  We went
8   through that yesterday.  We're the agent that get them
9   here, the vehicle.
10         Q.   So you tell the worker that he's not employed
11  by Western Range on the one hand, but you applied to the
12  Department of Labor as the joint employer of the worker.
13  Is that true?
14         A.   Yes.  Yes.
15         Q.   Okay.  And is that consistent with the H-2A
16  rules as to what a joint employer is responsible for?
17         A.   Well, it has been for 50, 60 years.
18         Q.   Has the Department of Labor reviewed this
19  contract?
20         A.   I'm sure they have.  They've had all
21  opportunities if they wanted to.
22         Q.   What makes you think that they, that they
23  certainly would have reviewed this?
24         A.   The consulate has to approve it to have a
25  contract before they come.

```
 1        Q.   If, if the -- if you would also note that when
 2   the, when the rancher signs the contract -- when the
 3   rancher signs the contract, this one is not signed, but
 4   he signs it as member of Western Range Association.  Do
 5   you have any idea why that language is inserted into
 6   your contracts?
 7        A.   No, I don't.
 8        Q.   Just to possibly raise a recollection or
 9   suggest some, some understanding on your part, might it
10   be that Western Range wants the members to be bound as
11   either representative capacity of Western Range
12   Association as opposed to on their own?
13             MR. BERNASEK:  Objection.  Leading the
14   witness.
15        Q.   If you don't know the answer --
16        A.   I don't know.
17        Q.   -- you can say you don't know.
18        A.   I don't know.
19        Q.   Has Western Range ever taken upon itself to
20   enforce one of these contracts?
21        A.   Yes.
22        Q.   Okay.  And can you describe the circumstances
23   when that happened?
24        A.   We had one member that wasn't paying the
25   herders.  We got a call from the herders saying they
```

1   weren't being paid.  I went to Idaho, took some checks
2   up, paid the herders and brought the herders back and we
3   terminated the member.
4        Q.   This was -- this was an Idaho rancher?
5        A.   Yes.
6        Q.   How long ago was this?
7        A.   I imagine it's 10 years ago.
8        Q.   And when you did that, did you satisfy
9   yourself that the members, that the member did not, in
10  fact, pay the herders?
11       A.   Oh, yes, I know they didn't.
12       Q.   How did you make that finding?
13       A.   The herder told us.  The member admitted it.
14       Q.   Do you recall how much you ended up having to
15  pay them?
16       A.   I don't recall.  It was --
17            MR. BERNASEK:  Objection.  Relevance.
18       A.   I don't know.
19       Q.   Did you sue the member to get the money back?
20       A.   Yes.
21            MR. BERNASEK:  Objection.  Relevance.
22       Q.   Did this lawsuit, did it succeed?
23       A.   Yes.
24       Q.   So you got your money back?
25       A.   Yes.

```
1    Ruiz v. Fernandez   11/06/12   Deposition of  Dennis Richins
2                         C E R T I F I C A T E
3
4    STATE OF UTAH           )
                             :ss
5    COUNTY OF SALT LAKE     )
6
7           THIS IS TO CERTIFY that the deposition of
     DENNIS RICHINS, the witness in the foregoing deposition
8    named, was taken before me, Katie A. Harmon, a
     Registered Professional Reporter, Certified Court
9    Reporter, and Notary Public in and for the State of
     Utah:
10
            That the said witness was by me, before
11   examination duly sworn to testify the truth, the whole
     truth, and nothing but the truth in said cause;
12
            That the testimony of said witness was
13   reported by me in Stenotype, and thereafter caused to be
     transcribed into typewriting, and that a full, true, and
14   correct transcription of said testimony so taken and
     transcribed is set forth in the foregoing pages and said
15   witness deposed and said as in the foregoing annexed
     deposition.
16
            I further certify that a copy of the
17   transcript of the same was mailed to the witness at 1245
     Brickyard Road  Salt Lake City, UT 84106 for reading,
18   along with the original witness certificate, said
     certificate to be signed in front of a Notary Public and
19   to be returned Within 30 days of the date hereon.
20          I further certify that I am not of kin or
     otherwise associated with any of the parties to said
21   cause of action, and that I am not interested in the
     event thereof.
22
            WITNESS MY HAND and official seal at Salt Lake
23   City Utah, 21st this day of November, 2012.
24
25                                    _____
                                      Katie Harmon, RPR, CSR
26
              GARCIA & LOVE REPORTING AND VIDEOGRAPHY
27                       801.538.2333
```